**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| **NOAH PETERSEN**, <br> *Plaintiff*, <br><br> v. <br><br> **CITY OF NEWTON, IOWA, MICHAEL HANSEN**, Mayor of Newton, sued in his official and individual capacity, and **ROB BURDESS**, Chief of the Newton Police Department, sued in his official and individual capacity <br> *Defendants*. | Civil Action No.: 4:23-cv-00408-SMR-SBJ <br><br><br> **DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

I.  MOTION FOR SUMMARY JUDGMENT STANDARD............................................2

II.  QUALIFIED IMMUNITY STANDARD ....................................................................2

III.  PLAINTIFF'S CLAIMS OF FIRST AMENDMENT RETALIATION AND UNREASONABLE SEIZURE UNDER THE FOURTH AMENDMENT FAIL AS A MATTER OF LAW....................................................................................................... 4

    a.  Burdess Acted with Probable Cause on October 3 and is Otherwise Entitled to Qualified Immunity.....................................................................................................5

    b.  Burdess Did Not Effectuate the October 24 Arrest, and Even if He Did, He Had Probable Cause.........................................................................................................9

    c.  Hansen Cannot be Liable Because Plaintiff's October 3 Speech was Unprotected Defamation............................................................................................................10

    d.  Hansen is Entitled to Qualified Immunity For Count I and II Because His Conduct Was Based on an Objectively Reasonable Mistake, and Because the Law Was Not Clearly Established at the time of Hansen's Actions. ............................................12

    e.  Hansen Cannot Be Liable for Plaintiff's Arrests Under Counts VI & VII ............14

IV.  NEWTON'S COMMENT RULE IS NOT A PRIOR RESTRAINT (COUNT V)......14

V.  DEFENDANTS DID NOT VIOLATE THE EQUAL PROTECTION CLAUSE THROUGH UNEQUAL ENFORCEMENT (COUNTS VIII & IX)  ........................16

VI.  PLAINTIFF HAS FAILED TO SET FORTH EVIDENCE SUFFICIENT TO ESTABLISH *MONELL* LIABILITY FOR THE CITY OF NEWTON. ......................19

**COME NOW** the Defendants, City of Newton, Iowa, Michael Hansen, and Rob Burdess,

and hereby submit their Brief in Support of their Partial Motion for Summary Judgment under

Rule 56(a) of the *Federal Rules of Civil Procedure*:

## I.     MOTION FOR SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Nieters v. Holtan*, 83 F.4th 1099, 1105 (8th Cir. 2023) (quoting *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023)). "Importantly, the 'mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law.'" *Ryno*, 58 F.4th at 1004 (quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)).

## II.     QUALIFIED IMMUNITY STANDARD

"In a § 1983 action, an officer is entitled to qualified immunity unless: (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established." *Arnold v. McClinton*, No. 23-1566, 2024 U.S. App. LEXIS 20434, at *6 (8th Cir. Aug. 14, 2024) (quoting *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 620 (8th Cir. 2023)). "For a right to be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)).

The qualified immunity inquiry is not a high level of generality. Rather, the dispositive question is "whether the violative nature of *particular conduct* is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (emphasis added). When the circumstances fall somewhere between the cases in which qualified immunity

has been granted and those in which it has not, the actions fall under the protections of qualified immunity. *Id.* at 19. "This inquiry 'must be undertaken in light of the *specific* context of the case, not as a broad general proposition.'" *Cent. Specialties, Inc. v. Large*, 18 F.4th 989, 996 (8th Cir. 2021) (quoting *Mullenix*, 577 U.S. at 12) (emphasis added). "There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Morgan v. Robinson*, 920 F.3d 521, 524 (8th Cir. 2019) (quoting *Ashcroft*, 563 U.S. at 741).

The controlling precedents for purposes of the "clearly established" analysis cannot be just any one of the ninety-four district courts or thirteen circuit courts. *Taylor*, 135 S. Ct. at 2045. In *Wilson v. Layne*, the Supreme Court suggested the different sources of law that can be analyzed to determine if a right is clearly established: decisions of the Supreme Court, controlling authority from the jurisdiction, including the highest court of the state, and law of other jurisdictions when there is consensus of persuasive authority. 526 U.S. 603, 614-17 (1999). However, the Supreme court has reserved judgment on the question whether decisions of federal courts of appeals are a source of clearly-established law for purposes of qualified-immunity analysis. *See Taylor*, 135 S. Ct. at 2045 ("Assuming for the sake of argument that a right can be 'clearly established' by circuit precedent despite disagreement in the courts of appeal, neither of the Third Circuit decisions relied upon clearly established the right at issue."); *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015) (quoting *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014)) ("[E]ven if 'a controlling circuit precedent could constitute clearly established federal law in these circumstances,' it does not do so here.")).

