## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| **NOAH PETERSEN**, <br> *Plaintiff*, <br><br> v. <br><br> **CITY OF NEWTON, IOWA**, **MICHAEL HANSEN**, Mayor of Newton, sued in his official and individual capacity, and **ROB BURDESS**, Chief of the Newton Police Department, sued in his official and individual capacity <br> *Defendants*. | Civil Action No.: 4:23-cv-00408-SMR-SBJ <br><br><br> **DEFENDANTS' APPENDIX IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PART 2 OF 3 (APP060-APP120)** |

Defendants, City of Newton, Iowa, Michael Hansen, and Rob Burdess submit this Appendix in Support of Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.

### Table of Contents

1. 2018 Procedural Rules……………………….…………………………...APP001-APP008
2. Burdess Deposition………………………………………………………APP009-APP019
3. Davis Deposition…………………………………………………….…...APP020-APP026
4. Hansen Deposition……………………………………………………….APP027-APP050
5. Petersen Deposition……………………………………………………...APP051-APP058
6. April 19 Email……………………………………………………………..….APP059
7. Sept. 6 Agenda………………………………………………….…………APP060-062
8. Sept. 6 Video……………………………………………………………………APP063
9. Sept. 6 Video Transcript……………………………………………….......…APP64-73
10. Oct. 3 Agenda……………………………………………………………APP074-APP078
11. Oct. 3 Video………………………………………………………………….APP079
12. Oct. 3 Video Transcript……………………………………………………APP080-APP088
13. DACV122471 Protective Order………………………………….………APP089-APP091
14. DACV122471 Extension…………………………………………….………APP092- APP094
15. SMAC016647 Criminal Complaint………………………………………APP95-APP096
16. SMAC016647 Iowa Incident Supplemental Report……………….……………APP097
17. SMAC016647 Bond Posted……………………………………………...APP098-APP099
18. SMAC016647 Motion for Leave to Amend…………………….……….APP100-APP101

19. SMAC016647 Order for Leave to Amend………………………………APP102-APP103
20. SMAC016647 Plea…………………………………………………………...APP104
21. SMAC016647 Motion to Dismiss………………………………APP105-APP108
22. SMAC016647 Order & Verdict………………………………………APP109-APP115
23. Oct. 24 Agenda………………………………………………...APP116-APP120
24. Oct. 24 City Council Meeting Video………………………………………APP121
25. Oct. 24 Meeting Transcript…………………………………………APP122-APP133
26. Oct. 24 Audience Member Video……………………………………………APP134
27. Oct. 24 Audience Member Transcript…………………………………...APP135-APP139
28. SMAC016680 Criminal Complaint……………………………………...APP140-APP141
29. SMAC016680 Iowa Incident Supp. Report…………….…………………………APP142
30. SMAC016680 Motion to Amend………………………………………APP143-APP144
31. SMAC016680 Order to Amend………………………………………APP145-APP146
32. SMAC016680 Plea…………………………………………………………...APP147
33. SMAC016680 Petersen's Motion to Dismiss…………………………APP148-APP155
34. SMAC016680 Order Denying Motion to Dismiss………………………APP156-APP158
35. SMAC016680 Newton's Motion to Dismiss…………….…………………...APP159
36. SMAC016680 Order to Dismiss………………………………………APP160-APP161
37. Nov. 7 Agenda……………………………………………….……………APP162-APP165
38. Nov. 7 Video……………………………………………….…………………APP166
39. 2023 Procedural Rules…………………………………………....……APP167-APP174
40. July 15 Agenda………………………………………….……………APP175-APP178

CITY OF NEWTON, MICHAEL HANSEN, and ROB BURDESS, Defendants,

By: _____

Jason C. Palmer  AT0006089
Georgia R. Rice  AT0015229
LAMSON DUGAN & MURRAY, LLP
6400 Westown Pkwy, Ste. 280
West Des Moines, IA  50266
Phone:  (515) 823-0458
Fax:  (515) 298-6536
E-Mail:  jpalmer@ldmlaw.com
            grice@ldmlaw.com

ATTORNEYS FOR DEFENDANTS

Patrick Jaicomo*
James T. Knight II*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
bmorris@ij.org
pjaicomo@ij.org
jknight@ij.org

Gina Messamer (AT0011823)
PARRISH KRUIDENIER LAW FIRM
2910 Grand Avenue
Des Moines, Iowa 50312
Tel: (515) 284-5737
gmessamer@parrishlaw.com

Counsel for Plaintiff Noah Petersen
*Admitted Pro Hac Vice

ATTORNEYS FOR PLAINTIFF

---

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the 27th day of September, 2024 by:

☐ U.S. Mail          ☐ FAX
☐ Hand Delivered     ☐ UPS
☐ Federal Express    ☒ Other: CM-ECF

/s/ Misty Munoz

# Agenda:   Newton City Council

**City Council Meeting**

**September 06, 2022 6:00 p.m.**

Council Chambers, 101 W 4th St S., Newton, IA 50208
Mediacom Channels: 12/85/121.12, Website Livestream:
Newtongov.org / I want to "view" Livestream of City
Council Meetings (**www.newtongov.org/cablecast**).

| | | |
|---|---|---|
| **Pledge** | | Pledge of Allegiance |
| **Call to Order** | 1. | Roll Call |
| **Presentations** | 2. | Newton Salvation Army – Captain Tim North |
| **Citizen Participation** | 3. | This is the time of the meeting that a citizen may address the Council on matters that are included in the consent agenda or a matter that is not on the regular agenda.  After being recognized by the Mayor, each person will be given three (3) minutes to speak.  Comments and/or questions must be related to City policies or the provision of City services and shall not include derogatory statements or comments about any individual. Except in cases of legal emergency, the City Council cannot take formal action at the meeting, but may ask the City staff to research the matter or have the matter placed on a subsequent agenda. |
| **Consent Agenda** | 4. | August 15, 2022 Regular City Council Meeting Minutes |
| | 5. | Approve Liquor License for the following:  Okoboji Grill of Newton LLC, 1425 W 19th St S., Class C Liquor License, Outdoor Service, Sunday Sales, Catering; Montana Mike's Steakhouse, Wedding Event, DMACC-600 N 2nd Ave W, pending staff approval; Kwik Star #1001, 1910 1st Ave E, Class C Beer Permit, Class B Wine Permit, Sunday Sales. |
| | 6. | Resolution levying assessments for costs of nuisance abatement and providing for the payment thereof (Schedule 22-08). (Council Report 22-247) |
| | 7. | Resolution fixing the amounts to be assessed against individual private properties for the abatement of nuisance violations (Schedule No. 22-09). (Council Report 22-248) |
| | 8. | Resolution revising the funding source for the purchase of 10 golf cars approved earlier by Resolution 2021-261. (Council Report 22-249) |
| | 9. | Resolution Approving the Agreement between Brycer LLC. and the Fire Department for the Compliance Engine. (Council Report 22-250) |
| | 10. | Resolution approving Municipal Solid Waste Sanitary Landfill Local Government Dedicated Fund. (Council Report 22-251) |
| | 11. | Resolution awarding contract for the Newton Sanitary Landfill Pump Station #2 Electrical Cabinet Upgrade Project.  (Council Report 22-252) |
| | 12. | Approve Bills |

DEFS 0013

**Resolution**

13. Resolution approving the design and construction of a park project at 224 W. 3rd St. N. per an updated design concept and approving a funding contribution for this project from the city in an amount not to exceed $150,000. (No Council Report)

   - A group of private citizens associated with Newton Main Street have been working over the last two years to raise funds and plan for a new City park at 224 W. 3rd St. N.
   - Representatives from the group presented an updated concept plan for the park at two recent Council Meetings and are now requesting approval to move forward with the project.
   - This resolution would approve a new park at this location and $150,000 in City funding towards the development of this new City park.

14. Resolution approving the settlement agreement and release between the City of Newton, Iowa and Home Key, L.C. In The Matter of City Of Newton, Iowa V. Home Key L.C., CVCV122655. (No Council Report)

   - In February 2022, the City filed a Petition at Law against Home Key L.C. for lack of performance on cleared D&D properties.
   - A settlement agreement and release has been prepared to resolve the matter by deeding title of 1008 East 8th Street North back to the City of Newton and allowing the Defendant to sell 1012 and 1018 East 8th Street North.

15. Resolution approving the development and minimum assessment agreement between the city of Newton, Iowa and 427 North 3rd LLC. (No Council Report)

   - City Council authorized the filing of a petition for abandoned building for the property at 427 North 3rd Avenue East by Council Resolution 2020-305.
   - 427 North 3rd LLC has agreed to a development and minimum assessment agreement which will result in a rehabilitation of the single family home and a minimum assessment of $190,000 for the property.
   - Upon execution of the agreement, the City would dismiss the abandoned building litigation, and 427 North 3rd LLC would proceed with the renovation of the home.  Progress on the renovation would be monitored and benchmarks must be met.

16. Resolution amending contract with Teamsters Local 120. (Council Report 22-253)

   - The City of Newton and the Teamsters Local 120 wish to modify specifically ARTICLE – 18 UNIFORMS from the July 1, 2019 – June 30, 2024 contract.
   - Article 18 of the collective bargaining agreement between the City and the Union currently requires a clothing allowance on a receipt and reimbursement system. This practice takes a lot of staff time to process invoices and regulate to meet the IRS rules. The City and the Union, through mutual consideration, seek to convert to a

DEFS 0014

direct cash payment to employees, effective in 2022 and thereafter.

17.   Resolution Authorizing Amendments to the City of Newton Employee Handbook Regarding Clothing Allowances. (Council Report 22-254)

- Police, Fire, Public Works and Community Services currently provide a clothing allowance for various non-bargaining employees on a receipt and reimbursement system.  This practice takes a lot of staff time to process invoices and regulate to meet the IRS rules.  The City seeks to convert to a direct cash payment to employees, effective in 2022 and thereafter.

18.   Resolution to Reorganize Staff in the Administration Department. (Council Report 22-255)

- This resolution would approve eliminating the part-time Office Assistant position and adding a full time Administrative Assistant position in the Administration Department.  This job classification would better align with the increased responsibilities expected from the position, allow for additional cross training, provide increased levels of support to the Finance area, and enhance the segregation of duties.

19.   Resolution Authorizing the Newton Fire Department to Accept the 2021 Assistance to Firefighters Grant Award in the Amount of $53,437.14.(Council Report 22-256)

- The Assistance to Firefighters Grant (AFG) program is to award one-year grants directly to fire departments to enhance their abilities to respond to emergencies.
- The program seeks to identify departments that lack resources necessary to protect the health and safety of the public and their firefighting personnel.
- Federal Emergency Management Agency (FEMA) administers the Assistance to Firefighters Grant Program (AFG).

**Staff Reports**           20.   Library Annual Report – Nicole Terry, Library Director

**Mayor/Council Comments**  21.

**Adjourn**

The City of Newton is pleased to provide reasonable accommodations, in compliance with the Americans with Disabilities Act, for those individuals or groups who require assistance to be able to participate in the public meeting.  Should special accommodations be required, please contact the City Clerk's Office at least 48 hours in advance of the meeting, at 641-792-2787 to arrange for accommodations to be provided.

**www.NewtonGov.org**

SEPTEMBER 6, 2022 CITY COUNCIL MEETING VIDEO
RECORDING

SENT IN FLASHDRIVE TO THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION, VIA
CERTIFIED MAIL

1

2

3

4

5

6

7

**ORIGINAL**

8

9

10        TRANSCRIPT OF AUDIO RECORDING

11

12        "City Council Meeting 9-06-22"

13

14

15

16

17

18

19

20

21

22

23

24

25        JESSI C. LASS - CERTIFIED SHORTHAND REPORTER

```
 1                    REPORTER'S NOTES

 2

 3   The transcription is referenced by the name of the

 4   audio file provided.

 5

 6   Speaker identifications were obtained from the audio

 7   recording and/or from information provided by the

 8   client requesting the transcription.

 9

10   Names may be spelled phonetically.

11

12                         ***

13

14            (Audio transcription begins at 11 minutes

15   52 seconds.)

16            MAYOR HANSEN:  Agenda Item Number 3.  This

17   is the time of the meeting that a citizen may

18   address the council on matters that are included in

19   the consent agenda or a matter that is not on the

20   regular agenda.  After being recognized by the

21   mayor, each person will be given three minutes to

22   speak.  Comments and/or questions must be related to

23   city policies or the provision of city services and

24   shall not include derogatory statements or comments

25   about any individual.  Except in cases of legal
```

```
 1    emergency, the city council cannot take formal

 2    action at the meeting and may ask city staff to

 3    research the matter or have the matter placed on a

 4    subsequent agenda.

 5              (Audio transcription ends at 12 minutes

 6    26 seconds.)

 7              (Audio transcription resumes at 39 minutes

 8    53 seconds.)

 9              MR. PETERSEN:  Hello.  My name is Noah.

10    Born and raised here.  Okay.  So -- yes, so everyone

11    that stood before me spoke much better about this

12    park.  And absolutely please fund this park, the

13    whole quarter million, not the current 150 figure.

14    Is that what the current proposal is, right, 150?

15              MAYOR HANSEN:  Correct.  That's what's

16    on the agenda.

17              MR. PETERSEN:  Okay.  Right.  So I'm just

18    going to request that you do the quarter million

19    that they've been asking for, and you apparently

20    agreed to doing, and keep your commitment

21    (inaudible).  And if it's for some reason -- I

22    highly doubt this is the issue -- that you don't

23    have the money for it, but if that is the case, then

24    defund the Newton police department.  They are a

25    violent and human-civil-rights-violating
```

1  organization.

2          MAYOR HANSEN:  Noah, that's it.  We're not

3  going there.

4          MR. PETERSEN:  No.  I'm going to speak.

5          MAYOR HANSEN:  No, you're not.

6          MR. PETERSEN:  Yes, I am, actually.

7          MAYOR HANSEN:  Lieutenant Wing, this

8  gentleman has been stopped from speaking

9  disparagingly about the Newton Police Department.

10  We are not going to have that here.  This is a

11  business meeting.

12          OFFICER WING:  (Inaudible) they've asked

13  you to stop.

14          MAYOR HANSEN:  If you do not stop, you're

15  going to be escorted out of the chambers.

16          MR. PETERSEN:  You're going to arrest me?

17          OFFICER WING:  Yes, sir.

18          MR. PETERSEN:  For speaking, for

19  criticizing you?

20          OFFICER WING:  You're going to be asked to

21  leave.  If you don't leave, you're going to be

22  trespassing.

23          MR. PETERSEN:  Okay.  Well, you're a

24  clown.

25          OFFICER WING:  Okay.

1          MR. PETERSEN:  Don't forget.  (Inaudible)
2   rights, Chris.
3          MAYOR HANSEN:  Sir, stop your comments.
4          MR. PETERSEN:  Don't have violent people
5   on your police force.
6          MAYOR HANSEN:  Sit down.
7          UNIDENTIFIED SPEAKER:  Thank you, Noah.
8          MR. PETERSEN:  Of course.
9          (Audio transcription ends at 41 minutes
10  15 seconds.)
11         (Audio transcription resumes at 1 hour
12  11 minutes 25 seconds.)
13         MAYOR HANSEN:  Agenda Item Number 17 is a
14  resolution authorizing the amendments to the City of
15  Newton employee handbook regarding clothing
16  allowances.  Police, fire, public works, and
17  community services currently provide a clothing
18  allowance for various non-bargaining employees on a
19  receipt and reimbursement system.  This practice
20  takes a lot of staff time to process invoices and
21  regulate to meet the IRS rules.  The City seeks to
22  convert to a cash -- or a direct cash payment to
23  employees effective in 2022 and thereafter.  Is
24  there a motion to adopt this resolution?
25         MALE SPEAKER:  So moved.

