## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| **NOAH PETERSEN**,<br>*Plaintiff*,<br><br>v.<br><br>**CITY OF NEWTON, IOWA, MICHAEL HANSEN**, Mayor of Newton, sued in his official and individual capacity, and **ROB BURDESS**, Chief of the Newton Police Department, sued in his official and individual capacity<br>*Defendants*. | Civil Action No.: 4:23-cv-00408-SMR-SBJ<br><br><br>**DEFENDANTS' COMBINED BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## <u>TABLE OF CONTENTS</u>

I.    PLAINTIFF CANNOT ESTABLISH UNCONSTITUTIONAL RETALIATION BY HANSEN OR BURDESS AS A MATTER OF LAW (Counts I and II)........................3
   A.  Plaintiff is Not Entitled to Summary Judgment on Retaliation Claims Because Plaintiff's Speech was Unprotected and There Was Probable Cause for His Arrest ...................................................................................................................................3
      1.  Hansen Cannot Be Liable Because Plaintiff's October 3 Speech was Unprotected Defamation............................................................................3
      2.  Burdess Had Probable Cause to Arrest Plaintiff on October 3 and Is Therefore Not Liable as to Count I. ............................................................5
   B.  Defendants Are Entitled to Summary Judgment as to Retaliation Under Counts I and II as Qualified Immunity Applies to Both the October 3 and October 24 Meetings..........................................................................................................................9
      1.  Hansen is Entitled to Qualified Immunity for Counts I and II Because His Conduct Was Based on an Objectively Reasonable Mistake, and Because the Law Was Not Clearly Established at the time of Hansen's Actions. .....9
      2.  Burdess is Entitled to Qualified Immunity Because the Law Was Not Clearly Established at the time of His Actions.Burdess Acted with Probable Cause on October 3 and is Otherwise Entitled to Qualified Immunity .....11
II.   PLAINTIFF HAS NOT ESTABLISHED MONELL LIABILITY FOR CITY OF NEWTON AS TO ITS DEROGATORY COMMENTS RULE (Counts III and IV) ..13
   A.  Plaintiff Has Not Furnished Evidence of Newton's Ratification of the Derogatory Comments Rule......................................................................................................13
III.  ENFORCEMENT OF DEROGATORY COMMENTS RULE WAS NOT PRIOR RESTRAINT (Count V) ..............................................................................................15

A.  Plaintiff is Not Entitled to Summary Judgment as to Count V Because
Enforcement of the Derogatory Comments Rule Was Not Prior Restraint as a
Matter of Law .................................................................................................15

B.  Defendants Are Entitled to Summary Judgment as to Count V as the Derogatory
Comments Rule is a Rule of Decorum, Not Prior Restraint ...............................17

IV.  THE EXISTENCE OF PROBABLE CAUSE DEFEATS CLAIMS FOR
WRONGFUL ARREST (Counts VI and VII)............................................................18

A.  Plaintiff is Not Entitled to Summary Judgment on Wrongful Arrest Claims
(Counts VI and VII) Because Probable Caused Existed on Both October 3 and
October 24.......................................................................................................19

B.  Hansen Is Entitled to Summary Judgment on Counts VI and VII Because He Did
Not Effectuate an Arrest..................................................................................19

V.  PLAINTIFF CANNOT ESTABLISH AN EQUAL PROTECTION VIOLATION FOR
UNEQUAL ENFORCEMENT OF DEROGATORY COMMENTS RULE ...............20

A.  Plaintiff is Not Entitled to Summary Judgment on Equal Protection Claims
(Counts VIII and IX) Because He Has Not Furnished Adequate Evidence of
Disparate Treatment ........................................................................................20

B.  Defendants Are Entitled to Summary Judgment on Equal Protection Claims
(Counts VIII and IX).........................................................................................22

**COME NOW** Defendants, City of Newton, Iowa, Michael Hansen, and Rob Burdess and for this Combined Brief in Opposition to Plaintiff's Motion for Summary Judgment and Reply to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment state as follows:

## I.  PLAINTIFF CANNOT ESTABLISH UNCONSTITUTIONAL RETALIATION BY HANSEN OR BURDESS AS A MATTER OF LAW (Counts I and II)

### A.  Plaintiff is Not Entitled to Summary Judgment on Retaliation Claims Because Plaintiff's Speech was Unprotected and There Was Probable Cause for His Arrest

Plaintiff was arrested for his conduct, not his speech. Plaintiff asserts that he is entitled to judgment as a matter of law on the question of Defendants' liability for alleged violations of his First and Fourteenth Amendment rights. Plaintiff goes as far as to assert "no rational jury could conclude that Defendants' enforcement was driven by anything but animus and a desire to punish Plaintiff for his political speech." Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 28, ECF No. 33-1. This conclusory statement is belied by the record before the Court, which reveals credible, nonretaliatory rationales for arresting the Plaintiff.

> To prevail on a [section] 1983 claim for retaliation in violation of the First Amendment, [Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.

*Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). Plaintiff has accused both Defendants Hansen and Burdess of unconstitutional retaliation. For reasons explained below, Plaintiff's claims as to both Defendants must fail.