### III.   PLAINTIFF'S CLAIMS OF FIRST AMENDMENT RETALIATION AND UNREASONABLE SEIZURE UNDER THE FOURTH AMENDMENT FAIL AS A MATTER OF LAW.

Plaintiff's claims against Burdess and Hansen for retaliation in violation of the First Amendment (Counts I & II) and unlawful arrest in violation of the Fourth Amendment (Counts VI & VII) fail as a matter of law. "The First Amendment prohibits laws abridging the freedom of speech. Thus, as a general matter, the First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Aldridge v. City of St. Louis*, 75 F.4th 895, 898 (8th Cir. 2023).

> To prevail on a [section] 1983 claim for retaliation in violation of the First Amendment, [Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.

*Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013).

The First Amendment's prohibition on retaliatory action encompasses retaliatory arrests. *Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013). To prevail on a First Amendment retaliatory-arrest claim, a plaintiff must show: "'(1) [they] engaged in protected activity, (2) the officer [took an adverse action] that would chill a person of ordinary firmness from continuing the protected activity, . . . (3) the [adverse action] was motivated by the exercise of the protected activity,' and (4) 'the officer acted without probable cause to arrest.'" *Sahr v. City of Des Moines*, 666 F. Supp. 3d 861, 888 (S.D. Iowa 2023) (citation omitted). "Regarding the third, causation element of a retaliatory-arrest claim, the U.S. Supreme Court in *Nieves* held an arrest is 'motivated by' retaliatory animus if it was the 'but-for cause' of the unlawful arrest." *Id.* at 888-89 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 397 (2019)). Thus, probable cause for an arrest defeats a retaliatory arrest claim. *See Nieves*, 587 U.S. at 408.

Probable cause similarly defeats a claimed violation of a plaintiff's Fourth Amendment right against unreasonable seizure. *See Garang v. Ciy of Ames*, 2 F.4th 1115, 1121 (8th Cir. 2021); *see also Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) ("A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause."). "Probable cause exists when the totality of the circumstances at the time of the arrest is sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." *Id.* (citation omitted). "Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act . . . There must be a 'fair probability' or a 'substantial chance' that the person seized has committed an offense." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020)). "[O]fficers are not required to conduct a mini-trial before arrest." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 817 (8th Cir. 2010).

In the context of wrongful arrests, government officials are entitled to qualified immunity if there "is at least 'arguable probable cause.'" *Garang*, 2 F.4th at 1121. Arguable probable cause "exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Borgman*, 646 F.3d at 523.

### a. Burdess Acted with Probable Cause on October 3 and is Otherwise Entitled to Qualified Immunity

Plaintiff's allegations directed towards Burdess focus on his role in arresting Plaintiff following Mayor Hansen directing Plaintiff to cease speaking and Plaintiff's subsequent refusal to comply with the Mayor's directions. *See* Complaint, ¶¶ 117(c)-(i) (Count I); 194 (Count VI). However, Plaintiff's claims fail because Burdess acted pursuant to probable cause. *See Nieves*, 587 U.S. at 408 (probable cause defeats retaliatory arrest claim); *Garang*, 2 F.4th at 1121 (probable cause defeats wrongful arrest claim).

Plaintiff was arrested for violating Iowa Code Section 723.4(1)(D), the disorderly conduct statute. *See* Defendants' Statement of Undisputed Facts (SUF) ¶ 37. This was later amended to a charge for violating City of Newton Code of Ordinances Section 130.01(V), which adopts the language of Iowa Code section 723.4. SUF ¶ 45. Iowa Code Section 723.4 provides:

> 1. A person commits a simple misdemeanor when the person does any of the following:
>
> *d*. Without lawful authority or color of authority, the person disturbs any lawful assembly or meeting of persons by conduct intended to disrupt the meeting or assembly.

Iowa Code § 723.4 (2022). Thus, three elements are necessary: (1) the person disturbs a lawful assembly (2) by conduct intended to disrupt the assembly, and (3) the person does so without lawful authority or color of authority. The Iowa Supreme Court analyzed the meaning of "without lawful authority or color of authority" by considering three factors: "(1) the nature of the meeting involved; (2) whether the activity substantially impaired the conduct of the meeting; and (3) whether the defendants knew, or should have known, that their conduct violated an applicable custom, usage, or rule of the meeting." *State v. Hardin*, 498 N.W.2d 677, 680 (Iowa 1993).