1          FEMALE SPEAKER:  Seconded.

2          MAYOR HANSEN:  Does anyone in the audience

3   wish to speak on the matter?

4          MR. PETERSEN:  Hello, my name is Noah.

5   This is an item about police funding; so I'm going

6   to talk about the police a little bit.  And

7   here's --

8          MAYOR HANSEN:  No, you're not.

9          MR. PETERSEN:  Oh, yes, I am.

10          MAYOR HANSEN:  This has to do with

11   clothing allowance.

12          MR. PETERSEN:  (Inaudible) --

13          MAYOR HANSEN:  Have him escorted from the

14   chambers, Lieutenant Wing.

15          MR. PETERSEN:  Oh, no, I'm not.  I'm

16   talk --

17          MAYOR HANSEN:  You are out of order.

18          MR. PETERSEN:  I'm literally talking

19   about --

20          MAYOR HANSEN:  Have this gentleman

21   escorted from the chambers, Lieutenant.

22          MR. PETERSEN:  -- touching.  I'm going to

23   walk.  Don't touch me.

24          OFFICER WING:  (Inaudible.)  Walk.

25          MR. PETERSEN:  Also this is called

1    violating the First Amendment.  Do not forget that.

2            MAYOR HANSEN:  Escort him out of the

3    chambers, Lieutenant.

4            MR. PETERSEN:  Do you like violating the

5    constitution?  (Inaudible) like, let me violate

6    peoples rights, because that's what you do.

7            MAYOR HANSEN:  Thank you, Lieutenant Wing.

8            (Audio transcription ends at 1 hour

9    12 minutes 45 seconds.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2          I, the undersigned, a Certified Shorthand

3    Reporter of the State of Iowa, do hereby certify

4    that the recorded proceedings hereinbefore set forth

5    were transcribed under my direction and that the

6    foregoing constitutes, to the best of my abilities,

7    a true, correct, and complete transcript of said

8    recording provided.

9          Dated this 9th day of December 2023.

10

11                    _____

12                    CERTIFIED SHORTHAND REPORTER
                      Jessi C. Lass, Iowa CSR #1336
13

14

15

16

17

18

19

20

21

22

23

24

25

TRANSCRIPT OF AUDIO RECORDING
"CITY COUNCIL MEETING 9-06-22"

**1**

**1** 5:11 7:8
**11** 2:14 5:12
**12** 3:5 7:9
**15** 5:10
**150** 3:13,14
**17** 5:13

**2**

**2022** 5:23
**25** 5:12
**26** 3:6

**3**

**3** 2:16
**39** 3:7

**4**

**41** 5:9
**45** 7:9

**5**

**52** 2:15
**53** 3:8

**A**

**absolutely** 3:12
**action** 3:2
**actually** 4:6
**address** 2:18
**adopt** 5:24
**agenda** 2:16,19, 20 3:4,16 5:13
**agreed** 3:20
**allowance** 5:18 6:11

**allowances** 5:16
**Amendment** 7:1
**amendments** 5:14
**and/or** 2:22
**apparently** 3:19
**arrest** 4:16
**ask** 3:2
**asked** 4:12,20
**asking** 3:19
**audience** 6:2
**audio** 2:14 3:5,7 5:9,11 7:8
**authorizing** 5:14

**B**

**begins** 2:14
**bit** 6:6
**Born** 3:10
**business** 4:11

**C**

**called** 6:25
**case** 3:23
**cases** 2:25
**cash** 5:22
**chambers** 4:15 6:14,21 7:3
**Chris** 5:2
**citizen** 2:17
**city** 2:23 3:1,2 5:14,21
**clothing** 5:15,17 6:11
**clown** 4:24
**comments** 2:22, 24 5:3
**commitment** 3:20

**community** 5:17
**consent** 2:19
**constitution** 7:5
**convert** 5:22
**Correct** 3:15
**council** 2:18 3:1
**criticizing** 4:19
**current** 3:13,14

**D**

**defund** 3:24
**department** 3:24 4:9
**derogatory** 2:24
**direct** 5:22
**disparagingly** 4:9
**doubt** 3:22

**E**

**effective** 5:23
**emergency** 3:1
**employee** 5:15
**employees** 5:18, 23
**ends** 3:5 5:9 7:8
**Escort** 7:2
**escorted** 4:15 6:13,21
**Except** 2:25

**F**

**FEMALE** 6:1
**figure** 3:13
**fire** 5:16
**First** 7:1
**force** 5:5
**forget** 5:1 7:1

**formal** 3:1
**fund** 3:12
**funding** 6:5

**G**

**gentleman** 4:8 6:20

**H**

**handbook** 5:15
**HANSEN** 2:16 3:15 4:2,5,7,14 5:3,6,13 6:2,8,10, 13,17,20 7:2,7
**Hello** 3:9 6:4
**highly** 3:22
**hour** 5:11 7:8
**human-civil- rights-violating** 3:25

**I**

**inaudible** 3:21 4:12 5:1 6:12,24 7:5
**include** 2:24
**included** 2:18
**individual** 2:25
**invoices** 5:20
**IRS** 5:21
**issue** 3:22
**item** 2:16 5:13 6:5

**L**

**leave** 4:21
**legal** 2:25
**Lieutenant** 4:7 6:14,21 7:3,7
**literally** 6:18

**little** 6:6
**lot** 5:20

**M**

**MALE** 5:25
**matter** 2:19 3:3 6:3
**matters** 2:18
**mayor** 2:16,21 3:15 4:2,5,7,14 5:3,6,13 6:2,8,10, 13,17,20 7:2,7
**meet** 5:21
**meeting** 2:17 3:2 4:11
**million** 3:13,18
**minutes** 2:14,21 3:5,7 5:9,12 7:9
**money** 3:23
**motion** 5:24
**moved** 5:25

**N**

**Newton** 3:24 4:9 5:15
**Noah** 3:9 4:2 5:7 6:4
**non-bargaining** 5:18
**Number** 2:16 5:13

**O**

**OFFICER** 4:12, 17,20,25 6:24
**order** 6:17
**organization** 4:1

**P**

**park** 3:12

payment 5:22

people 5:4

peoples 7:6

person 2:21

PETERSEN 3:9,
17 4:4,6,16,18,23
5:1,4,8 6:4,9,12,
15,18,22,25 7:4

police 3:24 4:9
5:5,16 6:5,6

policies 2:23

practice 5:19

process 5:20

proposal 3:14

provide 5:17

provision 2:23

public 5:16

—————
Q
—————

quarter 3:13,18

questions 2:22

—————
R
—————

raised 3:10

reason 3:21

receipt 5:19

recognized 2:20

regular 2:20

regulate 5:21

reimbursement
5:19

related 2:22

request 3:18

research 3:3

resolution 5:14,
24

resumes 3:7 5:11

rights 5:2 7:6

rules 5:21

—————
S
—————

Seconded 6:1

seconds 2:15
3:6,8 5:10,12 7:9

seeks 5:21

services 2:23
5:17

sir 4:17 5:3

Sit 5:6

speak 2:22 4:4
6:3

SPEAKER 5:7,25
6:1

speaking 4:8,18

spoke 3:11

staff 3:2 5:20

statements 2:24

stood 3:11

stop 4:13,14 5:3

stopped 4:8

subsequent 3:4

system 5:19

—————
T
—————

takes 5:20

talk 6:6,16

talking 6:18

three 2:21

time 2:17 5:20

touch 6:23

touching 6:22

transcription
2:14 3:5,7 5:9,11
7:8

trespassing 4:22

—————
U
—————

UNIDENTIFIED
5:7

—————
V
—————

violate 7:5

violating 7:1,4

violent 3:25 5:4

—————
W
—————

walk 6:23,24

Wing 4:7,12,17,
20,25 6:14,24 7:7

wish 6:3

works 5:16

# Agenda:    Newton City Council

| | |
|---|---|
| **City Council Meeting** | **Council Chambers, 101 W 4th St S., Newton, IA 50208** |
| | **Mediacom Channels: 12/85/121.12, Website Livestream:** |
| | **Newtongov.org / I want to "view" Livestream of City** |
| | **Council Meetings (www.newtongov.org/cablecast).** |
| **October 03, 2022 6:00 p.m.** | |

| | | |
|---|---|---|
| **Pledge** | | Pledge of Allegiance |
| **Call to Order** | 1. | Roll Call |
| **Proclamation** | 2. | Fire Prevention Week - October 9-15, 2022 |
| **Presentation** | 3. | City Engineering Services annual update - Justin Nickel, Bolton and Menk |
| **Citizen Participation** | 4. | This is the time of the meeting that a citizen may address the Council on matters that are included in the consent agenda or a matter that is not on the regular agenda.  After being recognized by the Mayor, each person will be given three (3) minutes to speak.  Comments and/or questions must be related to City policies or the provision of City services and shall not include derogatory statements or comments about any individual. Except in cases of legal emergency, the City Council cannot take formal action at the meeting, but may ask the City staff to research the matter or have the matter placed on a subsequent agenda. |
| **Consent Agenda** | 5. | September 19, 2022 Regular City Council Meeting Minutes |
| | 6. | Approve Liquor License for the following: Alta House Event Center- LC0047705, 1600 E 36th St. S, Class C Liquor License, Outdoor Service, Sunday Sales; Capitol II Theatre- WCN000220, 116 1st St. N, Class C Native Wine Permit, Sunday Sales, Living Quarters; Shop N Save Newton LLC- LE0003589, 404 S 11th Ave. W, Class E Liquor License, Class B Wine Permit, Class C Beer Permit, Sunday Sales; Git-N-Go Convenience Store #45- BC0030584, 1708 S 8th AVE. E, Class C Beer Permit, Class B Wine Permit, Sunday Sales. |
| | 7. | Certify Police Officer list |
| | 8. | Resolution appointing Samantha Forbes to serve on the Newton Downtown Self-Supported Municipal Improvement District (SSMID) Board for a term ending June 30, 2023. (No Council Report) |
| | 9. | Resolution appointing Cookie Fuzell to serve on the Library Board of Trustees for a term ending June 30, 2028. (No Council Report) |
| | 10. | Resolution appointing Bethany Hutchinson to serve on the Library Board of Trustees for a term ending June 30, 2028. (No Council Report) |
| | 11. | Resolution fixing the amounts to be assessed against individual private properties for the abatement of nuisance violations (Schedule No. 22-10). (Council Report 22-269) |

DEFS 0080

12. Resolution awarding contract for the 2022 Union Cemetery Stump Removal Project. (Council Report 22-270)

13. Resolution approving purchase of a storage shed for Agnes Patterson Park.  (Council Report 22-271)

14. Resolution approving a Telecommunications Licensing Agreement with Mahaska Communication Group – Phase 2.  (Council Report 22-272)

15. Resolution approving an agreement with Huron Consulting Services LLC. to provide Newton WaterWorks valuation services related to the 2022 property record report.  (Council Report 22-273)

16. Approve Bills

**Ordinance**

17. Second Consideration of an Ordinance amending the City of Newton Official Zoning Map for property located at 1500 1st AVE E. and 201 E. 15th St. N. from R-2: One– and Two-Family Residential to C-A: Arterial Commercial. (Council Report 22-265) Commercial. (Council Report 22-265)

- The applicant has requested consideration of rezoning the properties at 1500 1st AVE E and 201 East 15th Street North to C-A: Arterial Commercial District.
- At their meeting on September 7th, the Planning and Zoning Commission recommended approval of the rezoning.

18. First Consideration of an Ordinance amending the City Code of Newton, Iowa, by adding Chapter 75: All-Terrain Vehicles, Off-Road Utility Vehicles, Golf Carts, and Snowmobiles. (Council Report 22-274)

- HF2130 was passed by the Iowa Legislature in 2022 allowing for expanded use of ATVs and UTVs on Iowa roadways.  Municipalities have the authority to regulate use of these vehicles within their corporate limits.
- The proposed ordinance allows for limited use of properly equipped ATVs and UTVs on City streets.  Staff does not recommend approval of this ordinance.

19. First Consideration of an Ordinance amending the code of ordinances, City of Newton, Iowa, 2016, Title III Administration, Chapter 32, Section 32.060 – 32.071, "Water Board of Trustees", to dissolve the Water Board of Trustees and adding waterworks code reference to Title V Public Works, Chapter 54 Waterworks. (Council Report 22-275)

- Newton WaterWorks (NWW) is a municipal water utility governed by a Board of Trustees, which is tasked with providing water to customers in the service area for domestic, commercial, industrial and firefighting purposes. In January 2022, the NWW Board of Trustees entrusted the city with the day-to-day management of NWW on an interim basis.
- The NWW Board determined the city has been providing excellent service in a cost-effective manner. At the March 18, 2022 meeting, the NWW Board voted that the NWW Board be dissolved and that

DEFS 0081

governance of NWW permanently be placed with the Newton City Council.

- A special City election was held Tuesday, September 13, 2022. The registered voters voted "YES" by simple majority to the following question: "*Shall the Newton WaterWorks Board of Trustees be dissolved and the City Council of Newton, Iowa, in the County of Jasper, Iowa, assume the obligations of managing and controlling the Newton WaterWorks.*"

- The ordinance deletes CODE OF ORDINANCES, CITY OF NEWTON, IOWA, 2016 TITLE III ADMINISTRATION, CHAPTER 32, SECTION 32.061 – 32.071, "WATER BOARD OF TRUSTEES" language and adds waterworks code references to TITLE V PUBLIC WORKS, CHAPTER 54 WATERWORKS.

20. First Consideration of an Ordinance amending the Code of Ordinances, City of Newton, Iowa, 2016, Title VII, Chapter 70, Section 70.15, "Traffic and Parking Schedules Adopted by Reference" to make changes to street parking in the downtown. (Council Report 22-276)

- The 2022 Downtown streetscape projects included reconstruction of the south 100 block of E 3rd St S, E 2nd St S, W 2nd St S and W 3rd St S. The City Hall parking lot project included reconstructing the parking lot and also constructing a new public lot to the south of City Hall.

- During the design phases staff identified a few ordinance amendments that would need to be made to coincide with these projects.

- The ordinance addresses changing diagonal parking to parallel at a couple of locations and identifying handicap stalls in the new public lot.

**Resolution**

21. Resolution approving an Engineering Services Agreement for the Aurora Park Pickleball Courts Project. (Council Report 22-277)

- On September 13, 2022, residents approved a park bond referendum, which included the construction of pickleball courts in Aurora Park.

- This resolution seeks approval on an Engineering Services Agreement (ESA) from Bolton and Menk needed to design, bid, and construct the project.

- Should this be approved, no design work will begin until the size and location of the proposed improvements are directed by Council and Administration.

22. Resolution approving a settlement and release agreement with the Travelers Indemnity Company related to the former manufactured gas plant site. (Council Report 22-278)

- On August 3, 2020, Council approved Resolution 2020-185 authorizing an agreement with Eisenstein Malanchuk LLP (EM) of Washington, DC; to investigate and negotiate environmental coverage claims related to the former manufactured gas plant site.