### 1.  Hansen Cannot Be Liable Because Plaintiff's October 3 Speech was Unprotected Defamation.

Plaintiff argues Hansen is liable for First Amendment Retaliation because Hansen prevented him from completing his statement on October 3. Pl.'s Br. in Supp. of Mot. for Summ.

J. 30, ECF. No. 26-1. Plaintiff's arguments, however, fail because he was not engaged in protected

speech. *Blair*, 707 F.3d at 991. Defamatory speech is not protected under the First Amendment.

*Counterman v. Colorado*, 600 U.S. 66, 73 (2023). Plaintiff accused the Newton Police Department

of employing a "domestic abuser." Defs.' SUF ¶ 29.

> "Generally speaking, defamation is the publication of false statements of fact which
> tend to harm an individual's reputation." *Bauer v. Brinkman*, 958 N.W.2d 194, 198
> (Iowa 2021). To prove a defamation claim, "a plaintiff must show the defendant (1)
> published a statement that was (2) defamatory (3) of and concerning the plaintiff."
> *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996).

*Galanakis v. City of Newton*, No. 4:23-cv-00044-SHL-SBJ, 2023 U.S. Dist. LEXIS 88116, at *13

(S.D. Iowa May 8, 2023).

To be defamatory, the speech must "be reasonably interpreted as stating actual facts about

a person." *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021). Courts consider four factors to

determine whether speech is an actionable statement of fact.

> The first factor is "whether the alleged defamatory statement 'has a precise core of
> meaning for which a consensus of understanding exists or, conversely, whether the
> statement is indefinite and ambiguous.'" [*Yates v. Iowa W. Racing Ass'n*, 721
> N.W.2d 762, 770 (Iowa 2006)] (quoting *Ollman v. Evans*, 750 F.2d 970, 979, 242
> U.S. App. D.C. 301 (D.C. Cir. 1984)). The second factor is "the degree to which the
> [alleged defamatory] statements are . . . objectively capable of proof or disproof[.]"
> Id. (quoting *Ollman*, 750 F.2d at 981) (alterations in original). The third factor is
> "the context in which the alleged defamatory statement occurs." *Id*. The final factor
> we consider is "the broader social context into which [the alleged defamatory]
> statement fits." *Id*. (alteration in original) (quoting *Ollman*, 750 F.2d at 983).

*Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 47 (Iowa 2018).

Plaintiff emphasizes Hansen and Burdess's knowledge of accusations against an Officer

Winters in his briefing. Pl.'s Br. in Supp. of Mot. for Summ. J. 39, ECF. No. 26-1. However,

Defendants' awareness of allegations against Winters does not change the analysis of whether the

comments were potentially defamatory. Plaintiff attempts to distinguish the present facts from the

*Galanakis* case by pointing out that Plaintiff did not say Officer Winters was "convicted" of

4

anything. *Id*. At best, this distinction only serves as a basis for denying summary judgment to the Plaintiff. "When the language used is capable of two meanings, including the one ascribed by a complainant, it is for the jury to decide the meaning conveyed." *Lundell Mfg. Co. v. ABC, Inc.*, 98 F.3d 351, 360 (8th Cir. 1996). A factfinder could reasonably conclude Plaintiff's comments were accusing Officer Winters of having been convicted of domestic abuse.

Even apart from the four factors, Iowa law considers some speech to be defamatory per se. "An attack on the integrity and moral character of a party is libelous per se." *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 116 (Iowa 1984). "We have found defamation per se in statements accusing an individual of being a liar . . . accusing an individual of an indictable crime of moral turpitude or that carries a jail sentence . . . and accusing an individual of falsifying information." *Bandstra*, 913 N.W.2d at 47. Domestic abuse is a crime with enhanced penalties in the State of Iowa. *See* Iowa Code § 708.2A. Further, the Iowa Supreme Court has found domestic abuse to be "morally reprehensible" behavior that violates the Iowa Rule of Professional Conduct prohibition on "engaging in illegal conduct involving moral turpitude." *See Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Polson*, 569 N.W.2d 612, 613-14 (Iowa 1997).

The Iowa Southern District Court has also found comments accusing another of domestic violence to be actionable defamation. *See Galanakis v. City of Newton*, No. 4:23-cv-00044-SHL-SBJ, 2023 U.S. Dist. LEXIS 88116, at *16-24 (S.D. Iowa May 8, 2023). Not only is *Galanakis* persuasive, it addressed the *exact* accusations Plaintiff leveled against the *same officer. Id.*; Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 30-32, ECF No. 33-1. Plaintiff's comments constitute defamation per se. As such, his speech was not protected, and his First Amendment claim fails as a matter of law.