Here, Plaintiff (1) disturbed the city council meeting—which is unquestionably a lawful assembly—by refusing to sit down once ordered to by the Mayor (2) intended to disrupt the assembly, as evidenced by his continued refusal to comply, and (3) acted without authority once the presiding officer of the meeting, Mayor Hansen, had ordered him to cease speaking. SUF ¶ 38. Burdess' belief that Plaintiff was acting without authority was consistent with the three-factor test set forth in *Hardin* because Plaintiff's conduct significantly impaired the conduct of the meeting by preventing other citizens from speaking or the city council from addressing other matters. *See Hardin*, 498 N.W.2d at 681 (finding disruption of President Bush' speech was grounds for conviction under section 723.4 despite disruption only lasting a few minutes); *see also* SUF ¶ 38. Burdess' belief that Hansen's order was lawful was also reasonable because the rule had been in

use for years and had been formulated with input from the city's attorney. SUF ¶ 40. Further, Plaintiff knew or should have known that his conduct violated the rules of the meeting because he was repeatedly warned that if he did not cease speaking, he would be arrested. *Hardin*, 498 N.W.2d at 681 (finding disruptive conduct that occurred despite repeated warnings showed intent to disrupt meeting); SUF ¶ 38. Because all three elements of the offense were met, Burdess had probable cause to arrest Plaintiff for disorderly conduct even if Plaintiff was engaging in otherwise protected speech.[1] *Id.* Of note, the District Court for Jasper County found probable cause for the disorderly conduct charge. SUF ¶ 74.

It is important to note that Plaintiff's speech can be separated from his conduct and the reasons for his arrest. *See* SUF ¶ 39; *see also Jones v. Heyman*, 888 F.2d 1328, 1332 (11th Cir. 1989) (finding that the content of the individual's speech can be separated from the individual's disruptive behavior during a commission meeting); *Tannenbaum v. Richmond Heights*, 663 F. Supp. 995, 997 (D. Mo. 1987) (finding no Section 1983 claim for a violation of the First Amendment when speaker refused to comply with a valid ordinance regardless of the content of the speech). Regardless of what Plaintiff said and why Mayor Hansen stopped his speech, Plaintiff refused to sit down or leave the chambers when asked by Mayor Hansen and Police Chief Burdess. Plaintiff's conduct after Mayor Hansen directed him to stop speaking created probable cause for his arrest for a violation of the disorderly conduct statute. Because probable cause supported Burdess' actions, there is no constitutional violation under either the First or Fourth Amendments.

Even if Burdess acted without probable cause, he is entitled to qualified immunity for two reasons. First, to the extent the foregoing analysis did not establish probable cause in fact, it amply supports arguable probable cause. *See Borgman*, 646 F.3d at 523. This is particularly true because

---

[1] For the reasons in Section III(C) & (D), *infra* p. 10-13, Plaintiff's speech was not protected under the First Amendment.

Burdess was acting, in part, in reliance on the rule had been in place for three years and the city attorney had been involved in implementing it. *See* SUF ¶ 40; *Watertown Equip. Co. v. Norwest Bank Watertown, N.A.*, 830 F.2d 1487, 1495 (8th Cir. 1987) ("Courts have generally found that the advice of an attorney may be a factor in shielding a defendant from liability under section 1983 . . . . This Court has also recognized that although reliance on the advice of counsel alone will not satisfy an official's burden of acting reasonably, it may be a factor which bears on the question of qualified immunity.").

Second, the law was not clearly established that Plaintiff's conduct did not meet the elements of the disorderly conduct statute. Beyond *Hardin*—which, as explained above, supports a finding of probable cause—the Iowa Supreme Court has not addressed the application of section 723.4 in the context of disruptive conduct at a public meeting. Indeed, even *Hardin* did not occur at a municipal council meeting. In the face of these unique circumstances, Plaintiff has "present[ed] no case that comes close to demonstrating that the rights [he] alleges were violated were clearly established." *Cent. Specialties, Inc.*, 18 F.4th at 997.

Similarly, to the extent Plaintiff attempts to argue that his arrest fell within the exception to the no-probable-cause rule established in *Nieves v. Bartlett*, when there are similarly situated individuals who engaged in the same conduct but were not arrested, the application of this exception was not clearly established at the time of Plaintiff's arrest. *See generally Gonzalez v. Trevino*, 144 S. Ct. 1663 (2024) (overturning a 5th Circuit decision after finding the court misunderstood the scope of *Nieves*). And for the reasons explained in Section V, *infra* p. 16-19, Plaintiff is not similarly situated to other individuals who spoke at the council meetings. As a result, Plaintiff's claims must be dismissed with prejudice.