DEFS 0082

- EM discovered past coverage with the Travelers Indemnity Company of Hartford, Connecticut; and has secured a proposed settlement and release agreement.
- The agreement with Travelers has been approved by both EM and the City's attorney.

23.   Resolution Amending Funding Sources for the Union Drive Reconstruction Project.  (Council Report 22-279)

- The City has received approval of an additional $550,000 of SWAP funds from the Iowa DOT for the reconstruction of Union Drive.  The proposed resolution amends the funding sources to include the additional $550,000 by eliminating the Road Use Tax portion and reducing the 2022 bond funds from $950,000 to $884,295.

24.   Resolution approving the granting of Downtown Micro Grant Funds in the sign program to Laurie Nelson for 103 1st Avenue West.  (Council Report 22-280)

- Laurie Nelson, Relics LLC, has requested grant assistance for the new building sign.
- At their meeting on September 28, 2022, the Downtown Grant Review Board recommended approval of the granting of funds in an amount not to exceed $200.00, provided a 1:1 match is met.

25.   Resolution authorizing the filing of a 657A.10A abandoned property petition for 1100 Woodland Drive in Newton, Jasper County, Iowa.  (Council Report 22-281)

- The property at 1100 Woodland Drive appears to have been abandoned.
- Under Section 657A.10A, cities may file a petition for ownership of abandoned buildings.  The associated legal fees and court costs with the process is estimated to be between $4,500 and $6,000.

26.   Resolution approving the granting of Downtown Micro Grant Funds in the painting program to Gary Forbes for 102 North 2nd Avenue East.  (Council Report 22-282)

- Gary Forbes proposes a paint removal and re-painting project for the rear deck at 102 North 2nd Avenue East.
- At their meeting on September 28, 2022, the Downtown Grant Review Board recommended approval of a grant in the painting and paint removal program area in an amount not to exceed $3,000.00, provided a 1:1 match is met.

27.   Resolution amending the Block Party Street Closure and the Construction Street Closure.  (Council Report 22-283)

- To better process closures and for applicant clarification these policies have been separated and amended.

28.   Resolution approving the purchase of miTime; a timekeeping software. (Council Report 22-284)

DEFS 0083

- Staff has continually worked on LEAN initiatives around processing payroll since 2015.
- The miTime module is available now that payroll is processed in arrears.  miTime provides an app for electronic timesheets versus the paper timesheets that many of our employees in the field are currently using.  Implementing miTime would save approximately 63.5 hours of manual entry per pay period across departments.

**Mayor/Council Comments**          29.

**Adjourn**

The City of Newton is pleased to provide reasonable accommodations, in compliance with the Americans with Disabilities Act, for those individuals or groups who require assistance to be able to participate in the public meeting.  Should special accommodations be required, please contact the City Clerk's Office at least 48 hours in advance of the meeting, at 641-792-2787 to arrange for accommodations to be provided.

**www.NewtonGov.org**

DEFS 0084

OCTOBER 3, 2022 CITY COUNCIL MEETING VIDEO
RECORDING

SENT IN FLASHDRIVE TO THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION, VIA
CERTIFIED MAIL



1

2

3

4

5

6

7

8   COPY

9

10        TRANSCRIPT OF AUDIO RECORDING

11

12        "City Council Meeting 10-03-22"

13

14

15

16

17

18

19

20

21

22

23

24

25      JESSI C. LASS - CERTIFIED SHORTHAND REPORTER

TRANSCRIPT OF AUDIO RECORDING
"CITY COUNCIL MEETING 10-03-22"                                     Pages 2..5

---

Page 2

1          REPORTER'S NOTES

2

3  The transcription is referenced by the name of the

4  audio file provided.

5

6  Speaker identifications were obtained from the audio

7  recording and/or from information provided by the

8  client requesting the transcription.

9

10  Names may be spelled phonetically.

11

12                    ***

13

14          (Audio transcription begins at 14 minutes

15  30 seconds.)

16          MAYOR HANSEN:  Agenda Item Number 4.  This

17  is the time of the meeting the citizens may address

18  the council on matters that are included in the

19  consent agenda or a matter that is not on the

20  regular agenda.  After being recognized by the

21  mayor, each person will be given three minutes to

22  speak.  Comments and/or questions must be related to

23  city policies or the provision of city services and

24  shall not include derogatory statements or comments

25  about any individual.  Except in cases of legal

---

Page 3

1  emergency, the city council cannot take formal

2  action at the meeting, but may ask the city staff to

3  research the matter or have the matter placed on a

4  subsequent agenda.

5          Does anybody wish to address the council?

6          Come on up here, Mr. Weeks.  Thomas, how

7  are you, sir?

8          MR. WEEKS:  I've got a feeling I'm here

9  for something totally different than the rest of

10  you.  So I'll make this quick.

11          MAYOR HANSEN:  You have three minutes,

12  sir.

13          MR. WEEKS:  I want to present to the city

14  council a possible proposal.  We have a young woman

15  who is a graduate of Newton High School in 1996, and

16  she went to college in Massachusetts.  From there

17  she was hired by NBC News.

18          In 2009 our son was a producer for NBC

19  News and worked with her.  Her name is Sara Haines.

20  And Sara invited my wife and I to New York.  We were

21  on the Today Show.

22          And before the show started, Sara would --

23  took us around.  We met Al Roker, Kathie Lee

24  Gifford, Hoda Kotb, and, yes, that did include the

25  late Carol Channing.  And when Sara introduced us,

---

Page 4

1  she made it clear, "These are friends of mine from

2  my hometown, Newton, Iowa."

3          She numerously -- numerous times on

4  television has mentioned this town with great pride.

5  In 2011 she went to ABC where she's a regular on the

6  show The View and just recently bragged up about her

7  town of Newton.

8          I would like to propose -- we have a large

9  (inaudible), which is a designated area in the

10  southwest part of town.  There is a huge drive in

11  there that has never been given a name.  I would

12  like to propose that be named Sara Haines Drive.

13  I've discussed it with Sara recently, because we are

14  in touch quite a bit, as my son continues to work

15  with her, even though she's at ABC and he's at NBC

16  in Los Angeles.  And she said it'd be a tremendous

17  honor.  And I know she'd be happy to come back for

18  any sort of dedication.  (Inaudible) and a favor

19  (inaudible).

20          MAYOR HANSEN:  Well, Thomas, thank you for

21  that.  As you know, there was a recognition from her

22  birthday, and I did sign a proclamation recognizing

23  her on that day.  And we will certainly take this

24  proposal under advisement, and thank you for

25  bringing it to us.

---

Page 5

1          MR. WEEKS:  Thank you.

2          MAYOR HANSEN:  Thank you so much.

3          UNIDENTIFIED SPEAKER:  See you tomorrow,

4  Tom.

5          MAYOR HANSEN:  Anyone else?

6          Yes, sir.  Come on up, Fred.

7          MR. RHODES:  Fred Rhodes, 1099 South 52nd

8  Avenue East.  The pen's gone.

9          Mr. Mayor, Mr. Administrator, Council --

10  twice.

11          UNIDENTIFIED SPEAKER:  Sorry.

12          MR. RHODES:  Just put it right there.

13  That'll work.

14          I do want to say I appreciate you all for

15  the work that you do.  You've got a very challenging

16  job.  I know that you take a lot of calls.  I know

17  you have to do a lot of work to try to figure out

18  what to do that is right and proper for our city,

19  and I appreciate what you do.  I know it's a

20  challenge.

21          And of course a lot of times some of these

22  challenges -- we never know what some of the

23  problems may present as you make decisions.  And so

24  what I would like to do, I would like to address you

25  this evening on some struggles that we see brewing

TRANSCRIPT OF AUDIO RECORDING
"CITY COUNCIL MEETING 10-03-22"                                    Pages 6..9

Page 6

1  in our community, struggles that have a long-lasting
2  effect on our time -- or on our town.  And a lot of
3  times challenges and decisions that we make we don't
4  necessarily see down the road.
5            Several years ago we saw a weakness in our
6  rental inspection program.  We had a fair amount of
7  subpar rental properties that were unsafe.  Under
8  the rental inspection program that we had at the
9  time, there were not any substantial moves to close
10 those down or to force compliance to proper
11 guidelines, which should have been done, no doubt.
12 If it had been done, the problem would have been
13 solved, and we would not be where we're at today.
14           In an effort to correct the problem, the
15 decision was made to totally throw out the current
16 program and replace it with a totally new and
17 updated program, which has been spread to the
18 commercial properties in Newton as well.  When the
19 new program was set up, an inspector was found, a
20 list of guidelines was set up and approved by the
21 council to be used in the process.
22           Problems have come as a result of these
23 decisions and is creating a lot of unrest in our
24 community.  This unrest is felt by people that we
25 count on to provide extremely valuable housing and

Page 7

1  much needed businesses, both of which are crucial to
2  the development and prosperity of our community.
3            Our inspector has been given free rein to
4  interpret the guidelines that you have agreed to and
5  to make terribly unnecessary rule changes that
6  affect some of our good quality houses that we have.
7  This in turn decreases the value of the property in
8  our town.  Onerous rules are made that can be quite
9  costly and placed on the backs of the people we are
10 counting on to provide homes and businesses.  All of
11 this, in a very difficult time of inflation and in a
12 time when it is hard to find qualified people that
13 can do the work required in a reasonable amount of
14 time, not to mention a time where rental property is
15 in very short supply.
16           MAYOR HANSEN:  Fred, you're approaching
17 your three minutes.
18           MR. RHODES:  Our inspector has also been
19 given a blank check that he can fill out at any time
20 to get a substantial boost to his income, income
21 that, incidentally, goes right out of our community
22 instead of staying right here in Newton where it
23 belongs.  He has stated on more than one occasion
24 that he can fail any house if he chooses.  There is
25 no doubt that the same applies to our business

Page 8

1  property inspection program.
2            All of this has led to landlords selling
3  much needed rental property.  You as council and
4  staff have stated that we need rental property to
5  properly grow our community.  If people move to our
6  town for a job and cannot find a place to rent, they
7  will find a place to rent in Altoona or Ankeny, and
8  then they will never move to Newton, after putting
9  down roots in another community, thus further
10 hurting our community.
11           When landlords get discouraged and sell
12 property, the available property for rent will
13 dwindle, as will the seed for greater population in
14 Newton.
15           MAYOR HANSEN:  Please close, Fred.
16           Anyone else?
17           MS. PRENDERGAST:  Julie Prendergast --
18           MAYOR HANSEN:  Julia, your three minutes
19 are beginning.
20           MS. PRENDERGAST:  I'm sorry?
21           MAYOR HANSEN:  Your three minutes are
22 beginning.  Go ahead.
23           MS. PRENDERGAST:  Julie Prendergast.  As a
24 business owner and a rental property owner in
25 Newton, I would like to address the council with a

Page 9

1  grave concern that I have regarding the inspection
2  program covering our rental property and business
3  properties.
4            The current program that we are using has
5  some consequences that are very detrimental to our
6  community as a whole.  As always there are
7  consequences that we make in the directions that we
8  go.  These consequences, though unintended, will
9  have a detrimental effect on our community and all
10 of our residents.
11           The current inspection program costs that
12 have been added to comply discourages a lot of the
13 property owners and retail -- I'm sorry --
14 residential and landlords.
15           I, for one, have sold three of my rental
16 properties this last year.  The properties were sold
17 to owner-occupied and will likely not ever come back
18 to a rental unit.  I did this in a market where it
19 is almost impossible to find a house to rent.  I
20 sold because the rental inspection program made it
21 prohibitive and maintained -- and made a -- made it
22 hard to make a profit on these properties.
23 Incidentally, these were nice homes for people to
24 live.  They were safe and they were affordable.
25           The inspection program has been added to a

Page 10

1   community that has a lot of housing stock that is
2   over 100 years old, including some quality business
3   properties.  The older homes and businesses are
4   quality structures which help to make our community
5   unique and a great draw to bring people to town.
6   Many of these properties have been providing safe
7   homes to raise families and a wonderful place to
8   transact business for over 100 years, but these
9   properties were built under different guidelines and
10  different rules.
11          To bring this community up to a Waukee
12  standard will devastate our housing market and
13  business environment.  It will take away the
14  advantage of attracting people to move to our
15  community.  This is a great cost advantage to have
16  people move to Newton, which is going to change
17  under this program.  This will result in people
18  deciding to not move here.
19          Keep in mind that if new housing is built
20  to provide rental housing, the cost of rent will go
21  up exponentially.  For instance, two new houses,
22  two-bedroom houses, were recently put on the market
23  for $298,000.  For these to be put on a rental
24  market, they would need a price tag of almost $3,000
25  a month.

Page 11

1          MAYOR HANSEN:  You are approaching three
2   minutes.
3          MS. PRENDERGAST:  Thank you, Mayor Hansen.
4          We cannot take our older houses off the
5   market.  It will devastate our change for growth for
6   years to come.
7          With all of the unrest of the landlords,
8   which is rapidly spreading to our business owners,
9   the council voted to renew the contract without even
10  checking with the citizens of Newton that were
11  directly affected by the program.
12          In light of the problems that are sweeping
13  our rental market and business community, I might
14  add that will be a dire consequence for all of our
15  residents.  We are asking that the current programs
16  be suspended as the situation is assessed and
17  properly directed -- direction can be found that
18  will help our community to move forward.
19          MAYOR HANSEN:  Thank you, Julia.
20          MS. PRENDERGAST:  I would like to thank
21  all of you guys for caring about our community as
22  much as I do and everybody here that showed up
23  tonight.  Thank you.
24          MAYOR HANSEN:  Anyone else?
25          Please come on up.

Page 12

1          Your three minutes begins, Barney.  Go
2   ahead.
3          MR. BUSHORE:  My name's Barney Bushore.  I
4   would just like to reiterate what Fred and Julie
5   have both talked about on the rental inspections and
6   the commercial inspections.  I think there's an
7   inequity there on the inspectors that -- you know,
8   the way they treat everybody on these different
9   commercial and residential properties.  And it's, I
10  guess, to me ridiculous with some of the things they
11  come up with, you know, as far as, you know, not
12  being able to use a garage for storage.  You can't
13  store an unassembled bed in the basement in a room,
14  because it doesn't have an egress window.  The bed's
15  not even, you know, assembled, things like that.
16  You know, it's just ridiculous stuff.  And because
17  of it, every time you fail, you have to pay another
18  inspection fee.  And, you know, I just think there's
19  got to be a little more common sense with the whole
20  program.
21          And I do want to thank everybody that
22  showed up tonight too.  That we're, you know, trying
23  to get the problem corrected.  Thank you.
24          MAYOR HANSEN:  Thank you, Barney.
25          Who is next?