**2. Burdess Had Probable Cause to Arrest Plaintiff on October 3 and Is Therefore Not Liable as to Count I.**

Plaintiff argues Defendants "manufactured" probable cause by enforcing an unconstitutional "viewpoint ban."[1] Pl.'s Br. in Supp. of Mot. for Summ. J. 46, ECF. No. 26-1. Tacitly, Plaintiff admits that if Defendants were not actually enforcing an unconstitutional viewpoint ban, then probable cause would exist. Plaintiff devotes significant verbiage to establish the subjective mental states of the various Defendants. Pl.'s Br. in Supp. of Mot. for Summ. J. 39, ECF. No. 26-1. In sum, Plaintiffs are essentially asserting that Hansen and Burdess were so incensed by Plaintiff's words they decided to punish him for that speech. Even some degree of "bad motive" does not establish a constitutional tort. *Hartman v. Moore*, 547 U.S. 250, 260, 126 S. Ct. 1695, 1703-04 (2006).

"Regarding the third, causation element of a retaliatory-arrest claim, the United States Supreme Court in *Nieves* held an arrest is 'motivated by' retaliatory animus if it was the 'but-for cause' of the unlawful arrest." *Id*. at 888-89 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 397 (2019)). Thus, probable cause for an arrest defeats a retaliatory arrest claim. *See Nieves*, 587 U.S. at 408.

Probable cause similarly defeats a claimed violation of a plaintiff's Fourth Amendment right against unreasonable seizure. *See Garang v. Ciy of Ames*, 2 F.4th 1115, 1121 (8th Cir. 2021); *see also Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) ("A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause."). "Probable cause exists when the totality of the circumstances at the time of the arrest is sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." *Id.* (citation omitted). "Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act . . . There must be a 'fair

---

[1] The Derogatory Comments Rule is a not a viewpoint ban, as discussed in Section III B.

probability' or a 'substantial chance' that the person seized has committed an offense." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020)). "[O]fficers are not required to conduct a mini-trial before arrest." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 817 (8th Cir. 2010).

Plaintiff was arrested for violating Iowa Code Section 723.4(1)(D), the disorderly conduct statute. *See* Defendants' Statement of Undisputed Facts (SUF) ¶ 37. This was later amended to a charge for violating City of Newton Code of Ordinances Section 130.01(V), which adopts the language of Iowa Code section 723.4. SUF ¶ 45. Three elements are necessary: (1) the person disturbs a lawful assembly (2) by conduct intended to disrupt the assembly, and (3) the person does so without lawful authority or color of authority. Iowa Code § 723.4 The Iowa Supreme Court analyzed the meaning of "without lawful authority or color of authority" by considering three factors: "(1) the nature of the meeting involved; (2) whether the activity substantially impaired the conduct of the meeting; and (3) whether the defendants knew, or should have known, that their conduct violated an applicable custom, usage, or rule of the meeting." *State v. Hardin*, 498 N.W.2d 677, 680 (Iowa 1993).

Here, Plaintiff does not dispute that he (1) disturbed the city council meeting—which is unquestionably a lawful assembly—by refusing to sit down once ordered to by the Mayor (2) intended to disrupt the assembly, as evidenced by his continued refusal to comply, and (3) acted without authority once the presiding officer of the meeting, Mayor Hansen, had ordered him to cease speaking. *See* Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 38, ECF No. 33-1. Burdess's belief that Plaintiff was acting without authority was consistent with the three-factor test set forth in *Hardin* because Plaintiff's conduct significantly impaired the conduct of the meeting by preventing other citizens from speaking or the city council from addressing other matters.

7

Plaintiff never attempts to distinguish the facts of his case from the *Hardin* case. The similarities between the *Hardin* facts and the present record are notable. In the *Hardin* case, disruption of President Bush's speech was grounds for conviction under section 723.4. Burdess's belief that Hansen's order was lawful was also reasonable because the rule had been in use for years and had been formulated with input from the city's attorney. Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 40, ECF No. 33-1. Further, Plaintiff concedes he knew or should have known that his conduct violated the rules of the meeting because he was repeatedly warned that if he did not cease speaking, he would be arrested. *Hardin*, 498 N.W.2d at 681 (finding disruptive conduct that occurred despite repeated warnings showed intent to disrupt meeting); Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 38, ECF No. 33-1. Because all three elements of the offense were met, Burdess had probable cause to arrest Plaintiff for disorderly conduct even if Plaintiff was engaging in otherwise protected speech. *Id.* As previously noted, the District Court for Jasper County found probable cause for the disorderly conduct charge. SUF ¶ 74.

It is important to recall that Plaintiff's speech can be separated from his conduct and the reasons for his arrest. *See* SUF ¶ 39; *see also Jones v. Heyman*, 888 F.2d 1328, 1332 (11th Cir. 1989) (finding that the content of the individual's speech can be separated from the individual's disruptive behavior during a commission meeting); *Tannenbaum v. Richmond Heights*, 663 F. Supp. 995, 997 (D. Mo. 1987) (finding no Section 1983 claim for a violation of the First Amendment when speaker refused to comply with a valid ordinance regardless of the content of the speech). Plaintiff's conduct after Mayor Hansen directed him to stop speaking created probable cause for his arrest for a violation of the disorderly conduct statute. Because probable cause

supported Burdess's actions, there is no constitutional violation under either the First or Fourth Amendments.

Even assuming *arguendo* Plaintiff satisfied the first two elements, he has not (and cannot) establish the third element: motivation.