**b. Burdess Did Not Effectuate the October 24 Arrest, and Even if He Did, He Had Probable Cause.**

Plaintiff's allegations directed towards Burdess regarding Plaintiff's October 24 arrest fail to establish a constitutional violation committed by Burdess. *See* Compl. Count VII. As an initial matter, Burdess simply did not effectuate Plaintiff's arrest on October 24. SUF ¶ 59 (citing Burdess Deposition Transcript) (noting "by the time I got [to Plaintiff], Lieutenant Wing had already stopped him and advised him that he was under arrest for disorderly conduct"); SUF ¶ 67 (citing Supp. Arrest Report) ("Lt. Wing had arrested Noah Peterson…"). The law has long been clear: "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting a government official may only be liable "through the official's own individual actions"). Put another way, "a supervisor's mere knowledge of his subordinates" misconduct is insufficient to impose liability under section 1983. *Ashcroft*, 556 U.S. at 677; *see also Woods v. Corizon Health Inc.*, No. 2:23-cv-04078-SRB-P, 2023 U.S. Dist. LEXIS 105631, at *8 (W.D. Mo. May 8, 2023). At most, Plaintiff can demonstrate Burdess was nearby when Lieutenant Wing executed the arrest. SUF ¶ 59-60. Because that proximity is legally insufficient to impose liability under section 1983, Plaintiff's claims of retaliation and unlawful arrest against Burdess for Plaintiff's October 24 arrest fail as a matter of law.

Even if Burdess had actually arrested Plaintiff, he did so with probable cause. Plaintiff's October 24 arrest was based on the same statutory provision as his October 3 arrest—Iowa Code section 723.4 (2022). SUF ¶ 64. And the factual basis for his arrest was functionally identical to that on October 3: Plaintiff refused to cease disrupting the meeting after Mayor Hansen ended his speaking time for violating the meeting's rules. SUF ¶¶ 61-62, 66. The unlawfulness of Plaintiff's continued disruption is particularly apparent given the fact that the meeting was in recess, yet he

continued to refuse to leave. SUF ¶ 58. In fact, Plaintiff expressly stated his intent to continue to disrupt the meeting by asserting he would need to be walked out of the meeting. SUF ¶ 58. For the same reasons as explained in relation to the October 3 arrest, Burdess (and Lieutenant Wing) had probable cause to arrest Plaintiff on October 24. Further, Burdess had a good faith basis to believe the validity of the rule due to the City's attorney's comments prior to the citizen comment period. SUF ¶ 51; *Watertown Equip. Co.*, 830 F.2d at 1495. And again, the District Court for Jasper County found probable cause for the charge disorderly conduct charges. SUF ¶ 76. Similarly, for the same reasons explained in the previous section, Section III(B), even if probable cause was lacking, the law was not clearly established at the time of Plaintiff's arrest that probable cause was lacking for the arrest. Thus, Burdess is entitled to qualified immunity.

### c. Hansen Cannot be Liable Because Plaintiff's October 3 Speech was Unprotected Defamation.

Plaintiff's claims of First Amendment retaliation against Mayor Hansen for the incident on October 3 (Count I) fails because Plaintiff was not engaged in protected speech. In order to establish his claim of First Amendment retaliation, Plaintiff needed to be engaged in protected speech. *Blair*, 707 F.3d at 991. Defamatory speech is not protected under the First Amendment. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023).

> "Generally speaking, defamation is the publication of false statements of fact which tend to harm an individual's reputation." *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021). To prove a defamation claim, "a plaintiff must show the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff." *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996).

*Galanakis v. City of Newton*, No. 4:23-cv-00044-SHL-SBJ, 2023 U.S. Dist. LEXIS 88116, at *13 (S.D. Iowa May 8, 2023).

To be defamatory, the speech must "be reasonably interpreted as stating actual facts about a person." *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021). Courts consider four factors to determine whether speech is an actionable statement of fact.

> The first factor is "whether the alleged defamatory statement 'has a precise core of meaning for which a consensus of understanding exists or, conversely, whether the statement is indefinite and ambiguous.'" [*Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 770 (Iowa 2006)] (quoting Ollman v. Evans, 750 F.2d 970, 979, 242 U.S. App. D.C. 301 (D.C. Cir. 1984)). The second factor is "the degree to which the [alleged defamatory] statements are . . . objectively capable of proof or disproof[.]" Id. (quoting Ollman, 750 F.2d at 981) (alterations in original). The third factor is "the context in which the alleged defamatory statement occurs." Id. The final factor we consider is "the broader social context into which [the alleged defamatory] statement fits." Id. (alteration in original) (quoting Ollman, 750 F.2d at 983).

*Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018).