Page 13

1          Yes, ma'am.  Come on up.
2          MS. DUFFUS:  I brought my show-and-tell.
3          MAYOR HANSEN:  Okay.  Your three minutes
4   begins.  Go ahead.
5          MS. DUFFUS:  Yes.  I'm Glenda Duffus, and
6   I live at 2007 East 12th Street South.  That's just
7   across the I-80 overpass on the -- Reasoner Road.
8          I'd like to follow up on an email that I
9   sent to each of the council members, as well as
10  Mayor Hansen, on September 10th, and it was
11  regarding the pyrotechnic convention that took place
12  at the Iowa Speedway on August 9th or that week --
13  the first week of August, really, and all the debris
14  that remained following the convention when they
15  left.
16          It was very gratifying to receive a
17  response from one council member, Evelyn George.
18  She even drove out to look at the area and collected
19  her own bag of debris.
20          How do I know about this?  Rusty Wallace
21  rode his -- my daily walking route.  I walk all the
22  way over to the headquarters building and lots of
23  times beyond.  And I was quite dismayed at the
24  amount of debris that was generated from each day's
25  events.  I know there were three public concerts and

Page 14

1   three fireworks displays, but it seemed like there
2   were small bombs that were going off all hours of
3   the day and night.  The road was littered -- and I
4   mean littered -- with chunks of industrial
5   cardboard, sharp chunks of plastic that I'm sure had
6   been domes or spheres that exploded.  The ditches
7   and the fields were full of newsprint and brown
8   paper that was blowing everywhere.
9        So on my daily walks, I picked up bags of
10  debris for a whole month.  And then I decided I'd
11  write a letter to each of you.
12       So much debris still remains, but there's
13  lots of grass and ragweed that's grown up; so you
14  really don't see the debris as much as you might.
15  But just across from the track, there's kind of a --
16  I call it a little circle drive where there used to
17  be a house, and if you walk in there, you can just
18  see all kinds of debris that's still there and not
19  biodegradable.
20       So being a teacher -- past teacher -- past
21  teacher of Sara Haines, actually, these are pieces
22  of the plastic that I picked up.  I guess you'd call
23  them plastic.  Big pieces of stuff like this that I
24  don't think is very biodegradable.  So that's what I
25  picked up just last week in just a couple of

Page 15

1   minutes.
2        Seeing all this debris, I think, is a bad
3   reflection on our town and the area around our town,
4   and it shows a lack of respect for the track, the
5   area around the racetrack, and the neighborhood.
6   Granted, this was the first event of its kind that
7   we had here in Newton, but I think that we can learn
8   a lot of things from the unknowns that we didn't
9   know.  First and foremost, when the (inaudible) --
10       MAYOR HANSEN:  You're approaching three
11  minutes.
12       MS. DUFFUS:  -- pays good money to invite
13  such a group, there should be signed agreements in
14  place that really take care of the cleanup
15  afterwards.  I think the City has a responsibility
16  to follow up that, and the Newton citizens, I think,
17  are due that much respect.  Thank you so much.
18       MAYOR HANSEN:  Thank you very much.
19       Who's next?
20       Hello, Scott.
21       SCOTT:  Hi.  Thanks for letting me talk
22  here.
23       MAYOR HANSEN:  Your three minutes begin.
24       SCOTT:  I'm a business owner here in
25  Newton, and I've got some commercial property.  And

Page 16

1   I got an invoice the other day from this inspection
2   company that we're all talking about, and I was a
3   little surprised -- I mean, and I knew that I would,
4   you know, get some of them, because I had some
5   properties that passed, some that failed.  But I had
6   a $1,300 invoice from these guys.  I've got the
7   building I'm in.  I got a fail.  So he says I owe
8   $200 for that one.  I don't know if that was just
9   the inspection or this is going to be the
10  reinspection price.  The Alliant -- old Alliant
11  Energy building, it passed, but I got a bill for
12  $400 for that one.  Then I've got the old Dollar
13  General store and my facility that I use.  It's
14  vacant, but I've got some rental equipment in there.
15  $200 for that one that's due.  My storefront that --
16  the other storefronts at 2617, they passed.  100
17  dollar bills for those.  The old Hy-Vee drugstore
18  was a pass for $400.  And the other one was the
19  reinspection of my building.
20       And he tells me that I'm paying half and
21  the City's paying the other half.  And I'm thinking,
22  Really?  Is that written someplace?
23       And he says, yeah, that's written in this
24  paperwork that we were supposed to have gotten.
25       I just want you guys to hear that, because

Page 17

1   I don't know that you get the full story from some
2   of these things.  And I think it's -- you know, it's
3   incentivized to fail people.  And I didn't fail all
4   mine.  I failed one.  You know, and I just think
5   it's a little ridiculous that these guys are getting
6   paid more to fail you.  They make more money.  They
7   have every incentive to fail everybody in this room.
8   That's not the way it's supposed to be set up.  You
9   know, give the guy an inspection.  And I'm speaking
10  for everybody.  If they fail -- let them have the
11  inspection.  If you fail, hey, you get a chance to
12  go and correct it, but not to bill you like this.
13  This is ridiculous.  And I'm getting billed on ones
14  that I passed; I got some large bills.  And I just
15  hope that you are aware of some of the costs
16  involved in this.  Okay.  That's --
17       MAYOR HANSEN:  Thank you for bringing it
18  to our attention.  Appreciate it.
19       MS. VANGILDER:  Hi.
20       MAYOR HANSEN:  Dana, how are you?
21       MS. VANGILDER:  Good.  I'm Dana VanGilder.
22       MAYOR HANSEN:  Your three minutes has
23  begun.
24       MS. VANGILDER:  I live at 1601 East 36th
25  Street South.  And I just wanted to support some of

Page 18

1  the things that were already said.
2          Number one, when we moved here and started
3  our campground business, at that time it was
4  difficult to find good employees, and when we found
5  one, if we offered a position from someone from out
6  of town, we were finding it very difficult for them
7  to find rental.  And so we ended up having -- I
8  mean, that was how we kept good people:  We bought a
9  house for them, and then we do -- you know, we do
10 payroll deductions and whatnot.
11          But then, on top of it, then this new
12 inspection program starts.  And I have not had any
13 adverse situations with the inspector.  He's worked
14 with me, you know, because I've tried to stay
15 compliant as best I can, but there are rules that --
16 you know, that he's required to follow that I feel
17 need to be revised for certain age houses, and
18 adjusted.
19          I also think that if he enforces the
20 amount of time that you're given to bring your
21 failed property to compliance, it is, as one person
22 mentioned, next to impossible to find contractors
23 these days capable of getting that work done.  And I
24 have one property in particular that I need to get
25 some rails and stuff done, and I don't have anyone

Page 19

1  to do it, and I can't physically do it myself.  So I
2  need more time, and I've worked with him on that.
3          But I really think somebody needs to go
4  down through these guidelines again and update them
5  as a suggestion to this.
6          And they are right.  There is an incentive
7  for them to fail properties.  They have to, A,
8  justify their position.  And then, B, because that's
9  how they make their income, I think there's a bit of
10 conflict of interest there.
11          And then I just wanted to add one more
12 comment.  I was sent a form with a questionnaire to
13 fill out about our campground, and it was asking me
14 for information like the income from each and every
15 site, a lot of things about the income from our
16 property to help the assessor determine valuation.
17 And I don't think in the state of Iowa that
18 assessors are supposed to consider the income from
19 the business that is at the property to dictate
20 pricing, you know, assess values.
21          So I have not filled that out.  I have not
22 sent that in.  I would -- I've been doing as much
23 research as I can in my busy time, but I'm not going
24 to fill it out.  So somebody needs to look at that
25 again and figure out a better way for them to send a

Page 20

1  questionnaire if they need assistance in appraising
2  our business, but I'm not going to send them the
3  income from every -- all 110 spaces that I have
4  annually.  I don't think that's any government
5  official's business.  So I pay my taxes, and I pay
6  my CPA, and --
7          MAYOR HANSEN:  Go ahead, Matt.
8          MS. VANGILDER:  -- so that's another thing
9  that I just wanted to bring up on top of the rental
10 inspection issue.
11          MATT:  Yeah, thanks for the
12 rental inspection.
13          MS. VANGILDER:  I'll send you a copy of
14 that.
15          MATT:  Okay.
16          MS. VANGILDER:  Okay.
17          MATT:  On the assessment inspection,
18 that's not a city function.  So that's likely coming
19 from --
20          MS. VANGILDER:  That's a county --
21          MAYOR HANSEN:  Yeah, we don't do that.
22          MS. VANGILDER:  Okay.
23          MATT:  Yeah.  I would maybe suggest
24 visiting with the assessors's office in Jasper
25 County.

Page 21

1          MS. VANGILDER:  Okay.
2          MATT:  Yeah.  But we can help too.
3          MS. VANGILDER:  All right.  Thanks.
4          MAYOR HANSEN:  Thank you, Dana.
5          Okay.  Anyone else?
6          Scott.
7          MR. CREECH:  Scott Creech, 1205 South 11th
8  Avenue East.
9          MAYOR HANSEN:  Go ahead.
10         MR. CREECH:  Quite a few empty properties
11 on the square, and I just want to say:  Help us make
12 it easier.  Don't make it tougher for us.
13         MAYOR HANSEN:  Thank you.
14         Saw a hand in the back here somewhere.
15         Oh, please come on up.
16         MS. JOCHEMS:  So I'm Laura Jochems.  I
17 have multiple rental properties in Newton, as well
18 as Crazy Redhead Quilting on First Avenue.  And I
19 feel like the inspection process for everything is
20 making landlords want to leave.  I'm a lifer here in
21 Newton, born and raised, my husband as well.  And
22 something's got to change, because I'm ready to sell
23 them all.  And what happens then is you get
24 landlords that don't care.  And I support everything
25 that the other landlords and business owners have

TRANSCRIPT OF AUDIO RECORDING
"CITY COUNCIL MEETING 10-03-22"                                    Pages 22..25

Page 22

1   said.  So thank you for listening.
2          MAYOR HANSEN:  Thank you.
3          Dave.
4          Three minutes are beginning, sir.
5          MR. McNEER:  Dave McNeer, 2525 North 18th
6   Avenue West in Deer Run.  I've got -- the experience
7   with my first rentals that I had inspected all
8   failed.  They never failed in 20, 25 years that I
9   had them inspected before, but they all failed --
10  mysteriously, somehow they failed with the new
11  inspectors.
12          It took about -- and I timed it, because
13  they had to do the duplex, and then they had to go
14  about five or six blocks over to 300 East 13th
15  Street North.  Took them about a total of 10 minutes
16  to say "Yep, yep, yep, yep, yep, good, good, good,
17  good, good.  You're ready -- you're good to go."
18  Cost me another $225.  That's about $875 an hour.
19  Maybe I'm wrong, maybe I'm right, but ballpark, it's
20  really, really good money.  So I can see exactly why
21  the incentive is there to fail the properties.
22          We were just talking about some of the
23  older stock.  The next two that I've got coming up,
24  I've got a 104-year-old triplex, and I've got a
25  160-year-old building.  Guarantee you -- absolutely

Page 23

1   guarantee you -- I'll bet my life on it -- every
2   single one of those places is going to fail, and
3   then I'm going to turn back around, and then I'm
4   going to -- I've already spent -- actually, the
5   triplex, I've lost two of the renters already.  I'm
6   losing the third one here probably this month,
7   because they're tired of us coming in, trying to get
8   everything ready so that it all passes the
9   inspection.
10          I -- so I'm out thousands of bucks in rent
11  already, and I'm out thousands of bucks in paying a
12  contractor, the only contractor that I can find in
13  this town to do the work on top of that.  So I've
14  probably lost five, six, seven, eight thousand bucks
15  in the last couple of months trying to get these
16  properties ready so that I can turn around and rent
17  them out at an affordable price, which is not going
18  to be as affordable anymore, because I've got to
19  make some money somewhere.  I'm not doing this for
20  my health.
21          But just like a couple other people said,
22  you know what, I'm ready to sell them, just get rid
23  of them.  Just -- it just -- it is so frustrating to
24  have to do this and to be hounded about, oh, I've
25  got to get this inspected here, I've got to get this

Page 24

1   inspected there.  You know, the way the program used
2   to be I never had one property fail.  I never had
3   one injury in all these -- and I've been doing this
4   for 20, 25 years.  Never had one injury.  Never had
5   one incident.  Nothing happened at those properties.
6   They were all safe.
7          Now, if I have a railing that's 4 1/4
8   inches wide, I've got to make it 4 inches wide or
9   less.  You know how long it takes to take about 200
10  railings off a deck and move them a quarter inch in
11  to pass?  A long time and a lot of money.  And some
12  of this stuff is just absolutely crazy.
13          So, anyway, I totally agree with everybody
14  else here.  It's really frustrating.  We're trying
15  to provide a good service.  We're trying to provide
16  good housing here in the community, and it's not
17  worth it.  It's just really, really frustrating.  So
18  I don't know what needs to change, but something
19  needs to change, guys.
20          MAYOR HANSEN:  Thank you.
21          MR. McNEER:  Thank you.
22          MS. PRENDERGAST:  Okay.  I'm Joyce
23  Prendergast, 5672 South Ninth Avenue East.  And,
24  first of all, I'm here to support everything that
25  everybody's saying, but I want to give you an

Page 25

1   instant.  I did six rental inspections.  It took a
2   half-hour and paid them $450.  And one of them, they
3   said the paint on the house was fine.  The garage
4   was not okay.  It needed to be repainted.  If you
5   look at the permit, which I brought up to the
6   inspector at the time, is -- it says it has to be
7   80 percent to require it to be repainted.  It wasn't
8   even at 40 percent.  The house was fine.  The garage
9   was an older garage.  So, again, the costs that we
10  are paying for some of this stuff is unbelievable.
11          I agree with what Dave said regarding the
12  railings being too far apart.  Even going down the
13  basement, you can't put the requirements they have
14  of you going down the basement.  We had a house that
15  you'd hit your head before you're going to fall off
16  the stairway, that we had to go and put in all this
17  railing.
18          So I think the city council needs to
19  really look at the inspectors, what they're
20  requiring, and talk to the people out here as far as
21  what they're not following, because there's so much
22  they're not following.  And depending on what
23  inspector you get is going to depend on whether it
24  passes/fails and, when you do a reinspection,
25  whether that one passes and fails, because it's not

Page 26

1  the same inspector that does both of them.  Thank
2  you.
3          MAYOR HANSEN:  Thank you, Joyce.
4  Anyone else?
5          Yes, sir.
6          MR. PETERSEN:  Hello.  My name is Noah.
7  I'm going to read this statement that you -- I sent
8  April 19th that was very oddly called derogatory.
9          UNIDENTIFIED SPEAKER:  Noah, for some of
10  us, state your address.  As you noticed, everyone
11  else has.
12          MR. PETERSEN:  I'm not going do to that,
13  and I don't have to do that, and you can't make me
14  do that.
15          So here is my statement:  Hello -- sorry.
16          UNIDENTIFIED SPEAKER:  You got your three
17  minutes going, Dave?
18          MR. PETERSEN:  All right.  Hello.  This is
19  my public comment for city council meeting, well,
20  now October 3rd, 2022.  Defund Newton Police
21  Department.  They are a violent civil- and
22  human-rights-violating organization who do not make
23  the community safer.  They are also pro domestic
24  abuse, because they are currently employing a
25  domestic abuser and choosing to not release the

Page 27

1  records about that domestic abuse.
2          MAYOR HANSEN:  You are out of order, sir.
3  Stop your comments.
4          MR. PETERSEN:  No, I'm not.
5          MAYOR HANSEN:  You are out of order.
6          MR. PETERSEN:  As I was saying --
7          MAYOR HANSEN:  Chief --
8          MR. PETERSEN:  -- reallocate funds from
9  policing --
10          MAYOR HANSEN:  -- escort this gentleman --
11          MR. PETERSEN:  -- to actually people --
12          MAYOR HANSEN:  Stop your comments.
13          MR. PETERSEN:  -- with substance abuse --
14          MAYOR HANSEN:  You are out of order.
15          MR. PETERSEN:  -- issues.  It is a health
16  issue --
17          MAYOR HANSEN:  You are violating council
18  rules.  You are violating council rules.
19          MR. PETERSEN:  You are violating the
20  United States Constitution.
21          MAYOR HANSEN:  Please escort this
22  gentleman out of the chambers.
23          MR. PETERSEN:  As I was saying, reallocate
24  funds --
25          POLICE CHIEF:  (Inaudible) --