> It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but **action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway**.

*Hartman*, 547 U.S. at 260 (emphasis added) (internal citations omitted). On the record before the Court, the evidence shows that Plaintiff's disruptions to the orderly conduct of council meetings would have resulted in his arrest regardless of the content of his comments because it was Plaintiff's conduct, not his speech, that caused this. Accordingly, the Court should deny Plaintiff's Motion for Summary Judgment as to Count I.

## B. Defendants Are Entitled to Summary Judgment as to Retaliation Under Counts I and II as Qualified Immunity Applies to Both the October 3 and October 24 Meetings

The law as it applied to Burdess and Hansen's conduct at the October 3 and 24 meetings was not clearly established, and they are therefore entitled to qualified immunity. Plaintiff offers only generic platitudes about free speech ("speech about government and its officers, [and] about how well or badly they carry out their duties, lies at the very heart of the First Amendment." Janklow v. Newsweek, Inc., 788 F.2d 1300, 1304 (8th Cir. 1986)). As discussed below, Plaintiff needed to find a case that showed officials making "split second" decisions as it pertained to speech in a public meeting. They failed to do so. Accordingly, summary judgment should be granted to Defendants on these counts.

### 1. Hansen is Entitled to Qualified Immunity for Counts I and II Because His Conduct Was Based on an Objectively Reasonable Mistake, and Because the Law Was Not Clearly Established at the time of Hansen's Actions.

Caselaw cited by Plaintiff is either not controlling in this circuit or otherwise so factually generic as to be of little use in analyzing this question. One case cited by Plaintiff establishes, "if a university creates a limited public forum, it may not engage in viewpoint discrimination within that forum." *Gerlich v. Leath*, 861 F.3d 697, 709 (8th Cir. 2017). Attempting to apply that level of generality to the present facts is precisely what the Supreme Court cautioned against. Plaintiff cannot point to a controlling case in this jurisdiction that suggests (in a split-second scenario) that arresting someone for arguably defamatory speech and disruptive conduct is unquestionably unconstitutional.

Even if Plaintiff's expressive conduct is protected speech (which Defendants do not concede), Hansen is entitled to qualified immunity because his actions were based on the objectively reasonable mistake that Plaintiff's speech was defamatory. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In the event the Court determines Plaintiff's speech was protected, Hansen's conduct was objectively reasonable because the law was not clearly established at the time of his conduct that the speech was protected. As to his October 3 speech, as explained above, there is ample precedent suggesting accusations that an individual is a domestic abuser constitute defamation. *See, e.g.*, *Polson*, 569 N.W.2d 612, 613-14; *Galanakis*, 2023 U.S. Dist. LEXIS 88116, at *16-24. Given the precedent supporting Mayor Hansen's belief that Plaintiff's speech was defamatory, it cannot be said that the state of the law was so clear that his mistake was objectively unreasonable. *See* SUF ¶ 33; *Robinson*, 920 F.3d at 524 ("There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *see also Kirchmeier*, 85 F.4th at 1255 ("For a right to be clearly established, the 'contours

of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'").

Similarly, Hansen's mistake of law was objectively reasonable as to Plaintiff's October 24 speech because the law was not clearly established that accusing individuals of being fascists did not constitute defamation. Indeed, ordinary individuals view such accusations as factual assertions explaining an individual's political ideology that carry extremely negative connotations. *See* Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 55, ECF No. 33-1 ("I would just describe the characterization of that individual as a fascist as somebody that has no respect for life, would kill, harm, demean somebody, don't care about their human values, any of that."). Because the law was not clearly established that Plaintiff's comments were protected speech, Hansen is entitled to qualified immunity.

### 2. Burdess is Entitled to Qualified Immunity Because the Law Was Not Clearly Established at the time of His Actions.

Plaintiff gave short shrift to Defendants' qualified immunity argument because he argues the alleged constitutional violation is the only relevant inquiry. *See generally* Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J., ECF No. 33-1. This is likely because Plaintiff cannot refute the evidence in the record supporting arguable probable cause. Burdess is entitled to qualified immunity for his actions relating to the arrest of the Plaintiff. "In a § 1983 action, an officer is entitled to qualified immunity unless: (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established." *Arnold v. McClinton*, No. 23-1566, 2024 U.S. App. LEXIS 20434, at *6 (8th Cir. Aug. 14, 2024) (quoting *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 620 (8th Cir. 2023)). "For a right to be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023)

(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)).

Burdess was acting, in part, in reliance on the rule had been in place for three years and the city attorney had been involved in implementing it. *See* Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 40, ECF No. 33-1; *Watertown Equip. Co. v. Norwest Bank Watertown, N.A.*, 830 F.2d 1487, 1495 (8th Cir. 1987) ("Courts have generally found that the advice of an attorney may be a factor in shielding a defendant from liability under section 1983 . . . This Court has also recognized that although reliance on the advice of counsel alone will not satisfy an official's burden of acting reasonably, it may be a factor which bears on the question of qualified immunity.").