Here, Plaintiff's speech accusing Officer Winters of domestic abuse constituted defamation. Plaintiff's comments at the council meeting were unquestionably (1) published and (2) regarding an individual—Officer Winters. *See id.* at 47 (noting publication occurs when the communication was "made to one or more third parties"); SUF ¶ 30 (noting Plaintiff's comments were about Officer Winters). Additionally, the comments are defamatory. First, whether Winters was convicted of domestic violence has a precise core of meaning that is capable of objective proof—the court filings denote the circumstances of the civil no-contact order. *See Yates*, 721 N.W.2d at 773 ("A good example of a statement with a well-defined meaning is an accusation of a crime"); *see also* SUF ¶ 31. Additionally, Plaintiff's comments at a city council meeting strongly suggest the statements were intended to be taken as facts—ordinary individuals would not accuse others of crimes in front of public officials as a form of hyperbole. *Id.* (noting the last two factors focus on the context of the speech, including its intended audience). Thus, Plaintiff's statements were defamatory.

Even apart from the four factors, Iowa law considers some speech to be defamatory *per se*. "An attack on the integrity and moral character of a party is libelous per se." *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 116 (Iowa 1984). "We have found defamation per se in statements accusing an individual of being a liar . . . accusing an individual of an indictable crime of moral turpitude or that carries a jail sentence . . . and accusing an individual of falsifying information." *Bandstra*, 913 N.W.2d at 47. Domestic abuse is a crime with enhanced penalties in the State of Iowa. *See* Iowa Code § 708.2A. Further, the Iowa Supreme Court has found domestic abuse to be "morally reprehensible" behavior that violates the Iowa Rule of Professional Conduct prohibition on "engaging in illegal conduct involving moral turpitude." *See Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Polson*, 569 N.W.2d 612, 613-14 (Iowa 1997). As such, Plaintiff's accusations amount to defamation per se under Iowa law and were not protected under the First Amendment.

Notably, the Iowa Southern District Court has also found comments accusing another of domestic violence to be actionable defamation. *See Galanakis v. City of Newton*, No. 4:23-cv-00044-SHL-SBJ, 2023 U.S. Dist. LEXIS 88116, at *16-24 (S.D. Iowa May 8, 2023). Not only is *Galanakis* persuasive, it addressed the *exact* accusations Plaintiff leveled against the *same officer*. *Id.*; SUF ¶ 30-32. Plaintiff's comments constitute defamation per se. As such, his speech was not protected, and his First Amendment claim fails as a matter of law.

### d.  Hansen is Entitled to Qualified Immunity For Count I and II Because His Conduct Was Based on an Objectively Reasonable Mistake, and Because the Law Was Not Clearly Established at the time of Hansen's Actions.

Even if Plaintiff's expressive conduct is protected speech, Hansen is entitled to qualified immunity because his actions were based on the objectively reasonable mistake that Plaintiff's speech was defamatory. "The protection of qualified immunity applies regardless of whether the

government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In the event the Court determines Plaintiff's speech was protected, Hansen's conduct was objectively reasonable because the law was not clearly established at the time of his conduct that the speech was protected. As to his October 3 speech, as explained above, there is ample precedent suggesting accusations that an individual is a domestic abuser constitute defamation. *See, e.g.*, *Polson*, 569 N.W.2d 612, 613-14; *Galanakis,* 2023 U.S. Dist. LEXIS 88116, at *16-24. Given the precedent supporting Mayor Hansen's belief that Plaintiff's speech was defamatory, it cannot be said that the state of the law was so clear that his mistake was objectively unreasonable. *See* SUF ¶ 33; *Robinson*, 920 F.3d at 524 ("There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *see also Kirchmeier*, 85 F.4th at 1255 ("For a right to be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'").

Similarly, Hansen's mistake of law was objectively reasonable as to Plaintiff's October 24 speech because the law was not clearly established that accusing individuals of being fascists did not constitute defamation. There does not appear to be any federal Supreme Court or Iowa Supreme Court precedent establishing that accusing an individual of being a fascist is protected speech. *Layne*, 526 U.S. at 614-17 (describing the sources of law from which a right may be clearly established). Indeed, ordinary individuals view such accusations as factual assertions explaining an individual's political ideology that carry extremely negative connotations. *See* SUF ¶ 55 ("I would just describe the characterization of that individual as a fascist as somebody that has no respect for life, would kill, harm, demean somebody, don't care about their human values, any of

that."). Because the law was not clearly established that Plaintiff's comments were protected speech, Hansen is entitled to qualified immunity.

### e.   Hansen Cannot Be Liable for Plaintiff's Arrests Under Counts VI & VII.

Plaintiff's Fourth Amendment claims fail as a matter of law because Hansen did not cause or effectuate Plaintiff's arrests on October 3 or October 24. As explained above, liability under section 1983 is limited to the government official's individual actions. *Madewell*, 909 F.2d at 1208; *Ashcroft*, 556 U.S. at 676. Mayor Hansen did not arrest Plaintiff on either October 3 or October 24. SUF ¶¶ 36, 59. Mayor Hansen was not involved in determining what crime to charge Plaintiff with. SUF ¶¶ 41, 65. Moreover, Mayor Hansen did not have the authority as mayor to order Police Chief Burdess or Lieutenant Wing to effect an arrest. SUF ¶¶ 35, 63.  Because Mayor Hansen did not effectuate either arrest, he cannot be liable for violating Plaintiff's Fourth Amendment right against unreasonable seizure.