Page 28

1          MR. PETERSEN:  -- from policing to
2  actually help people --
3          MAYOR HANSEN:  Chief, escort this
4  gentleman from the chambers.
5          MR. PETERSEN:  Don't touch me.  Get your
6  hands off me.
7          POLICE CHIEF:  Let's go.
8          MR. PETERSEN:  No.  I'm speaking my
9  three-minute period.
10          MAYOR HANSEN:  Okay.  Your three-minute
11  period --
12          MR. PETERSEN:  I have --
13          MAYOR HANSEN:  -- has ceased.
14          MR. PETERSEN:  It has not ceased.
15          MAYOR HANSEN:  Escort him from the
16  chambers.
17          MR. PETERSEN:  I have a right to criticize
18  the government if I want to criticize the
19  government.
20          MAYOR HANSEN:  You are violating the
21  city --
22          MR. PETERSEN:  You are violating the First
23  Amendment.
24          MAYOR HANSEN:  -- (inaudible) rules.
25          MR. PETERSEN:  And you are violating the

Page 29

1  First Amendment.
2          MAYOR HANSEN:  Escort him from the
3  chambers, please.
4          POLICE CHIEF:  You will be arrested if you
5  don't leave.
6          MR. PETERSEN:  Arrest me, then.
7          POLICE CHIEF:  Okay.  Is that your choice?
8          MR. PETERSEN:  Yes.
9          POLICE CHIEF:  Okay.
10          MR. PETERSEN:  Because I'm going to be
11  speaking my three-minute period --
12          POLICE CHIEF:  Okay.
13          MR. PETERSEN:  -- to voice my criticisms
14  about the government.
15          POLICE CHIEF:  The mayor has told you to
16  leave.
17          MR. PETERSEN:  Yes.  And I have three
18  minutes to give the government --
19          POLICE CHIEF:  Okay.
20          MR. PETERSEN:  -- some criticism.
21          POLICE CHIEF:  He's told you to leave.
22          MR. PETERSEN:  Okay.  I'm not leaving
23  until -- are my three minutes up?
24          POLICE CHIEF:  He's told you to leave.
25          MR. PETERSEN:  I'm not leaving.

Page 30

1      POLICE CHIEF:  Okay.  Do you want to be
2  arrested?
3      MR. PETERSEN:  Sure.  Arrest me, then.
4      POLICE CHIEF:  Okay.  Place your hands
5  behind your back.
6      MR. PETERSEN:  Arrest me for speaking my
7  First Amendment rights.
8      POLICE CHIEF:  Okay.
9      MR. PETERSEN:  Go ahead.  You should be
10 ashamed of yourselves.
11     POLICE CHIEF:  Okay.
12     MAYOR HANSEN:  Anyone else wish to address
13 the council?
14     MR. SMITH:  Carl Smith from Kellogg.  I'd
15 just like to say, if nobody is being out of line,
16 they probably should get their three minutes of talk
17 unless it's something totally out of line.
18     I've been watching you, Mayor.  I don't
19 know you personally.  I -- you don't know me
20 personally, I don't think.  A lot -- several of
21 these people probably know me.  But I just hope
22 you're listening and taking into consideration
23 what's been said here tonight.  It's pretty -- it's
24 serious, and something needs to be taken into
25 consideration.  So I hope you're taking it

Page 31

1  seriously.
2      So I know all you guys are putting your
3  time into making this city better, and we all want
4  to make this city better.  So I hope everybody
5  stands accountable for every position you're in --
6  and we will too -- to work together to make this a
7  better community, because -- we want to do.  But I
8  appreciate your time.  Thank you.
9      MAYOR HANSEN:  Thank you, sir.
10     MS. AVERY:  Hi.
11     MAYOR HANSEN:  Hi.
12     MS. AVERY:  Hello.  How are you?
13     MAYOR HANSEN:  How are you?
14     MS. AVERY:  Good.  I'm Cyndi Avery, 13627
15 North 75th Avenue East.  And I just wanted to talk
16 really quick back to the rental inspections, because
17 that seems like a much safer topic tonight.
18     MAYOR HANSEN:  Just to inform you, your
19 three minutes is going, just --
20     MS. AVERY:  That's fine.  I won't --
21     MAYOR HANSEN:  -- like everybody else.
22     MS. AVERY:  -- be three -- I promise.  I
23 agree with what the folks said.  It's far too cost
24 prohibitive.  It's not a fair deal.  It does have
25 conflicts of interest.

Page 32

1      A year and a half, two years ago my
2  husband and I bought a new home and wanted to get
3  involved in the rental business.  We have a second
4  home now.  We're not able to do that, just because
5  it was so cost prohibitive.  And as this has
6  progressed and we've watched it, it's just not
7  something we're going to be able to get into.  So I
8  just wanted to stand up and show my support for that
9  also.
10     MAYOR HANSEN:  Thank you, Cyndi.
11     Anyone else?
12     All right.
13     (Audio transcription ends at 48 minutes
14 59 seconds.)

Page 33

1              C E R T I F I C A T E
2      I, the undersigned, a Certified Shorthand
3  Reporter of the State of Iowa, do hereby certify
4  that the recorded proceedings hereinbefore set forth
5  were transcribed under my direction and that the
6  foregoing constitutes, to the best of my abilities,
7  a true, correct, and complete transcript of said
8  recording provided.
9      Dated this 9th day of December 2023.
10
11
12  _____
    CERTIFIED SHORTHAND REPORTER
    Jessi C. Lass, Iowa CSR #1336
13
14
15
16
17
18
19
20
21
22
23
24
25

| ORDER OF PROTECTION | 05501  DACV122471 |
|---|---|
| This order can be verified during business hours with **Jasper County Clerk of Court at (641)792-3255 or at any time with the Jasper County Sheriff at (641)792-5912** | Judge: **Richard B Clogg**<br>County **JASPER** State **IOWA**<br><br>**PROTECTIVE ORDER BY CONSENT AGREEMENT**<br>(Section 236.3 Petition)<br><br>**ISSUE DATE: 10/01/21** |

| PETITIONER/PROTECTED PARTY: | Other Protected Persons: |
|---|---|
| COURTNEY VIOLA VANDERHART | |

VS.

| RESPONDENT/DEFENDANT: | RESPONDENT  Date of Birth 1997 |
|---|---|
| NATHAN MICHAEL WINTERS | Address for Respondent (not shared address with Protected Party)<br>Knoxville, Iowa |
| **CAUTION:** ☐ | **If checked, FIREARMS WARNING for Law Enforcement** |

**THE COURT HEREBY FINDS:**
It has jurisdiction over the parties and subject matter and the respondent has been provided with reasonable notice and opportunity to be heard. **Additional findings are set forth below.**

**THE COURT HEREBY ORDERS:**
The above named Respondent is restrained from committing further acts of abuse or threats of abuse. The above named Respondent is restrained from any contact with the Petitioner/Protected Party. **Additional terms of this order and exceptions to the above provisions are as set forth below.**

This order shall remain in effect until **October 1, 2022** unless it is modified, terminated, extended, or superseded by written order of the court, or until the dismissal of the case.

**WARNINGS TO RESPONDENT:**
**This order shall be enforced, even without registration, by the courts of any state, the District of Columbia, and U. S. Territory, and any tribal jurisdiction.   18 U.S.C. 2265.  Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment.  18 U.S.C. 2262.  Only the court can change this order.**

**Federal <u>and state</u> laws provide penalties for possessing, transporting, shipping, or receiving any firearm or ammunition. (18 U. S. C. 992(g)(8)); Iowa Code Section 724.26(2)(a).**

**Only the court can change this order.**

On 10/01/21, a hearing was held on the Petition for relief from domestic Abuse. The following persons were present and participated in the hearing: **Courtney Vanderhart and Nathan Michael Winters ad counsel of record for each party.**.

E-FILED          DACV122471 - 2021 OCT 01 10:17 AM          JASPER
                 CLERK OF DISTRICT COURT                   Page 2 of 3

The court FINDS by a preponderance of the evidence:

(1)  Respondent was personally served with a copy of the petition and the temporary protective order containing notice of this hearing.

(2)  The parties appeared and each consented to the entry of this order

Therefore, pursuant to Iowa Code Chapter 236, the court ORDERS as follows:

1.  Respondent shall not threaten, assault, stalk, molest, attack, harass or otherwise abuse the protected party.  Respondent shall not use, or attempt to use, or threaten to use physical force against the protected party that would reasonably be expected to cause bodily injury.

2.  Respondent shall not communicate with the protected party in person or through any means including third persons.  This restriction shall not prohibit communication through legal counsel.

3.  The protected party shall have exclusive possession of the residence located at 505 W Lincoln ST, Apt #1, Monroe, IA 50170.  Respondent shall not go to, enter, occupy or remain in that residence or any other residence in which the protected party is staying, under any circumstance.

4.  Additional Provisions are as follows:
Nothing in this Order prohibits the Repondent from conducting official police business. However, the Respondent shall not enter the dispatch room if the parties are on duty at the same time. Respondent shall have no contact with Protected Party other than emergency radio contact.
 seal the entire file from public access, other than court orders and child support payment records.

 Respondent was personally served with a copy of this order by the court.

The clerk of court shall provide copies of this order to the parties and law enforcement agencies, pursuant to Iowa Code sections 236.5(5) and 664A.4.

5RDA03

If you need assistance to participate in court due to a disability, call the disability coordinator at (515) 286-3394 or information at https://www.iowacourts.gov/for-the-public/ada/. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**

E-FILED        DACV122471 - 2021 OCT 01 10:17 AM        JASPER
CLERK OF DISTRICT COURT        Page 3 of 3

State of Iowa Courts

| Case Number | Case Title |
| --- | --- |
| DACV122471 | COURTNEY VIOLA VANDERHART VS' NATHAN MICHAEL WINTERS |
| **Type:** | PROTECTIVE ORDER |

So Ordered

Richard B. Clogg, District Court Judge,
Fifth Judicial District of Iowa

Electronically signed on 2021-10-01 10:17:27

E-FILED       DACV122471 - 2023 FEB 22 03:35 PM       JASPER
CLERK OF DISTRICT COURT       Page 1 of 3

Rule 4.200--Form 4.203: *Cancellation, Modification, or Extension of Protective Order--Domestic Abuse (Iowa Code chapter 236)*

| | |
|---|---|
| **Cancellation, Modification, or Extension of Protective Order--Domestic Abuse** <br> Iowa Code chapter 236 | 05501  DACV122471 <br> Judge Terry Rickers <br> **County JASPER   State IOWA** <br><br> Issue Date 02/22/23 |

To verify this order during business hours, contact the JASPER County Clerk of Court office at (641) 792-3255, or anytime with the JASPER County Sheriff's Office at (641) 792-5912.

| | |
|---|---|
| **Plaintiff or Protected Person** <br> COURTNEY VIOLA VANDERHART <br> v. <br> **Defendant** <br> NATHAN MICHAEL WINTERS <br><br> **CAUTION:** ☐ If checked, **FIREARMS WARNING** for Law Enforcement | **Other Protected Persons** *use initials and birth year for minor children* <br><br> Defendant's date of birth 1997 <br><br> Defendant's address ***cannot be same as Plaintiff's or Protected Person's address*** <br> Knoxville, Iowa |

If you need assistance to participate in court due to a disability, call the disability coordinator at (515) 286-3394 or information at https://www.iowacourts.gov/for-the-public/ada/. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**

**The court finds**

The court has jurisdiction over the parties and the subject matter.  Defendant was provided with actual notice of this hearing and an opportunity to participate.  **Additional findings are below.**  This order is in effect upon service on Defendant.

**Notice to Defendant**

1.    This order is enforceable in every state, U.S. Territory, tribal jurisdiction, and the District of Columbia.  Violating this order outside the State of Iowa may result in federal imprisonment. 18 U.S.C. section 2262.

2.    **Federal and Iowa felony criminal penalties for possessing, transporting, shipping, or receiving any firearms, offensive weapons, or ammunition apply as long as a qualifying protective order is in effect.**  18 U.S.C. sections 922(d)(8), (g)(8); Iowa Code section 724.26(2)**.**

**The court orders**

The Protective Order is **extended** to **February 22, 2024**.

**Notice for law enforcement**

Any peace officer with probable cause to believe Defendant has violated this order **must** immediately arrest Defendant.  Iowa Code sections 236.11(1).

The court  enters this order on whether to cancel, modify, or extend the Iowa Code chapter 236 Protective Order issued on OCTOBER 1, 2021.

With hearing.  The court held a hearing regarding the request.  Participating in the hearing were:

Plaintiff or Protected Person

   With attorney representation.
Defendant
   With attorney representation.

**Following commencement of the hearing, the parties informed the Court that they were willing to extend the existing protective order by consent. This consent order is entered without any findings regarding the Petitioner's allegations in this case. Nothing in this order prohibits the Respondent/Defendant from conducting official police business. Respondent/Defendant shall call dispatch only for official police purposes if the Protected Party is on duty. Respondent/Defendant may only enter the building through the jail when the Protected Party is on duty. These determinations are hereby incorporated into the additional findings and order set forth below.**

## The court finds

   >   Defendant was personally served with a copy of the Request to Cancel, Modify, or Extend an Iowa Code chapter 236 Protective Order containing notice of the date and time of this hearing.

## The court orders

The Iowa Code chapter 236 Protective Order as issued on OCTOBER 1, 2021 is **extended** to FEBRUARY 22, 2024.
Court costs are waived.
The clerk of court will reflect this change in status on the IOWA System (the protective and no contact order registry) and notify law enforcement regarding this order.
The clerk of court will provide copies of this order to Plaintiff, Defendant, any counsel of record, the Jasper County Sheriff in the county where Defendant resides, and the 24-hour dispatcher in the county where Defendant resides required by Iowa Code sections 236.5(6) and 664A.4.  If the Jasper County Sheriff determines that Defendant resides in another county, the Jasper County Sheriff will send the order to the County Sheriff where Defendant resides for service of the order.

**Both parties were served with a copy of this order by the Court.**

                                                                                          YDA203

E-FILED          DACV122471 - 2023 FEB 22 03:35 PM          JASPER
                 CLERK OF DISTRICT COURT                    Page 3 of 3

State of Iowa Courts

| Case Number | Case Title |
|---|---|
| DACV122471 | COURTNEY VIOLA VANDERHART VS' NATHAN MICHAEL WINTERS |
| **Type:** | Order GRANTING Motion to Extend Protective Order/NCO |

So Ordered



Terry Rickers, District Court Judge,
Fifth Judicial District of Iowa

Electronically signed on 2023-02-22 15:35:09

E-FILED 2022 OCT 3 7:45 PM JASPER - CLERK OF DISTRICT COURT

**IN THE IOWA DISTRICT COURT IN AND FOR**
**JASPER COUNTY**

This Complaint and Affidavit is to be:

☒ Filed with Court Clerk (cc: CA)

☐ Submitted to County Attorney

☐ Filed with JCO - Defendant is a Juvenile

Agency Form Number: **22-29758**

Arrest Date: **10/03/2022**

## THE STATE OF IOWA

VS.