It is worth reiterating that courts should not be analyzing these questions at a high level of generality. Rather, the dispositive question is "whether the violative nature of *particular conduct* is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (emphasis added). "This inquiry 'must be undertaken in light of the *specific* context of the case, not as a broad general proposition.'" *Cent. Specialties, Inc. v. Large*, 18 F.4th 989, 996 (8th Cir. 2021) (quoting *Mullenix*, 577 U.S. at 12) (emphasis added). "There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Morgan v. Robinson*, 920 F.3d 521, 524 (8th Cir. 2019) (quoting *Ashcroft*, 563 U.S. at 741).

Second, and perhaps more significantly, the law was not clearly established that Plaintiff's conduct did not meet the elements of the disorderly conduct statute. Once again, Plaintiff

disregards on-point caselaw which does not serve his purposes. The most relevant authority on probable cause in a speech context in the state of Iowa is the *Hardin* case. As noted previously, Plaintiff scarcely addresses *Hardin*. Plaintiff attempts to distinguish the facts of the *Hardin* case from the present facts. But that is precisely the point: Iowa courts have never dealt with a fact-pattern similar to the case at hand. The Iowa Supreme Court has not addressed the application of section 723.4 in the context of disruptive conduct at a public meeting. Indeed, even *Hardin* did not occur at a municipal council meeting. In the face of these unique circumstances, Plaintiff has "present[ed] no case that comes close to demonstrating that the rights [he] alleges were violated were clearly established." *Cent. Specialties, Inc.*, 18 F.4th at 997.

Predictably, Plaintiff also attempts to argue that his arrest fell within the exception to the no-probable-cause rule established in *Nieves v. Bartlett*. *See* ECF No. 33, at 26. As noted in prior briefing, the application of this exception was not clearly established at the time of Plaintiff's arrest. *See generally Gonzalez v. Trevino*, 144 S. Ct. 1663 (2024) (overturning a 5th Circuit decision after finding the court misunderstood the scope of *Nieves*). And for the reasons explained below, Plaintiff is not similarly situated to other individuals who spoke at the council meetings. As a result, Defendants' Motion for Summary Judgment should be granted.

## II. PLAINTIFF HAS NOT ESTABLISHED *MONELL* LIABILITY FOR CITY OF NEWTON AS TO ITS DEROGATORY COMMENTS RULE (Counts III and IV)

### A. Plaintiff Has Not Furnished Evidence of Newton's Ratification of the Derogatory Comments Rule

Plaintiff cannot establish *Monell* liability for Newton on the facts in the record because he has not provided evidence that Hansen's interpretation of the Derogatory Comments Rule was official policy. Plaintiff only points to the council and city manager's inaction at the time of Plaintiff's arrests. This is factually insufficient to satisfy the summary judgment standard because

the fact of the City's ratification (or lack thereof) is disputed. "It is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, 585 U.S. 87, 95 (2018) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). To survive a motion for summary judgment based upon a *Monell* claim, a plaintiff must show a constitutional violation that results from a municipal policy, an unofficial custom, or a failure to train or supervise. *Robbins v. City of Des Moines*, 984 F.3d 673, 681-82 (8th Cir. 2021). Ultimately, the Plaintiff cannot show that Hansen was the final word on these matters (nor can he show that Burdess, the city manager, or the council were the final word either). This fatal to Plaintiff's claim.

> [W]e hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches **only where the decisionmaker possesses final authority** to establish municipal policy with respect to the action ordered. **The fact that a particular official -- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion**. *See, e. g., Oklahoma City v. Tuttle*, 471 U.S., at 822-824. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. [. . .] **We hold that municipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question**. *See Tuttle, supra*, at 823 ("'policy' generally implies a course of action consciously chosen from among various alternatives").

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84, 106 S. Ct. 1292, 1299-300 (1986).

Plaintiff has not established Hansen was the final authority on the Derogatory Comments Rule. While Hansen enforced it, he was still subject to oversight by the City Council who could override him with a majority vote. See SUF ¶ 17. The City's position on the Derogatory Comments Rule is ambiguous at best. It is certainly the case that the city council did not override Hansen in the moment. But this was not the sort of "deliberate choice" *Monell* liability exists to address. For

these reasons, the Court should deny Plaintiff's Motion for Summary Judgment as to Counts III and IV.

The Plaintiff has not (and cannot) refute the record, which is devoid of facts which would tend to show Newton ratifying Hansen or Burdess's actions. Inaction does not equate to acquiescence. "[D]elegating policymaking authority to a subordinate or ratifying the actions of a subordinate" also creates liability. *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017). Without more, the Plaintiff has failed to generate a fact question and Defendants are entitled to judgment as a matter of law on Count III and IV.[2]

### III.  ENFORCEMENT OF DEROGATORY COMMENTS RULE WAS NOT PRIOR RESTRAINT (Count V)

#### A.  Plaintiff is Not Entitled to Summary Judgment as to Count V Because Enforcement of the Derogatory Comments Rule Was Not Prior Restraint as a Matter of Law