Finally, even if Hansen did effectuate the arrest, for the reasons explained in the foregoing sections—Section III(A)-(B), he had probable cause to arrest Plaintiff for disorderly conduct. And even if that were not the case, the law is not clearly established that probable cause would be lacking for either arrest. As such, Hansen is entitled to qualified immunity.

## IV.   NEWTON'S COMMENT RULE IS NOT A PRIOR RESTRAINT (COUNT V)

Plaintiff incorrectly asserts Newton's Citizen Participation rule amounts to a prior restraint in violation of the First Amendment. *See* Plaintiff's Petition, Count V. "The term 'prior restraint' is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (Iowa 1993) (citation omitted). "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior

restraints." *Id.* Prior restraints are frequently in the form of licensing or permit requirements, wherein the government entity must grant permission *prior* to the speech occurring. *See Dolls, Inc. v. City of Coralville*, 425 F. Supp. 2d 958, 980 (S.D. Iowa 2006) ("In classic form, prior restraint occurs where the government requires some type of permit or license in order for speech to occur."). Prior restraints are heavily disfavored. *See Herhsey v. Jasinski*, 86 F.4th 1224, 1234 (8th Cir. 2023). To prevail on Count V, "Plaintiffs must show: the bans constitute a prior restraint, the bans do not 'fit within one of the narrowly defined exceptions to the prohibition against prior restraints,' and procedural safeguards were lacking." *Johnson v. Bayens*, No. 4:20-cv-00306-RGE-CFB, 2020 U.S. Dist. LEXIS 260374, at *13 (S.D. Iowa Dec. 10, 2020) (quoting *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975)).

Newton's rule is not a prior restraint.[2] "[T]he Supreme Court has long distinguished between prior restraints from subsequent punishments." *Bayens*, 2020 U.S. Dist. 260374, at *13; *see also Alexander*, 509 U.S. at 553 (explaining "the time-honored distinction between barring speech in the future and penalizing past speech"). Prior restraints may only be found where "the statute at issue gave officials the power to 'deny use of the forum *in advance of actual expression.*" *Id.* (emphasis added). As the 8th Circuit Court of Appeals recently put it, "[T]here is still no prior restraint unless a speaker must also get advance '*permission* from a government official.'" *Hershey*, 86 F.4th at 1234 (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 387 (2d Cir. 2018) (emphasis in original). Courts routinely distinguish between true prior restraints and situations where speakers are punished only *after* their expressive conduct. *See SOB, Inc. v. County of Benton*, 317 F.3d 856, 866-67 (8th Cir. 2003) (finding ordinance permitting arrest for live nude dancing was not a prior restraint because the speech the penalty was not triggered until after the

---

[2] Notably, Newton's City Council never passed the rule as a portion of the 2018 Procedural Rules. SUF ¶ 22-23.

expressive conduct occurred); *Bayens*, 2020 U.S. Dist. 260374, at *13-15 (explaining the distinction between 'prior restraints' and 'subsequent punishments in Supreme court precedent); *Books, Inc. v. Pottawattamie Cty.*, 978 F. Supp. 1247 (S.D. Iowa 1997) ("The presumed unconstitutionality of prior restraints is greater than that against laws that reserve judgment and punishment until after the speaker is allowed to speak."). Thus, in order to implicate the First Amendment, prior restraints *require* a coercive element that occurs *prior* to the expressive conduct at issue.

The citizen participation rules is not a prior restraint. The rule does not prevent attendees of city council meetings from speaking in advance of their speech—they do not need to first obtain a permit, license, or otherwise request permission from a government official. SUF ¶ 10-11. This is simple logic: the propriety of the individual's comments can only be determined after they occur—Plaintiff was only ordered to stop speaking *after* the expressive conduct had already happened. *See, e.g.*, SUF ¶¶ 29, 53. As such, the rule does not operate as a prior restraint.[3] Count V should be dismissed.