### OFFENDER

| Last | First | Middle | Suffix |
|---|---|---|---|
| **PETERSEN** | **NOAH** | **JAMES** | |

| Address | | City | | State | Zip Code |
|---|---|---|---|---|---|
| **1106 S 12TH AVE E** | | **NEWTON** | | **IA** | **50208** |

| DL# | State | DL Class | DL Endorsements | DL Restrictions |
|---|---|---|---|---|
| **783AK7520** | **IA** | **C** | | **B** |

| Date of Birth | Gender | Race | Ethnicity |
|---|---|---|---|
| **02/20/2000** | **MALE** | **WHITE - W** | **UNKNOWN - U** |

| Height | Weight | Eye Color | Hair Color |
|---|---|---|---|
| **6' 00"** | **180 LBS** | **BROWN - BRO** | |

### OFFENSE

| State | County | Local | Code Section | Crime Description | Speed | in | Zone |
|---|---|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | **723.4(1)(D)** | **DISORDERLY CONDUCT - DISRUPT/DISTURB LAWFULLY ASSEM** | | | |

| Class | | Serious P.I. ☐ | Fatal Accident ☐ | Civil Damage Assessment ☐ | Other ☐ |
|---|---|---|---|---|---|
| **SMMS** | | | | | |

Location Type
**11 - GOVERNMENT/PUBLIC BUILDING**

Literal Description
**WEST 4TH ST SOUTH**

| Address | City | State | Zip Code |
|---|---|---|---|
| **101 W 4TH S** | **NEWTON** | **IA** | **50208** |

| Is Date and Time of Incident Known? | Incident Date or Low Range | Upper Date Range | Incident Time or Low Range | Upper Time Range |
|---|---|---|---|---|
| **YES** | **10/03/2022** | | **18:45** | |

### STATUS OF OFFENDER/JUVENILE

| ☒ TAKEN INTO CUSTODY | CUSTODY **1 - JAILED** | ☐ SUMMONS TO APPEAR (Citation Issued) |
|---|---|---|
| ☐ WARRANT REQUESTED | ☐ NO CONTACT ORDER REQUESTED | ☐ RELEASED TO PARENT/GUARDIAN |

### NARRATIVE

Narrative of Offense Committed

On or about the above stated date and time, the Defendant did
without lawful authority or color of authority, did disturb any lawful assembly or meeting of persons by conduct intended to disrupt the meeting or assembly

### VICTIM INFORMATION (Optionally displayed, especially if NCO is requested)

| Last | First | Middle | Suffix |
|---|---|---|---|
| **SOCIETY** | | | |

Business/Organization/State/County/Municipality Name

| Address | City | State | Zip |
|---|---|---|---|
| | | | |

AFFIDAVIT

**STATE OF IOWA,          JASPER COUNTY**

I, the undersigned, being duly sworn, state that all facts contained in this Complaint and Affidavit, known by me or told to me by other reliable persons form the basis for my belief that the defendant committed this crime

State all facts and persons relied upon supporting elements of alleged crime

On 10/03/2022, the defendant attended a city hall assembly at 101 W 4th St S. The Mayor and Chief of Police advised the defendant was instructed to leave the assembly. The defendant refused to leave the assembly and the ground in which the assembly was occurring. The defendant interrupted the assembly after being advised to leave the assembly.

| Printed At  NEWTON POLICE DEPARTMENT | 10/3/2022 | 7:32 PM | **Page** 1 **of** 2 | **Form #:** 22-29758 |
|---|---|---|---|---|

E-FILED 2022 OCT 3 7:45 PM JASPER - CLERK OF DISTRICT COURT

_Kurtis Miller_ **MILLER, KURTIS**          **618**

Signature of Complainant or Officer, Officer Name & Number

**GENERAL PROBABLE CAUSE**

Defendant Implicated

**02 - CAUGHT IN ACT, 07 - IDENTIFIED BY WITNESSES, 08 - CRIME OBSERVED BY OFFICERS**

| Operating Motor Vehicle in County | Other Physical Evidence | Attempted To Inflict Injury |
|---|---|---|
| | | |

**STATE OF IOWA,**          **JASPER COUNTY**

| NOTARIAL SEAL IOWA | Subscribed and sworn to before me by the person(s) signing the Complaint and Affidavit(s) on 10/03/2022 | |
|---|---|---|
| | Notary Name  **CHRISTOPHER GAIL WING** | Signature of Verifying Party |
| | Commission Number   **794469** | _Chris Wing_ |
| | My Commission Expires   **02/09/2025** | ☐ Peace Officer  ☒ Notary  ☐ Prosecuting Attorney |

# IOWA INCIDENT REPORT SUPPLEMENTAL

## NEWTON POLICE DEPARTMENT
**101 W 4TH ST S**
**NEWTON, IA 50208**
**(641) 792-1547**

Grid_____
Arrest #_____
Car #_____
Video #_____

rlc030102

| CASE INFO | | | |
|---|---|---|---|
| Case Number **22-29758** | Date of This Report **10/04/2022** | County in which Incident Occurred **JASPER - 50** | |
| ORI Number **NEWTON POLICE DEPARTMENT - IA0500100** | | | |
| Date of Original Occurrence **10/03/2022** | | Type of Offense **DISORDERLY CONDUCT** | |
| Name - Last **PETERSEN** | First **NOAH** | Middle **J** | Suffix |
| Clearance Classification ☐ Unfounded  ☐ Exceptionally Cleared  ☑ Cleared by Arrest | | Investigative Status ☐ Open  ☑ Closed  ☐ Suspended | |

### Narrative

On 10-3-2022 at approx. 1750 hrs. I entered the Newton City Council Chambers for the City Council meeting scheduled to start at 1800 hrs. I sat down in the back and was immediately approached by a male subject who identified himself as Noah Petersen. Petersen began rambling and asking questions about being arrested without committing crimes, supporting domestic abusers and not releasing information pursuant to some of his previous FOIA requests. I advised Petersen that he had already received a response on these items via email. He disagreed with this and continued pushing the issue. I advised him that the City Attorney was in attendance and he could speak with him after the meeting, but otherwise I was done talking to him and he needed to sit down. He advised me he was not going to do so. I then directed him outside in the atrium and we continued the discussion regarding his FOIA request. He was recording our conversation on his cell phone.

When the meeting was about to start I advised Petersen I was done with the conversation and needed to get in the council chambers. He then went in the room and sat down in the front row at that point. During public comment I saw Petersen stand up and walk towards the podium to speak. He was acknowledged by the Mayor/City Council and was asked to state his name and address just as everyone else who had spoken had done per the meeting rules. Petersen stated that he was not going to give his name and address because it was his right to do so. He then began talking about de-funding the Newton Police Department and stating that we have domestic abusers as officers. Mayor Hansen began beating his gavel on the dais and advised Petersen he was violating the stated rules of the meeting and he needed to sit down or leave. Petersen argued back and at that point Mayor Hansen asked that I escort Petersen from the council chambers.

I approached Petersen and reiterated that Mayor Hansen had ordered him to leave due to violating the meeting rules. Petersen said he didn't get his 3 minutes and he wasn't leaving until he had done so. I advised him several times that he needed to leave and he refused. I grabbed the back of his arm and tried giving him physical direction to leave. Petersen advised me not to touch him.  I gave him a final warning that if he didn't leave he would be arrested. Petersen than advised me to arrest him. At this point I advised Petersen that he was under arrest and I handcuffed him behind the back. I escorted him out of the council chambers and radioed for an officer to come transport him. I then double locked the handcuffs and searched his person. I removed all the items from his pockets and found no contraband. I did remove his driver's license form his wallet. I asked him if he wanted to stand or sit and he advised he would like to sit down. I asked if he had any questions and he asked if I would arrest MLK Jr. under the same circumstances.

At this point Ofc. Miller arrived on scene. Petersen asked Ofc. Miller if his body cam was recording. Ofc. Miller advised him that it was just turned on and it would be shortly. I advised Ofc. Miller the details surrounding the arrest and transferred custody to him. At this point I returned to the council chambers and finished the meeting.

| OFFICER | | | |
|---|---|---|---|
| Complainant/Reporting Party (Signature) | | | |
| Reporting Officer's Name - Last **BURDESS** | First **ROB** | Middle | Suffix |
| Title **CHIEF** | Badge Number **19A** | UserID **619** | |
| Assisting Officer / Admin Reviewer's Name - Last **BURDESS** | First **ROB** | Middle | Suffix |
| Title **CHIEF** | Badge Number **19A** | UserID **619** | |
| Supervisor's Name - Last **LAVELY** | First **DILLON** | Middle | Suffix |
| Title **SERGEANT** | Badge Number **609** | UserID **L609** | |
| Incident Assigned to: **OFC. MILLER** | | | |

Printed At:  **NEWTON POLICE DEPARTMENT**          Page     1 of 1          Form #:  **22-29758**

DEFS 0006

E-FILED          05501  SMAC016647 - 2022 OCT 05 08:28 AM          JASPER
                 CLERK OF DISTRICT COURT          Page 1 of 2

# IN THE IOWA DISTRICT COURT FOR JASPER COUNTY

## STATE OF IOWA

**VS**                                                    **BAIL BOND**

**Noah James Petersen**                    CASE NO.  SMAC016647
DEFENDANT

____02/20/2000____
DOB

On ____10/03/2022____ the above named defendant has been accused of the offenses listed below.
(Date of Offense)

| | Charge Offense | Code of Iowa Code Section | Bond Amount per Charge |
|---|---|---|---|
| 1. | Disorderly Conduct-Assembly | 723.4(1)(d) | $ 300.00 |
| 2. | | | $ |
| 3. | | | $ |
| 4. | | | $ |
| 5. | | | $ |
| 6. | | | $ |
| 7. | | | $ |
| 8. | | | $ |
| 9. | | | $ |
| 10. | | | $ |

Total bond amount of:  $ 300.00

$ 300.00 _____ Is pledged for my bail with ____0____ surety.

Eric Paul Petersen _____ posted ____100____ % of the money for my bond.

We, ____**Noah James Petersen**____ , Defendant and ____**Eric Paul Petersen**____ , Surety,
hereby undertake that the said Defendant shall appear in the ____**Jasper**____ County Court on the
**18th** day of ____**October**____ , **2022** at ____**0830**____ **AM** Or when so directed to appear by the Court,
and answer the said indictment, and submit to the Orders and Judgment of said Court, and not depart without leave of same,
or if such person fails to perform either of these conditions, that such person will pay the State of Iowa the sum of the total bail.

**Penalty for Violation of Bond.**
> I understand that if I fail to observe any of the conditions of this release, or if I fail to appear in court when required, I will be subject to punishment:
> (a)  If the charge is a felony, by imprisonment up to five years, or by a fine up to $7500.00 or both;
> (b)  If the charge is a misdemeanor, by imprisonment up to one year, or by a fine up to $1000.00 or both;
> (c)  If I am held as a material witness, by imprisonment up to thirty days, or by a fine up to $100.00.

**Arrest.**
> I understand that if I violate any of the conditions of my release from custody, a warrant for my arrest will be issued.

**Civil Judgment.**
> I understand that if I fail to appear as promised or as ordered by the Court, a civil judgment will be rendered against me for the total amount of the bond.

**Contempt of Court.**
> I understand that if I violate any of the terms of my release from custody, the court may find I am in contempt of court. I understand that I am liable for any and all of the above consequences regardless of the disposition of the crime against me.

**Additional Terms of Release.**
> I agree to the following terms while this case is pending against me:
> (1)  I will not leave the State of Iowa without the written consent of the court.
> (2)  I will notify the Court at once of any address changes.
> (3)  I will personally appear in Court whenever it is required by law or by Order of the Court.
> (4)  After an attorney has appeared in Court for me, all notices will be sent to the attorney.  Notice sent to my attorney of record will be the same as notice served on me personally.
> (5)  I will keep my attorney informed of my whereabouts at all times.

E-FILED        05501  SMAC016647 - 2022 OCT 05 08:28 AM      JASPER
CLERK OF DISTRICT COURT        Page 2 of 2

## I have read or had read to me, the above bond.
## I understand it and voluntarily agree to the terms and sign it.

10/03/2022
Date

Attorney

Noah James Petersen
Defendant – Print Name

*Noah Petersen* (signature)
Defendant Signature

Complete Address:

1106 S 12ᵗʰ Ave E

Newton IA 50208

Phone Number:      641-275-5139

## For Surety below this line.

I state that I have posted cash bond for the Defendant and authorize the following (only check one option):

☒ When the bond has been released, please issue a check for the entire amount payable to me.

☐ When the bond has been released, please pay the defendant's financial obligation, including but not limited to fines, surcharges, and costs, on the above stated case and then issue a check to me for the balance.

☐ When the bond has been released, please release the money to the defendant.
*(Check this option only if the money belongs to the Defendant.)*

**PLEASE NOTE: Per Iowa Code section 602.8103(6), with proper notice, any refund to the person posting the cash bond will be applied to existing criminal debt due and owing to the State of Iowa in this county. In other words, if the person posting the bond owes money to the State of Iowa it will be removed from this bond amount before the balance, if any, will be returned to you.**

All bond refunds will be made by check through the mail.

I have read and understand the above information. I checked one box for final disbursement of the bond being posted

Eric Paul Petersen
Surety – Print Name

*Eric Paul Petersen* (signature)
Surety Signature

Complete Address:

1106 S 12ᵗʰ Ave E

Newton IA 50208

641-521-5213
Phone Number(s)

07/30/1968
Date of Birth

046AA8026
Driver's License Number

**Make sure the Clerk of Court is kept up to
date on your current address as this is where
your bond money check will be sent when the
case is over.**

E-FILED  2022 OCT 11 2:20 PM JASPER - CLERK OF DISTRICT COURT

# In the Iowa District Court for Jasper County

| STATE OF IOWA, Plaintiff | DOCKET NUMBER SMAC016647 |
| vs. | |
| NOAH JAMES PETERSEN, Defendant | *Motion for Leave to Amend* |

COMES NOW the State of Iowa and moves the Court for leave to amend the complaint in the above referenced matter, in the interests of justice, and states that it is the opinion of the undersigned that this amendment is proper under the circumstances. Additionally, due to the nature of the amendment the State of Iowa moves to withdraw as plaintiff in this matter and substitute as plaintiff the City of Newton, Iowa. In support of this motion the State provides as follows:

1. The complaint filed in this case identifies the State of Iowa as plaintiff and charges the defendant with violating Iowa Code Section 723.4 – Disorderly Conduct, a Simple Misdemeanor.

2. The offense is alleged in the complaint to have occurred in the City of Newton, IA.

3. The offense is alleged to have occurred during a City of Newton city council meeting.

4. The charging officer is a City of Newton police officer.

5. The City of Newton maintains a Code of Ordinances which is enforced and prosecuted by the Brick Gentry Law Firm as attorney for the City of Newton.

6. The City of Newton Code of Ordinances incorporates Iowa Code section 723.4. *See* Newton Iowa Code of Ordinances, Section 130.01(V)

7. The City of Newton, through counsel, has agreed to assume the prosecution of this case upon the Court granting this motion.

8. The elements of the current charge and the city ordinance violation are the same; as the ordinance incorporates the Iowa Code.