Plaintiff argues Newton's Derogatory Comments Rule amounts to a prior restraint in violation of the First Amendment. *See* ECF No. 33 at 15. Plaintiff's arguments fail for the simple reason that Defendants did not act until after Plaintiff spoke. "The term 'prior restraint' is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (Iowa 1993) (citation omitted). "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *Id.* Prior restraints are frequently in the form of licensing or permit requirements, wherein the government entity must grant permission *prior* to the speech occurring. *See Dolls, Inc. v. City of Coralville*, 425 F. Supp. 2d 958, 980 (S.D. Iowa 2006). To prevail on Count V, "Plaintiffs

---

[2] As noted *supra*, the existence of probable cause also serves to defeat any claimed constitutional torts by Newton.

must show: the bans constitute a prior restraint, the bans do not 'fit within one of the narrowly defined exceptions to the prohibition against prior restraints,' and procedural safeguards were lacking." *Johnson v. Bayens*, No. 4:20-cv-00306-RGE-CFB, 2020 U.S. Dist. LEXIS 260374, at *13 (S.D. Iowa Dec. 10, 2020) (quoting *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975)).

Newton's rule is not a prior restraint. "[T]he Supreme Court has long distinguished between prior restraints from subsequent punishments." *Bayens*, 2020 U.S. Dist. 260374, at *13; *see also Alexander*, 509 U.S. at 553 (explaining "the time-honored distinction between barring speech in the future and penalizing past speech"). Plaintiff suggests that it is Hansen and Burdess's "unbridled discretion" which renders this matter a species of prior restraint. Pl.'s Br. in Opposition to Defs.' Mot. for Summ. J. 17, ECF No. 33. "[I]n the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757, 108 S. Ct. 2138, 2144 (1988). But it is simply not true to suggest the Defendants' discretion was unbridled. *See* Defs.' SUF ¶ 29. The rule as written constrains the mayor's authority. It is not standardless. Additionally, the mayor's discretion is tempered by the oversight of the council. Also, the facts of this case are not similar to a licensing regime. A licensing regime allows more time for deliberation. In the present case, Defendants were presented with a kinetic situation to which they were responding in real time.

The rule does not prevent attendees of city council meetings from speaking in advance of their speech—they do not need to first obtain a permit, license, or otherwise request permission from a government official, as Plaintiff acknowledges. Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 10-11, ECF No. 33-1. Plaintiff was only ordered to stop

speaking after the expressive conduct had already happened. *See, e.g., id.* ¶¶ 29, 53. As such, the

rule does not operate as a prior restraint. Plaintiff's Motion as to Count V should be denied.

**B. Defendants Are Entitled to Summary Judgment as to Count V as the Derogatory Comments Rule is a Rule of Decorum, Not Prior Restraint**

Plaintiffs contend the Derogatory Comments Rule is an "easy case" of viewpoint

discrimination. ECF No. 29, at 43. Setting aside the conclusory nature of this statement, the

Derogatory Comments Rule can be applied in a content-neutral fashion. The Derogatory

Comments Rule is a rule of "decorum."

> [A city's rule on comments at public meetings] is content-neutral on its face. The prohibitions on derogatory, disparaging, and disrespectful language are not based on the speech's content, but rather on a **reasonable need for decorum in a meeting**. "Preservation of order in city council meetings to ensure that the meetings can be efficiently conducted" is a legitimate government interest. *Timmon v. Wood*, 316 F. App'x 364, 366 (6th Cir. 2007); *see also Gault*, 73 F. Supp. 2d at 814 ("[I]t is well established that a citizen addressing a city governmental body in a limited public forum may be stopped from speaking if the speech is 'irrelevant or repetitious' or 'disrupts, disturbs or otherwise impedes the orderly conduct of the council meeting' so long as the speaker is not 'stopped from speaking because the moderator disagrees with the viewpoint he is expressing.'") (quoting *White v. City of Norwalk*, 900 F.2d 1421, 1425-26 (9th Cir. 1990)). . . .

> The Court sees [the city's rule] as a facially valid effort to establish a reasonable rule of decorum. The rule focuses on comments that disparage "any one person or group," not simply words that may offend someone. And the Rule singles out for exclusion "[c]omments on . . . character unrelated to public issues or performance of duties," not simply a statement that antagonizes. *C.f. Mama Bears of Forsyth Cty. v. McCall*, 642 F. Supp. 3d 1338, 2022 WL 18110246 (N.D. Ga. 2022) (requirement that public comments be made "in a respectful manner" facially violated the Constitution). Read in that context, Rule 12(D) does not prohibit speech merely because it antagonizes or offends, which is what concerned the Ison panel, but **may fairly be seen as an effort to enforce decorum**, which Ison continues to permit. To be sure, the presiding officer could misapply the rule to shut down a particular point of view, but the rule as written does not inevitably lead for such a result. Content neutral application is entirely possible. Thus, the defense is entitled to summary judgment on the facial challenge to [the city's rule].