## V. DEFENDANTS DID NOT VIOLATE THE EQUAL PROTECTION CLAUSE THROUGH UNEQUAL ENFORCEMENT (COUNT VIII & IX)

Plaintiff alleges "Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution by selectively enforcing the Derogatory Comments Rule against Noah in connection with Noah's October 3, 2022 public comments when that Rule is not enforced against other individuals similarly situated to Noah." Compl. ¶ 232. Plaintiff alleges that at the October 3 meeting, five (5) other speakers made derogatory comments about the city's rental inspectors, but the rule was not enforced against these similarly situated individuals and they were

---

[3] To the extent the Court disagrees, this Count must still be dismissed as to Burdess because he has no involvement in enforcing the city council meeting's rules. *See* SUF ¶ 9.

not stopped, arrested, charged, or prosecuted. Compl. ¶ 233. Plaintiff alleges the same for the October 24 meeting because other speakers violated other speaking rules without consequence. Compl. ¶ 243-44.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Barstad v. Murray Cnty.*, 420 F.3d 880, 884 (8th Cir. 2005). To state an equal protection claim, a plaintiff "must plausibly allege that [they were] singled out and treated differently than similarly situated [individuals] for a prohibited purpose or motive." *Satanic Temple v. City of Belle Plaine*, 80 F.4th 864, 869 (8th Cir. 2023). "The threshold inquiry in an equal protection case is whether the plaintiff is similarly situated to others who allegedly received preferential treatment." *Domina v. Van Pelt*, 235 F.3d 1091, 1099 (8th Cir. 2000). "[T]he persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in *all material respects*." *Sanimax USA, LLC v. City of S. St. Paul*, 95 F.4th 551, 564 (8th Cir. 2024) (quoting *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015)).

"It is recognized law that a class-of-one claimant may prevail by showing 'she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Barstad*, 420 F.3d at 884 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "Identifying the disparity in treatment is especially important in class-of-one cases." *Id.* A selective enforcement claim in the context of this case requires Plaintiff to show that Defendants exercised their discretion to enforce the disorderly conduct law solely because of Plaintiff's speech. *See Gilani v. Matthews*, 843 F.3d 342, 347-48 (8th Cir. 2016). "To succeed, [Plaintiff] 'must show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose.'" *Id.* at 348 (quoting *United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996).

Plaintiff's claim fails for three reasons: (1) Plaintiff has failed to establish that he was similarly situated to the individuals commenting on the rental inspection program and (2) Officer Burdess did not act with a discriminatory purpose, and (3) neither individual defendant was responsible in Plaintiff's October 24 arrest.[4]

The individuals Plaintiff identifies as comparisons are not similarly situated to himself "in all relevant respects." *Gilani*, 843 F.3d at 348 (quoting *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009)). Rather, Plaintiff's expressive conduct was markedly more defamatory and vitriolic. At the October 3 meeting, the other speakers discussed Newton's new rental inspection program, including the rental inspectors, in general terms. SUF ¶ 25. These other speakers did not engage in defamatory conduct. SUF ¶ 25-27. Plaintiff, however, made specific accusations about a police officer stating that the officer is a "domestic abuser." SUF ¶ 29. Plaintiff could not provide any specific examples of comments made by other individuals at the October 3 meeting that rise to the level of his pointed, defamatory comments. SUF ¶ 26. There is no similarly situated group of individuals with which to compare Plaintiff.

Additionally, Plaintiff had previously refused to stop speaking and sit down at a City Council meeting and had to be escorted out of the meeting by a police officer. SUF ¶ 29. At the October 24 meeting, the Defendants knew that Plaintiff had twice previously refused to stop speaking and leave a City Council meeting and had been arrested for one of these incidences. SUF ¶¶ 51, 53. Again, the content of Plaintiff's speech can be separated from his actions after he was asked to stop speaking and his refusal to sit down or leave the meeting. SUF ¶ 61-62; *see e.g.*, *Heyman*, 888 F.2d at 1332. Plaintiff has not shown that he was similarly situated "in all relevant respects" to the other speakers at the City Council meetings who calmly spoke about their concerns

---

[4] In the interest of brevity, Defendants refer the Court to Section III(B) and (E) for a full explanation of Burdess and Hansen's lack of responsibility for the October 24 arrest.

and had not been recently arrested for disorderly conduct at a City Council meeting. Because Plaintiff has failed to establish he was treated differently than a similarly situated group of individuals, he has failed to set forth a prima facie violating of the Equal Protection Clause. *Flowers*, 558 F.3d at 798.  Further, absent a constitutional violation, the Defendants are entitled to qualified immunity. *Bloodworth*, 89 F.4th at 624.

Additionally, Plaintiff has failed to establish Hansen and Burdess acted with discriminatory intent. *See Gilani*, 843 F.3d at 348. "Proving discriminatory purpose is no simple task." *Villanueva v. City of Scottsbluff*, 779 F.3d 507, 511 (8th Cir. 2015). "Under our cases, [Plaintiff] must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *United States v. Frazier*, 408 F.3d 1102, 1108 (8th Cir. 2005).