9. There is no prejudice to the Defendant upon granting this motion.

E-FILED  2022 OCT 11 2:20 PM JASPER - CLERK OF DISTRICT COURT

10. The State moves for the following amendments to the complaint:

    a.   Amend in the caption the "State of Iowa" to read "City of Newton, Iowa"

    b.   In the box for "offense" un-mark the selection for "State" and mark the selection for "Local."

    c.   In the box for "Code Section" amend to read "City of Newton Code of Ordinances Section 130.01(V)"

instead of as originally written.


WHEREFORE the State of Iowa prays the Court enter an Order allowing such amendment, substituting the City of Newton, Iowa as Plaintiff, and allowing the withdrawal of the State of Iowa as Plaintiff.

A True Information:

Scott W. Nicholson, Jasper County Attorney

By:  /s/ *Anthony Leon*
        Anthony Leon, AT0012323
        Assistant Jasper County Attorney
        Jasper County Attorney's Office
        114 W 3rd Street North, Newton, IA 50208
        Phone: (641) 792-5010/Fax: (641) 792-8327
        e-mail: general@jaspercoatty.org

E-FILED          SMAC016647 - 2022 OCT 13 09:30 AM          JASPER
                        CLERK OF DISTRICT COURT                Page 1 of 2

## *In the Iowa District Court for Jasper County*

| | |
|---|---|
| STATE OF IOWA, Plaintiff | DOCKET NUMBER:  SMAC016647 |
| vs. | *Order to Amend* |
| NOAH JAMES PETERSEN, Defendant | |

Now upon consideration of the State's Motion for Leave to Amend, the Court finds good cause exists to grant the amendment, that no prejudice will result to the defendant, and that the motion be GRANTED.

**IT IS THEREFORE ORDERED** that the complaint in the above-captioned matter is hereby amended as follows:

    a.  The caption is **amended** from "State of Iowa" to read "City of Newton, Iowa"

    b.  The box for "offense" is **amended** to un-mark the selection for "State" and mark the selection for "Local."

    c.  The box for "Code Section" is **amended** to read "City of Newton Code of Ordinances Section 130.01(V)"

**IT IS FURTHER ORDERED** that the State of Iowa is withdrawn as Plaintiff and the City of Newton, IA is substituted as Plaintiff in this matter. This matter shall in the future be captioned: City of Newton, Iowa, Plaintiff vs. Noah James Petersen, Defendant.

So ordered.

E-FILED          SMAC016647 - 2022 OCT 13 09:30 AM          JASPER
                     CLERK OF DISTRICT COURT               Page 2 of 2



State of Iowa Courts

| Case Number | Case Title |
| --- | --- |
| SMAC016647 | STATE OF IOWA VS PETERSEN, NOAH JAMES |
| **Type:** | ORDER TO AMEND |

So Ordered

Peter Lahn, Magistrate
Fifth Judicial District of Iowa

Electronically signed on 2022-10-13 09:30:58

E-FILED 2022 OCT 17 11:50 AM JASPER - CLERK OF DISTRICT COURT

### IN THE IOWA DISTRICT COURT IN AND FOR JASPER COUNTY

| | |
|---|---|
| **STATE OF IOWA,** | **CASE NO. SMAC016647** |
| **Plaintiff,** | |
| **vs.** | **PLEA OF NOT GUILTY** |
| **NOAH JAMES PETERSEN,** | |
| **Defendant.** | |

**COMES NOW** Noah Petersen and hereby enters his plea of Not Guilty.

**PARRISH KRUIDENIER DUNN GENTRY
BROWN BERGMANN & MESSAMER, L.L.P.**

By:     /s/ *Gina Messamer*
         Gina Messamer         AT0011823
         2910 Grand Avenue
         Des Moines, Iowa 50312
         Telephone: (515) 284-5737
         Facsimile: (515) 284-1704
         Email: gmessamer@parrishlaw.com
         **ATTORNEY FOR DEFENDANT**

**Electronically filed.**

**Copy to: Client**

E-FILED  2022 OCT 17 12:57 PM JASPER - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT IN AND FOR JASPER COUNTY

| | |
|---|---|
| **STATE OF IOWA,** | **CASE NO. SMAC016647** |
| **Plaintiff,** | |
| **vs.** | **MOTION TO DISMISS** |
| **NOAH JAMES PETERSEN,** | |
| **Defendant.** | |

**COMES NOW** Noah Petersen and for this Motion to Dismiss pursuant to Iowa Rule of Criminal Procedure 2.2(1) respectfully states to the Court as follows:

1.      Iowa Rule of Criminal Procedure 2.2(1) requires the Magistrate, prior to further proceedings in the case, to make an initial, preliminary determination from the complaint and affidavit whether there is probable cause to believe an offense has been committed and that the Defendant has committed it.

2.      The complaint filed in this case identifies the State of Iowa as plaintiff and charges the defendant with violating Iowa Code Section 723.4(1)(D), Disorderly Conduct – Disrupt/Disturb Lawfully Assembly, a Simple Misdemeanor.

3.      The Court subsequently granted the State's motion to amend the complaint to charge a Newton City Code violation, Ordinance § 130.01(V). That ordinance references back to and incorporates Iowa Code § 723.4. The purpose of this amendment was to shift the case from a State prosecution to a City prosecution. The elements of the original charge and the ordinance charge are the same.

4.      The offense is alleged to have occurred during a City of Newton city council meeting. The complaint filed against Mr. Petersen states:

E-FILED  2022 OCT 17 12:57 PM JASPER - CLERK OF DISTRICT COURT

On 10/03/2022, the defendant attended a city hall assembly at 101 W 4th St S. The Mayor and Chief of Police advised the defendant was instructed to leave the assembly. The defendant refused to leave the assembly and the ground in which the assembly was occurring. The defendant interrupted the assembly after being advised to leave the assembly.

5.      The complaint filed against Mr. Petersen does not establish probable cause. "Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it." *State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990).

6.      Iowa Code § 723.4(1)(D) states that a person commits a simple misdemeanor if the person "[w]ithout lawful authority or color of authority, the person disturbs any lawful assembly or meeting of persons by conduct intended to disrupt the meeting or assembly."

7.      The element requiring the State to prove that a defendant acted "without lawful authority or color of authority" is critically important to ensure that charges under § 723.4(1)(D) do not run afoul the First Amendment.

8.      "In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 103 S. Ct. 948, 954 (1983). The Government may only enforce "regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.*

9.      "A citizen's right to exercise First Amendment freedoms 'without facing retaliation from government officials is clearly established.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). "The freedom of individuals verbally to

2

E-FILED  2022 OCT 17 12:57 PM JASPER - CLERK OF DISTRICT COURT

oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston, Tex. v. Hill*, 107 S. Ct. 2502, 2510 (1987).

10.     The complaint does not allege that Mr. Petersen acted without lawful authority or color of authority at the public city council meeting. Nor does the complaint allege that Mr. Petersen disturbed the meeting. Nor does the complaint allege Mr. Petersen intended to disrupt the meeting or assembly.

11.     The complaint states in a conclusory fashion that Mr. Petersen interrupted the assembly after being advised to leave, but provides no factual information regarding the nature of the interruption and whether it was without lawful authority or color of authority. Nor does the complaint describe the reason that Mr. Petersen was advised to leave the meeting, which is crucial to determining whether there is probable cause to establish that Mr. Petersen was acting without lawful authority or color of authority.

12.     This is no doubt because Mr. Petersen's actions at the city counsel meeting *were* with color of authority and were not intended to disrupt the meeting. Mr. Petersen was speaking at the city council meeting within his allotted 3-minute time slot. Mr. Petersen spoke calmly and addressed topics important to the community regarding local policing. He was arrested during his 3-minute time slot.

13.     In sum, the allegations in the complaint are insufficient to establish probable cause for a violation of Ordinance § 130.01(V) and, by reference, Iowa Code § 723.4(1)(D).

**WHEREFORE**, Mr. Petersen asks that the Court dismiss the complaint against him.

E-FILED  2022 OCT 17 12:57 PM JASPER - CLERK OF DISTRICT COURT

**PARRISH KRUIDENIER DUNN GENTRY
BROWN BERGMANN & MESSAMER, L.L.P.**

By: ___/s/ *Gina Messamer*_____
   Gina Messamer   AT0011823
   2910 Grand Avenue
   Des Moines, Iowa 50312
   Telephone: (515) 284-5737
   Facsimile: (515) 284-1704
   Email: gmessamer@parrishlaw.com
   **ATTORNEY FOR DEFENDANT**

**Electronically filed.**

**Copy to: Client**

4

E-FILED          SMAC016647 - 2023 FEB 01 03:56 PM          JASPER
CLERK OF DISTRICT COURT          Page 1 of 7

**IN THE IOWA DISTRICT COURT FOR JASPER COUNTY**

| | |
|---|---|
| **CITY OF NEWTON, IOWA**<br>     **Plaintiff,**<br><br>**vs.**<br><br>**NOAH JAMES PETERSEN,**<br>     **Defendant** | Case No. SMAC016647<br><br><br>ORDER DENYING MOTION TO DISMISS AND<br>VERDICT |

On December 15, 2022 this matter came before the Court on a Motion to Dismiss filed by the Defendant.  The Defendant appeared with counsel Gina Messamer.  The City was represented by City Attorney Shannon Archer.  Briefs were filed and reviewed and argument was heard.  Exhibits were received into evidence.

The Defendant's position is the charge violates the Defendant's First Amendment rights and the complaint filed against the Defendant did not establish probable cause.  The City's position is that Iowa Rule of Criminal Procedure 2.2(1) does not apply to this offense.

After reviewing the briefings, argument, and applicable law, the Court finds probable cause is sustained for the above charge.  State v. Gregory, 327 N.W.2d 218, 220 (Iowa 1982) ("Probable cause to make a warrantless arrest turns upon the circumstances of each case. The facts must rise above mere suspicion but need not be so strong as to convince the officers that the subject is guilty. They must merely provide a reasonable basis for believing the subject is guilty." Citing State v. Harvey, 242 N.W.2d 330, 340 (Iowa 1976)).

In addition, the application of the First Amendment defense requires a factual determination including but not limited to whether or not the Defendant was acting without "lawful authority or color

E-FILED        SMAC016647 - 2023 FEB 01 03:56 PM        JASPER
CLERK OF DISTRICT COURT        Page 2 of 7

of authority."  Iowa Code 723.4(1)(D).   Therefore, the Court denies the Defendant's Motion to Dismiss.

The matter then proceeded to trial.  The Court heard testimony from Newton Police Chief Rob Burdess.  Exhibits were received into evidence and argument heard.

On October 3, 2022, Defendant Noah Petersen was arrested and charged with Disorderly Conduct, in violation of Iowa Code Section 723.4(1)(D). Subsequently, the complaint was amended to reflect a violation of Newton Iowa Code of Ordinances, Section 130.01(V). The ordinance incorporates the language of Iowa Code Section 723.4. The Defendant filed a plea of not guilty, a notice of defense and a motion to dismiss.  The motion to dismiss is discussed above.

Based on the testimony and video exhibit evidence, on October 3, 2022, the Defendant attended a city council meeting at Newton City Hall.  A meeting agenda was published and available for all participants which contained the following language:

"**Citizen Participation**

4.      This is the time of the meeting that a citizen may address the Council on matters that are included in the consent agenda or a matter that is not on the regular agenda.  After being recognized by the Mayor, each person will be given three (3) minutes to speak.  Comments and/or questions must be related to the City policies or the provision of City services and shall not include derogatory statements or comments about any individual.  Except in cases of legal emergency, the City Council cannot take formal action at the meeting, but may ask the City staff to research the matter or have the matter placed on a subsequent agenda." (Defense Exhibit C)

Iowa Code Section 21.7 authorizes rules of conduct at meetings open to the public and states in relevant part:

E-FILED          SMAC016647 - 2023 FEB 01 03:56 PM          JASPER
CLERK OF DISTRICT COURT          Page 3 of 7

"Nothing in this chapter shall prevent a governmental body from making and enforcing reasonable rules for the conduct of its meetings to assure those meetings are orderly, and free from interference or interruption by spectators."  Iowa Code Section 21.7 (2021).

At the October 3, 2022 City Council meeting, the Defendant was afforded an opportunity to speak.  Once at the podium he began reading a prepared statement from what appeared to be a cell phone. (Defense Exhibit E)  After confirmation is heard off camera that the Defendant's three minute time period was being clocked, the Defendant continued.  The Defendant proceeded with a statement that the Newton Police Department was "pro domestic abuse" and was "currently employing a domestic abuser and choosing not to release the records about that domestic abuser."  It was at this point a gavel is heard pounding off camera as well as the words "you are out of order, sir." Based on the testimony received, the gavel and statement was from the Mayor.   From this point forward, Chief Burdess is summoned and the situation devolves into the Defendant and the Mayor attempting to talk over each other.  Chief Burdess is then asked to escort the Defendant out of the City Council Chambers.  The Defendant asserted his right to speak for his allotted three minutes.  The Mayor asserted the Defendant was violating the City Council's rules.  The Defendant was then placed in handcuffs and escorted from the City Council chambers.  Id. at 2:25.

Newton Code of Ordinances Section 130.01 (V) states: "Disorderly conduct, as defined in Iowa Code section 723.4."  Code of Ordinances, City of Newton, Iowa (2021).  Iowa Code section 723.4 states in relevant part:

"1. A person commits a simple misdemeanor when the person does any of the following:

. . .

d. Without lawful authority or color of authority, the person disturbs any lawful assembly or meeting of persons by conduct intended to disrupt the meeting or assembly."  Iowa Code 723.4 (2022).

E-FILED          SMAC016647 - 2023 FEB 01 03:56 PM          JASPER
CLERK OF DISTRICT COURT
Page 4 of 7

The Defendant asserts that under these specific circumstances, the First Amendment to the United States' Constitution provided him with "lawful authority" or "color of authority" to engage in the activity exhibited at the October 3, 2022 City Council meeting.  In regard to the Newton City Council rule prohibiting derogatory statements or comments about any individual, he further asserts that the term "derogatory" is vague.

The First Amendment to the United States Constitution states:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or of abridging the freedom of speech…" U.S. CONST. amend. I.  The First Amendment is incorporated to the states via the Due Process Clause of the 14th Amendment.  See, Murdock v. Pennsylvania, 319 U.S. 105, 108 (1943).

The First Amendment is an integral part of our law and social framework.  Speech concerning public affairs is the essence of self-government.  Snyder v. Phelps, 562 U.S. 443, 452 (2011).  However, the First Amendment is not absolute.  R.A.V. v. City of St. Paul, Minn., 505 U.S.377, 383 (1992)  (e.g. obscenity, defamation, "fighting words,"etc.).

The Iowa Supreme Court has applied a three part test when applying the First Amendment to criminal sanctions and meeting rules.  State v. Hardin, 498 N.W. 2nd 677 (1993).  Criminal sanctions would be warranted only if the Defendant's activity itself and not the content of the activity's expression substantially impaired the effective conduct of a meeting.  Id. at 680.  The test to apply this measure includes: 1) the nature of the meeting involved; 2) whether the activity substantially impaired the conduct of the meeting; and 3) whether the defendant knew, or should have known, that the conduct violated an applicable custom, usage, or rule of the meeting.  Id.