*Murray v. City of New Buffalo*, 708 F. Supp. 3d 1313, 1331-32 (W.D. Mich. 2023). In *Murray,* the disruptive participants were suggesting individuals had "vendettas" and at one point suggested an individual was "intoxicated." *Id*. at 1333-34. The abusive language was similar to the statements made by the Plaintiff. Plaintiff accused individuals of being fascists and domestic abusers. As demonstrated by the *Murray* case, a public official could reasonably conclude such *ad hominem* attacks were inconsistent with smooth functioning of the council meeting.

Hansen's decision to declare Plaintiff's comments out of order did not amount to a constitutional violation. The Court which analyzed the facial challenge to a city's derogatory comments rule (*supra*), also ruled on specific instances of the rule's application.

> But the comments that earned a gavel, namely, an accusation that a city council member was intoxicated, were not critical of the council members' policy position or official actions. It was a direct attack on an individual entirely unrelated to point of view. The mayor's action in ruling such comments out of order reasonably enforced the Council's rules of decorum, and did not silence speech with respect to viewpoint. The voters will be fully able to air concerns and complaints about candidates for office, including incumbent office holders, in the election process, in online fora, and in local newspapers, coffee shops and sidewalks. A city council rule can reasonably curtail such accusation and discussion during public comment segments.

*Id.* at 1334.

The facts in the present record bear a striking resemblance to the facts of the *Murray* case. When Plaintiff called City officials "fascists," suggested that the police department condones sexual abuse in its ranks, and referred to a police officer as a "domestic abuser," he was not engaged in a policy critique or even airing a specific grievance. He was attacking individuals. Like the mayor in the *Murray* case, Hansen was simply enforcing a rule of decorum. This was not prior restraint. As such, Defendants' Motion as to Count V should be granted.

## IV.   THE EXISTENCE OF PROBABLE CAUSE DEFEATS CLAIMS FOR WRONGFUL ARREST (Counts VI and VII)

**A. Plaintiff is Not Entitled to Summary Judgment on Wrongful Arrest Claims (Counts VI and VII) Because Probable Caused Existed on Both October 3 and October 24**

For reasons stated in Section I(A)(2) above, the existence of probable cause defeats wrongful arrest claims. Plaintiff's Motion should be denied as to Counts VI and VII.

**B. Hansen Is Entitled to Summary Judgment on Counts VI and VII Because He Did Not Effectuate an Arrest**

Plaintiff claims Hansen was "integral" to Plaintiff's arrest. Pl.'s Br. in Opposition to Defs.' Mot. for Summ. J. 29, ECF No. 33. Specifically, Plaintiff argues Hansen was "a full, active participant […], not a mere bystander." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). The "active participant" in the *James* case was an armed officer stood watch at the door while a search was conducted. *Id.* Hansen's actions, by contrast, were more peripheral to the action, rendering him more akin to a bystander.

Plaintiff would readily admit that Mayor Hansen did actually not arrest Plaintiff on either October 3 or October 24. Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶¶ 36, 59, ECF No. 33-1. Mayor Hansen was not involved in determining what crime to charge Plaintiff with. *Id.* ¶¶ 41, 65. Moreover, Mayor Hansen did not have the authority as mayor to order Police Chief Burdess or Lieutenant Wing to effect an arrest. *Id.* ¶¶ 35, 63. Because Mayor Hansen did not effectuate either arrest, he cannot be liable for violating Plaintiff's Fourth Amendment right against unreasonable seizure.[3]

Finally, even if Hansen did effectuate the arrest, he had probable cause to arrest Plaintiff for disorderly conduct. And even if that were not the case, the law is not clearly established that probable cause would be lacking for either arrest. As such, Hansen is entitled to qualified

---

[3] For similar reasons, Burdess should be relieved of any liability for the October 24 arrest because he did not effectuate it. He was merely present as a department head. *See generally* ECF No. 27-1 (no fact suggests Burdess effectuated the arrest at the October 24 meeting).

immunity. For the foregoing reasons, Defendants are entitled to summary judgment as to Counts VI and VII.

## V.     PLAINTIFF CANNOT ESTABLISH AN EQUAL PROTECTION VIOLATION FOR UNEQUAL ENFORCEMENT OF DEROGATORY COMMENTS RULE

### A.  Plaintiff is Not Entitled to Summary Judgment on Equal Protection Claims (Counts VIII and IX) Because He Has Not Furnished Adequate Evidence of Disparate Treatment

Plaintiff argues Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution by selectively enforcing the Derogatory Comments Rule in connection with his October 3, 2022 public comments when that Rule was not enforced against other individuals similarly situated. ECF No. 29, at 28. Plaintiff argues that at the October 3 meeting, several other speakers made derogatory comments about the city's rental inspectors, but the rule was not enforced against these similarly situated individuals and they were not stopped, arrested, charged, or prosecuted. *Id*. at 35. Plaintiff alleges the same for the October 24 meeting because other speakers violated other speaking rules without consequence. Compl. ¶ 243-44.