Here, there is no evidence the Defendants acted with a discriminatory purpose. Rather, the record evidence is clear that Burdess arrested Plaintiff on October 3 due to his disruptive behavior and refusing to leave the podium after Mayor Hansen ordered him to cease his derogatory comments. SUF ¶¶ 38-39. Similarly, to the extent Burdess was involved in Plaintiff's October 24 arrest, that arrest was also based on Plaintiff's disruptive behavior, not his speech. SUF ¶¶ 60-61. And Hansen was acting—at worst—on the objectively reasonable mistake that Plaintiff's speech was defamatory, not out of an attempt to punish Plaintiff for his particular speech. SUF ¶ 33, 54. As such, Plaintiff has failed to establish Burdess and Hansen acted with discriminatory intent, and his claim against Burdess fails as a matter of law.

## VI.   PLAINTIFF HAS FAILED TO SET FORTH EVIDENCE SUFFICIENT TO ESTABLISH *MONELL* LIABILITY FOR THE CITY OF NEWTON.

Plaintiff's claims against Newton as a municipality fail as a matter of law. *See* Compl. Counts III & IV, V, VI, VII, VIII, IX. "It is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the

implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, 585 U.S. 87, 95 (2018) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). To survive a motion for summary judgment based upon a *Monell* claim, a plaintiff must show a constitutional violation that results from a municipal policy, an unofficial custom, or a failure to train or supervise. *Robbins v. City of Des Moines*, 984 F.3d 673, 681-82 (8th Cir. 2021). "As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

First, a *Monell* claim will fail as a matter of law if the court finds there is no underlying constitutional violation. *McElree v. City of Cedar Rapids*, 372 F. Supp. 3d 770, 794 (N.D. Iowa 2019) ("Without a constitutional violation by the individual officers, there can be no § 1983 or Monell . . . municipal liability." (quoting *Hayek v. City of St. Paul*, 488 F.3d 1049, 1055 (8th Cir. 2007))). Here, for the reasons explained in the preceding sections, there are no underlying constitutional violations by Burdess or Hansen. Thus, there can be no *Monell* liability.

Second, Plaintiff has failed to provide any evidence of an official policy or custom created by Newton related to the alleged unconstitutional act. There is no evidence of a municipal policy, an unofficial custom, or a failure to train or supervise that led to arresting Plaintiff in retaliation for his speech. There is factually no evidence of prior claims similar to Plaintiff's or a custom that allows the alleged unconstitutional acts to continue. *See Whitney v. City of St. Louis*, 887 F.3d 857,

861 (8th Cir. 2018) (concluding *Monell* claim failed because the plaintiff failed to provide sufficient factual allegations).

To the extent that Plaintiff is attempting to allege that the "Derogatory Comments Rule" is an official policy or custom that permits the alleged unconstitutional retaliation, (1) Plaintiff was not retaliated against under the rule because he was arrested for his disruptive conduct, not violating the rule (2) Plaintiff's particular speech was not protected under the First Amendment, so the policy was not unconstitutional as applied to Plaintiff, and (3) Plaintiff cannot establish the rule is otherwise facially unconstitutional. *See, e.g.*, *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, Nos. 24-1075, 24-1082, 2024 U.S. App. LEXIS 20009, at *15 (8th Cir. Aug. 9, 2024) (noting facial challenges under the First Amendment are "hard to win" and should only be applied when "a substantial number of its applications are unconstitutional"); *Phelps-Roper v. City of Machester*, 697 F.3d 678, 685 (8th Cir. 2012) (cautioning against invalidating laws in facial challenges because of the limited record before the court). As such, Plaintiff has failed to establish an unconstitutional official policy or custom. Plaintiff's claims should be dismissed.

CITY OF NEWTON, MICHAEL HANSEN, and ROB BURDESS, Defendants,

By: _____

Jason C. Palmer  AT0006089
Georgia R. Rice  AT0015229
LAMSON DUGAN & MURRAY, LLP
6400 Westown Pkwy, Ste. 280
West Des Moines, IA  50266
Phone:  (515) 823-0458
Fax:  (515) 298-6536
E-Mail:  jpalmer@ldmlaw.com
             grice@ldmlaw.com

ATTORNEYS FOR DEFENDANTS

Patrick Jaicomo*
James T. Knight II*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
bmorris@ij.org
pjaicomo@ij.org
jknight@ij.org

Gina Messamer
PARRISH KRUIDENIER LAW FIRM
2910 Grand Avenue
Des Moines, Iowa 50312
Tel: (515) 284-5737
gmessamer@parrishlaw.com

Counsel for Plaintiff Noah Petersen
*Admitted Pro Hac Vice

ATTORNEYS FOR PLAINTIFF

---

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the 27th day of September, 2024 by:

☐ U.S. Mail          ☐ FAX
☐ Hand Delivered     ☐ UPS
☐ Federal Express     ☒ Other: CM-ECF

/s/ Misty Munoz