The Newton City Council meeting on October 3, 2022 would be considered a limited public forum under First Amendment analysis.  See, e.g., Galena v. Leone, 638 F.3d 186, 199 (3d Cir. 2011) Powell v. Noble, 798 F.3d 690, 699 (8th Cir. 2015). In a limited public forum, certain

E-FILED          SMAC016647 - 2023 FEB 01 03:56 PM          JASPER
                         CLERK OF DISTRICT COURT          Page 5 of 7

restrictions on speech are permitted, so long as they "are reasonable and viewpoint-neutral." Powell, 798 F.3d at 700. In regard to the initial Hardin factor, the nature of this meeting included a specific forum for citizens to participate and share input on City services and policies.

The second factor is whether the activity substantially impaired the conduct of the meeting. The Defendant read from a prepared statement.  He used no profane language and engaged in no activity which could be considered as boisterous or disruptive such that it would impair the conduct of the meeting. He remained behind the podium and did not use abusive language or gestures. Nothing in the Defendant's actions substantially impaired the conduct of the meeting.

The final factor is whether the defendant knew, or should have known, that the conduct violated an applicable rule of the meeting.  In this case, the rule in question was posted on the City Council agenda.  The rule purports to prohibit "derogatory statements" or "comments about any individual."  "Derogatory is defined as:  1) expressive of a low opinion: Disparaging, 2) detracting from the character or standing of something." Merriam-Webster's Dictionary, 2022.  By definition, the term derogatory cannot be considered view point neutral.  The word itself implies a negative or low opinion.  Arguably, some derogatory statements can be disruptive and therefore can cause interference or disruption with a meeting while some would not.

In addition, the Newton City Council Participation Rules relate to derogatory statements or comments about individuals.  The Defendant identified no individual by name in his statement.  The closest he comes is to refer to city positions and official offices.  It would be difficult if not impossible for a concerned citizen to comment regarding City policies or the provision of City services without referencing to some extent an official city position (e.g. Mayor, Police Chief, etc.).

To the extent it could be found the Defendant in this case made a "derogatory" comment as commonly defined or a comment about an "individual," the court finds these terms vague and overbroad for purposes of the First Amendment.

E-FILED          SMAC016647 - 2023 FEB 01 03:56 PM          JASPER
                 CLERK OF DISTRICT COURT                    Page 6 of 7

The Defendant was not a spectator, but rather a participant in a limited public forum during the recognized citizen participation portion of the City Council's meeting.  He used no profane language, nor did he identify any individual by name.  He did not act in any objectively unreasonable manner. He read a prepared statement relating to the basic city service of policing.  While some may not agree with the content of his comments, the Court finds the statements made were not "derogatory" nor about an "individual." In the event the statements could be found "derogatory" or a comment about an "individual" as used in the City Council's rules, the Court finds these terms vague and overbroad.  As applied in this particular instance, the Newton City Council rule is violative of the First Amendment to the United States' Constitution**.**

Based on the testimony and evidence submitted as applied to the applicable law, the court finds that the City has not met its burden of proof beyond a reasonable doubt that a violation of Newton Code of Ordinances Section 130.01(V) – Disorderly Conduct occurred. Balancing the three Hardin factors, the Court finds the Defendant's statements and actions did not exceed any authority he may lawfully claim under the free speech provision of the United States Constitution. Therefore, the court finds the Defendant not guilty of a violation of Newton Code of Ordinances Section 130.01(V) – Disorderly Conduct.

Costs assessed against the City.

E-FILED          SMAC016647 - 2023 FEB 01 03:56 PM          JASPER
                          CLERK OF DISTRICT COURT                     Page 7 of 7



State of Iowa Courts

| Case Number | Case Title |
| --- | --- |
| SMAC016647 | CITY OF NEWTON VS PETERSEN, NOAH JAMES |
| **Type:** | Order of Disposition |

So Ordered

Peter Lahn, Magistrate
Fifth Judicial District of Iowa

Electronically signed on 2023-02-01 15:56:14

# Agenda:      Newton City Council

**City Council Meeting**

**October 24, 2022 6:00 p.m.**

**Council Chambers, 101 W 4th St S., Newton, IA 50208**
**Mediacom Channels: 12/85/121.12, Website Livestream:**
**Newtongov.org / I want to "view" Livestream of City**
**Council Meetings (www.newtongov.org/cablecast).**

| | | |
|---|---|---|
| **Pledge** | | Pledge of Allegiance |
| **Call to Order** | 1. | Roll Call |
| **Presentation** | 2. | NHDC activities update - Bruce Showalter, NHDC Director |
| **Citizen Participation** | 3. | This is the time of the meeting that a citizen may address the Council on matters that are included in the consent agenda or a matter that is not on the regular agenda.  After being recognized by the Mayor, each person will be given three (3) minutes to speak.  Comments and/or questions must be related to City policies or the provision of City services and shall not include derogatory statements or comments about any individual. Except in cases of legal emergency, the City Council cannot take formal action at the meeting, but may ask the City staff to research the matter or have the matter placed on a subsequent agenda. |
| **Consent Agenda** | 4. | October 03, 2022 Regular City Council Meeting Minutes |
| | 5. | October 10, 2022 Goal Setting Workshop Minutes |
| | 6. | Approve Liquor License for the following:  <u>AmericInn Lodge & Suites of Newton, IA.- BW0093079,</u> 4401 South 22nd Avenue East, Special Class C Liquor License, Class B Wine Permit, Sunday Sales; <u>Veterans Of Foreign Wars Post No 1655- LC0026734</u>, 315 1st Avenue W, Class C Liquor License, Outdoor Service, Sunday Sales; <u>Raceway80- LE0003804</u>, 4300 South 22nd Avenue East, Class E Liquor License, Class B Wine Permit, Class C Beer Permit, Sunday Sales; <u>Pit Stop Liquors- LE0002050</u>, 1324 1st Avenue E, Class E Liquor License, Class B Wine Permit, Class C Beer Permit, Sunday Sales. |
| | 7. | Certify Firefighter Candidate List |
| | 8. | Resolution levying assessments for costs of nuisance abatement and providing for the payment thereof (Schedule 22-10). (Council Report 22-285) |
| | 9. | Resolution Approving a Property Tax Rebate for the Van Maanen Electric, Inc Property Located Within the East Mart Urban Renewal Area.  (Council Report 22-286) |
| | 10. | Resolution to promote retail through a Shop Local marketing campaign using local & regional radio, targeted streaming radio and digital video. (Council Report 22-287) |
| | 11. | Approve Bills |

DEFS 0202

**Public Hearing**

12.  Public Hearing an Ordinance vacating and disposing of the full width of the east-to-west South 10th Avenue West right-of-way located in the 1000 block of West 2nd Street South, City of Newton, Jasper County, Iowa. (Council Report 22-288)

- The proposal is to vacate the unimproved street right-of-way and attach it to the abutting property, the Jasper County EOC/Former Armory Building property, on the south side.
- The unimproved street right-of-way provides no city benefit.  Planning and Zoning Commission recommended approval of the vacation.

13.  First Consideration of an ordinance vacating and disposing of the full width of the east-to-west South 10th Avenue West right-of-way located in the 1000 block of West 2nd Street South, City of Newton, Jasper County, Iowa. (Council Report 22-288)

14.  Public Hearing on an Ordinance conveying a small portion of an east-west alley right-of-way located in the 600 block of East 4 ½ Street South to the abutting property directly to the south in block four of Leonard's Addition to the City of Newton, Jasper County, Iowa. (Council Report 22-289)

- In 1978, Ordinance No. 1331 vacated the east-west alley abutting 614 East 4 1/2 Street South.  All but a small piece which measures approximately 8 x 20 of the alley vacation was properly conveyed.
- This ordinance confirms the 1978 alley vacation and provides the proper documentation necessary to clean up the title concerns regarding the 8 x 20 piece of previously vacated alleyway.
- It is recommended that the second and third readings of this ordinance are waived.

15.  First Consideration of an Ordinance conveying a small portion of an east-west alley right-of-way located in the 600 block of East 4 ½ Street South to the abutting property directly to the south, City of Newton, Jasper County, Iowa. (Council Report 22-289)

16.  Public Hearing on a Resolution awarding contract for the Water Pollution Control Treatment Plant and SW Pump Station Improvements Project. (Council Report 22-290)

- Various improvements to the Water Pollution Control Plant and the Southwest Pump Station were identified in the 2019 Facility Plan Update including: a new 1-million-gallon liquid sludge storage tank, new standby power generator, rehabilitation of three existing floating steel digester covers, replacement of two sludge pumps, new influent channel mixing system, replacement of plant PLC's, and other associated items.
- Planned improvements at the Southwest Pump Station include: replacement of both 150-hp pumps with new 200-hp pumps, replacement of the pump station interior dry well piping, and associated site, demolition, electrical, mechanical, and other associated items.

DEFS 0203

- Fox Strand Engineering prepared plans and specifications and placed the project out to bid, sealed bids were received and opened on October 6, 2022. Staff recommends awarding a contract of $5,897,300.00 from Woodruff, LLC of Fort Dodge, IA based on the low responsive, responsible bid received.

17. Resolution awarding contract for the Water Pollution Control Treatment Plant and SW Pump Station Improvements Project. (Council Report 22-290)

**Ordinance**

18. Third Consideration of an Ordinance amending the City of Newton Official Zoning Map for property located at 1500 1st AVE E. and 201 E. 15th St. N. from R-2: One– and Two-Family Residential to C-A: Arterial Commercial. (Council Report 22-265)

- The applicant has requested consideration of rezoning the properties at 1500 1st AVE E and 201 East 15th Street North to C-A: Arterial Commercial District.
- At their meeting on September 7th, the Planning and Zoning Commission recommended approval of the rezoning.

19. Second Consideration of an Ordinance amending the City Code of Newton, Iowa, by adding Chapter 75: All-Terrain Vehicles, Off-Road Utility Vehicles, Golf Carts, and Snowmobiles. (Council Report 22-274)

- HF2130 was passed by the Iowa Legislature in 2022 allowing for expanded use of ATVs and UTVs on Iowa roadways. Municipalities have the authority to regulate use of these vehicles within their corporate limits.
- The proposed ordinance allows for limited use of properly equipped ATVs and UTVs on City streets. Staff does not recommend approval of this ordinance.

20. Second Consideration of an Ordinance amending the code of ordinances, City of Newton, Iowa, 2016, Title III Administration, Chapter 32, Section 32.060 – 32.071, "Water Board of Trustees", to dissolve the Water Board of Trustees and adding waterworks code reference to Title V Public Works, Chapter 54 Waterworks. (Council Report 22-275)

- Newton WaterWorks (NWW) is a municipal water utility governed by a Board of Trustees, which is tasked with providing water to customers in the service area for domestic, commercial, industrial and firefighting purposes. In January 2022, the NWW Board of Trustees entrusted the city with the day-to-day management of NWW on an interim basis.
- The NWW Board determined the city has been providing excellent service in a cost-effective manner. At the March 18, 2022 meeting, the NWW Board voted that the NWW Board be dissolved and that governance of NWW permanently be placed with the Newton City Council.
- A special City election was held Tuesday, September 13, 2022. The registered voters voted "YES" by simple majority to the following

question: "*Shall the Newton WaterWorks Board of Trustees be dissolved and the City Council of Newton, Iowa, in the County of Jasper, Iowa, assume the obligations of managing and controlling the Newton WaterWorks.*"

- The ordinance deletes CODE OF ORDINANCES, CITY OF NEWTON, IOWA, 2016 TITLE III ADMINISTRATION, CHAPTER 32, SECTION 32.060 – 32.071, "WATER BOARD OF TRUSTEES" language and adds waterworks code references to TITLE V PUBLIC WORKS, CHAPTER 54 WATERWORKS.

21. Second Consideration of an Ordinance amending the Code of Ordinances, City of Newton, Iowa, 2016, Title VII, Chapter 70, Section 70.15, "Traffic and Parking Schedules Adopted by Reference" to make changes to street parking in the downtown. (Council Report 22-276)

- The 2022 Downtown streetscape projects included reconstruction of the south 100 block of E 3rd St S, E 2nd St S, W 2nd St S and W 3rd St S. The City Hall parking lot project included reconstructing the parking lot and also constructing a new public lot to the south of City Hall.
- During the design phases staff identified a few ordinance amendments that would need to be made to coincide with these projects.
- The ordinance addresses changing diagonal parking to parallel at a couple of locations and identifying handicap stalls in the new public lot.

**Resolution**

22. Resolution approving an amendment to the Real Estate Development Agreement with Newton Housing Development Corporation (NHDC) for Arbor Estates.  (Council Report 22-291)

- Due to current economic conditions, lot sales in Arbor Estates have slowed.  It is desirable to provide NHDC with the ability to subordinate the sale of lots to encourage spec home development.
- The amendment to the Real Estate Agreement with NHDC allows for the lot price to be paid at the time a new spec home is finished and sold.

23. Resolution approving the granting of Downtown Micro Grant Funds in the painting program to Gary Forbes for 102 North 2nd Avenue East. (Council Report 22-292)

- Gary Forbes proposes a paint removal and re-painting project for the rear deck at 102 North 2nd Avenue East.
- At their meeting on September 28, 2022, the Downtown Grant Review Board recommended approval of a grant in the painting and paint removal program area in an amount not to exceed $3,000.00, provided a 1:1 match is met.

24. Resolution to reorganize Newton WaterWorks staff into the Public Works and Administration Departments.  (Council Report 22-293)

- At their March 18, 2022 regular board meeting, the Newton WaterWorks (NWW) Board of Trustees voted unanimously to

DEFS 0205

recommend that the City Council assume governance of the NWW. A special election was held on September 13, 2022. The Jasper County Board of Supervisors declared the public measure to be adopted.

- Since the normal responsibilities for the NWW Operations are Public Works related, it is recommended that the NWW Distribution and Operations become a new division under the Public Works Department. Since the normal responsibilities and workload for the NWW Administration are more related to the Administration Department, it is recommended that NWW Administration move to the Administration Department.

- It is also recommended that the Public Works Director receive a 5% wage increase for taking on the additional workload.

25. Resolution adopting the 2022 - 2024 Council Goals for the City of Newton. (Council Report 22-294)

- The City of Newton Goal Setting Process takes place every year. It is an opportunity for elected officials to communicate to the city administrator a work plan for the coming year.

- These priorities are then used to create a budget proposal for Council consideration.

**Motion**

26. Motion approving an FY24 annual budget target for the Newton Public Library of $686,039 for general fund expenditures, not including donations, and encouraging the Library Board of Trustees to continue implementing more sustainable budget practices moving forward.

**Staff Report**

27. Community Services Department Update – Brian Laube, Community Services Director

**Mayor/Council Comments**

28.

**Closed Session**

29. To Discuss Strategy with Counsel in Matters that Are Presently in Litigation or Where Litigation is Imminent Where its Disclosure Would be Likely to Prejudice or Disadvantage the Position of the Governmental Body in that Litigation, Which Discussions are Exempt from the Open Meetings Law Pursuant to the Provision of Section 21.5(1)(c), Code of Iowa 2022.

**Open Session**

30.

**Adjourn**

The City of Newton is pleased to provide reasonable accommodations, in compliance with the Americans with Disabilities Act, for those individuals or groups who require assistance to be able to participate in the public meeting. Should special accommodations be required, please contact the City Clerk's Office at least 48 hours in advance of the meeting, at 641-792-2787 to arrange for accommodations to be provided.

**www.NewtonGov.org**

DEFS 0206