Plaintiff is arguing he was similarly situated to other speakers at the council meeting. To state an equal protection claim, a plaintiff "must plausibly allege that [they were] singled out and treated differently than similarly situated [individuals] for a prohibited purpose or motive." *Satanic Temple v. City of Belle Plaine*, 80 F.4th 864, 869 (8th Cir. 2023). "The threshold inquiry in an equal protection case is whether the plaintiff is similarly situated to others who allegedly received preferential treatment." *Domina v. Van Pelt*, 235 F.3d 1091, 1099 (8th Cir. 2000). "[T]he persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in *all material respects*." *Sanimax USA, LLC v. City of S. St. Paul*, 95 F.4th 551, 564 (8th Cir. 2024) (quoting *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015)).

"It is recognized law that a class-of-one claimant may prevail by showing 'she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Barstad*, 420 F.3d at 884 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "Identifying the disparity in treatment is especially important in class-of-one cases." *Id.*

At the October 3 meeting, the other speakers discussed Newton's new rental inspection program, including the rental inspectors, in general terms. Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 25, ECF No. 33-1. These other speakers did not engage in defamatory conduct as Plaintiff concedes. *Id.* ¶ 25-27. Plaintiff, however, made specific accusations about a police officer stating that the officer is a "domestic abuser." *Id.* ¶ 29. Plaintiff has not provided any specific examples of comments made by other individuals at the October 3 meeting that rise to the level of his pointed, defamatory comments. *Id.* ¶ 26. There is no similarly situated group of individuals with which to compare Plaintiff.

Plaintiff's claim fails for three reasons: (1) Plaintiff has failed to establish that he was similarly situated to the individuals commenting on the rental inspection program and (2) Officer Burdess did not act with a discriminatory purpose, and (3) neither individual defendant was responsible in Plaintiff's October 24 arrest.

The individuals Plaintiff identifies as comparators are not similarly situated to himself "in all relevant respects." *Gilani*, 843 F.3d at 348 (quoting *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009)). Plaintiff suggests Defendants are requiring him to find hyper-specific examples of comparable behavior. "[T]he demand for virtually identical and identifiable comparators goes too far…" *Gonzalez v. Trevino*, 602 U.S. 653, 658, 144 S. Ct. 1663, 1667 (2024). But it simply remains the case that the other speakers behaved markedly differently from Plaintiff.

Because Plaintiff has failed to establish he was treated differently than a similarly situated group of individuals, he has failed to set forth a prima facie violation of the Equal Protection Clause. *Flowers*, 558 F.3d at 798.

### B. Defendants Are Entitled to Summary Judgment on Equal Protection Claims (Counts VIII and IX)

In addition to the foregoing rationales, absent a constitutional violation, the Defendants are entitled to qualified immunity. *Bloodworth*, 89 F.4th at 624. Furthermore, Plaintiff has failed to establish Hansen and Burdess acted with discriminatory intent. *See Gilani*, 843 F.3d at 348. "Proving discriminatory purpose is no simple task." *Villanueva v. City of Scottsbluff*, 779 F.3d 507, 511 (8th Cir. 2015). "Under our cases, [Plaintiff] must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *United States v. Frazier*, 408 F.3d 1102, 1108 (8th Cir. 2005).

Here, there is no evidence the Defendants acted with a discriminatory purpose. Rather, the record evidence is clear that Burdess arrested Plaintiff on October 3 due to his disruptive behavior and refusing to leave the podium after Mayor Hansen ordered him to cease his derogatory comments. Pl.'s Resp. to Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶ 38, ECF No. 33-1. Similarly, to the extent Burdess was involved in Plaintiff's October 24 arrest, that arrest was also based on Plaintiff's disruptive behavior, not his speech. *Id*. ¶¶ 60-61. And Hansen was acting—at worst—on the objectively reasonable mistake that Plaintiff's speech was defamatory, not out of an attempt to punish Plaintiff for his particular speech. *Id*. ¶ 33, 54. Based on the current record, Defendants are entitled to summary judgment as to Count VIII and IX.

**WHEREFORE**, Defendants request the Court deny Plaintiff's Motion for Summary Judgment in its entirety and grant Defendants' Motion in its entirety and dismiss all counts with prejudice.

CITY OF NEWTON, MICHAEL HANSEN, and ROB BURDESS,
Defendants,

By: _____
      Jason C. Palmer  AT0006089
      Georgia R. Rice  AT0015229
      LAMSON DUGAN & MURRAY, LLP
      6400 Westown Pkwy, Ste. 280
      West Des Moines, IA  50266
      Phone:  (515) 823-0458
      Fax:  (515) 298-6536
      E-Mail:  jpalmer@ldmlaw.com
              grice@ldmlaw.com

      ATTORNEYS FOR DEFENDANTS


Patrick Jaicomo*
James T. Knight II*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
bmorris@ij.org
pjaicomo@ij.org
jknight@ij.org

Gina Messamer
PARRISH KRUIDENIER LAW FIRM
2910 Grand Avenue
Des Moines, Iowa 50312
Tel: (515) 284-5737
gmessamer@parrishlaw.com

Counsel for Plaintiff Noah Petersen
*Admitted Pro Hac Vice

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the 8th day of November, 2024 by:

☐ U.S. Mail             ☐ FAX
☐ Hand Delivered     ☐ UPS
☐ Federal Express     ☑ Other: CM-ECF

*/s/ Misty Munoz*