UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **NOAH PETERSEN**,<br><br>    *Plaintiff*,<br><br>v.<br><br>**CITY OF NEWTON, IOWA**, et al.,<br><br>    *Defendants*. | Civil Action No.: 4:23-cv-00408-SMR-SBJ<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

**COMES NOW** Plaintiff Noah Petersen with his reply to Defendants' response to Plaintiff's statement of undisputed material facts in support of Plaintiff's motion for summary judgment. Defendants did not file a standalone statement of additional facts, *see* Local Rule 56(d), but they did provide substantive responses with additional facts in their response. Plaintiff only responds to those specific paragraphs and states as follows:

- ¶ **124**: Mayor Hansen later, in his deposition, explained that Noah's comments were not germane once he started "characterizing the police department." (Hansen Tr. 89:16–91:7, Appx. 379–81 (admitting that his comment about taking money from the police to fund the splash pad was germane).)

  **RESPONSE**: Qualified. It is admitted only insofar that Mayor Hansen testified that Plaintiff's comments were not "germane". However, "germane" is not defined in the citation. In addition, this fact is inappropriate in narrativizing its citations stating that Mayor Hansen "admitted" and is a violation of the Iowa Rules of Civil Procedure 1.981(5); *see also Thompson v. City of Des Moines*, 564 N.W.2d 839, 841 (Iowa 1997) (quoting *Fogel v. Trustees of Iowa College,* 446 N.W.2d 451, 454 (Iowa 1989)) (holding that "[T]he resistance must set forth specific fact…by requiring the resister to go beyond

1

generalities…to weed out 'paper cases and defenses' in order 'to make way for litigation which does have something to it.").[1]

**REPLY**: Plaintiff is not violating Iowa Rules of Civil Procedure 1.981(5) by using the word "admitted." Plaintiff is not citing mere "generalities," but instead, he is citing Mayor Hansen's or Chief Burdess's actual deposition testimony. But to the extent the Court is concerned about that use of the word "admitted" in reference to Mayor Hansen's or Chief Burdess's deposition testimony, Plaintiff hereby amends SOF ¶¶ 124, 147, 204, 257, 259, 260, 264, 269, 373, 377 to read, in each instance, that either Mayor Hansen or Chief Burdess "said" (or "saying") rather than "admitted" (or "admitting").

- **¶ 133**: A few weeks after the meeting, on September 30, 2022, Noah reached out to Mayor Hansen for help. (Petersen Email to Hansen, Appx. 64.)

  **RESPONSE**: Qualified. It is admitted only insofar only insofar that Plaintiff sent an email to someone within the City of Newton requesting aid in procuring records. However, the attached photos in the citation state the rationale behind the denial of records to Plaintiff. (Pl. Appx. 64). Finally, the citation is only to the Plaintiff's Complaint and not to the Answer, therefore this is not an appropriate citation. *See AAA Elec*, 2003 Iowa App. LEXIS 1062, at *3-4.

  **REPLY:** Mayor Hansen confirmed that Plaintiff sent him an email requesting aid in procuring records—and that Mayor Hansen investigated and responded. (Hansen Email, Appx. 879; Hansen Tr. 53:2–57:8.)

- **¶ 231**: Noah said, "arrest me then," because he "wasn't going to give up [his] rights willingly." (Petersen Tr. 117:16–20, Appx. 278.)

  **RESPONSE**: Qualified. It is admitted only insofar that the above quotations are accurate. However, prior to this statement, Plaintiffs [sic] remarks that he was bringing attention to himself through his comments at the City Council meeting. (Pl. Appx. 278). In addition, this is after being asked to leave peacefully and without incident. (Pl. Appx. 881).

  **REPLY:** Noah testified that he "wasn't trying to . . . draw attention to myself," and that his comments "wouldn't have drawn the attention that I had drawn if I hadn't been arrested," and that he wasn't trying to get arrested. (Petersen Tr. 117:4–13, Appx. 278.) Plaintiff also disagrees with Defendants' characterization of the video, (Appx. 881), which was not "without incident" after Defendants violated Noah's constitutional rights by asking him to stop his comments and leave.

---

[1] In the interest of brevity, Defendant hereby states that such inappropriate citations may at least also be found in Paragraphs 147, 204, 257, 259, 260, 264, 269, 373, 377.

- **¶ 256:** To determine whether there was probable cause that Noah was "without justification," Chief Burdess relied on Mayor Hansen's determination that Noah violated the Derogatory Comments Rule. (Burdess Tr. 49:17–21, Appx. 565; 50:15–20, Appx. 566.)

    **RESPONSE**: Qualified. It is admitted only insofar that Chief Burdess took into account Mayor Hansen's determination. However, Chief Burdess also stated that he and Mayor Hansen retained authority over said property, and that Plaintiff refused to leave after being advised by both Mayor Hansen and Chief Burdess to do so. (Pl. Appx. 565).

    **REPLY**: Chief Burdess testified that "The mayor and I would have authority . . . over said property. Mr. Petersen was advised by both of us to leave after there was a determination by the mayor that some rules were violated. And he refused to leave and this led us to arrest." (Burdess Tr. 49:9–14, Appx. 565.) Chief Burdess then continued: "So after [ ] it was determined that [Noah] was violating the rules, then [ ] he's refusing to leave after at least one order by the mayor, he's no longer justified in that sense in my mind to be there." (Burdess Tr. 49:17–21, Appx. 565.)

- **¶ 257**: Chief Burdess admitted that Noah had a legal right to give his comment during the citizen participation part of the meeting, but that did not affect his probable cause analysis "at all." (Burdess Tr. 49:22–50:5, Appx. 565–66.)

    **RESPONSE**: Qualified. It is admitted only insofar as Chief Burdess recognized that citizen participation was open to the public. However, Chief Burdess testified that it was after being asked to leave, and Plaintiffs refusal to do so that informed Chief Burdess's assessment of probable cause. (Pl. Appx. 565-66). In addition, this fact is inappropriate in narrativizing its citations.

    **REPLY**: Defendants are improperly characterizing Chief Burdess's testimony. The Court can read Chief Burdess's full testimony about how he evaluated probable cause for the "without justification" element of disorderly conduct. (Burdess Tr. 49:15–51:19, Appx. 565–67.) Plaintiff provides the same reply for ¶¶ 258–60.

- **¶ 263**: Chief Burdess did not make that evaluation for Mayor Hansen's order stopping Noah from speaking. (Burdess Tr. 51:16–19, Appx. 567.)

    **RESPONSE**: Disputed. There is no appropriate citation that states that Chief Burdess "did not make an evaluation for Mayor Hansen's order". Instead, Chief Burdess states that his evaluation did not provide any reason not to believe that the order was unlawful, nor any reason to question Mayor Hansen's order. (Pl. Appx. 567).

- **REPLY**: Chief Burdess was asked if he evaluated whether Mayor Hansen's order was lawful, ("Q: So in this situation did you make the determination of whether or not you thought the mayor's order was lawful?"), Chief Burdess answered: "I had no reason to believe it wasn't." Implicit in that answer is that Chief Burdess "did not make that evaluation for Mayor's Hansen's order stopping Noah for speaking." There is no other reasonable implication. (*See* Burdess Tr. 51:16–19, Appx. 567.)

- **¶ 269**: Chief Burdess admitted that his probable cause analysis did not include him "evaluating why the mayor told him to leave." (Burdess Tr. 59:4–7, Appx. 575.)

    **RESPONSE**: Qualified. It is admitted only insofar as the above quotation is accurate. However. Chief Burdess stated "[T]he probable cause analysis consisted of the mayor telling [Plaintiff] that he needed to leave and him not leaving and then furthering with a contentious conversation and disrupting the meeting." (Pl. Appx. 574-75). In addition, this fact is inappropriate in narrativizing its citations.

    **REPLY**: Chief Burdess admitted exactly what Plaintiff said in ¶ 269: "Q: So did your probable cause analysis include you evaluating why the mayor told him to leave? A: No." (Burdess Tr. 59:4–7, Appx. 575.)

- **¶ 270**: Chief Burdess's probable cause analysis also did not include whether Noah had a right to speak. (Burdess Tr. 74:15–22, Appx. 590.)

    **RESPONSE**: Qualified. It is admitted only insofar that Chief Burdess opined on whether Plaintiff had a First Amendment right to finish his statement, his three-minute period or the violation of his rights therein. However, Chief Burdess relied upon the assessment that Mayor Hansen had given a lawful order for Plaintiff to leave. (Pl. Appx. 566).

    **REPLY**: Chief Burdess said exactly what Plaintiff said in ¶ 270: "A: [Noah] simply said something to the fact that 'I have a right to speak for three minutes, and I'm not going to leave until I'm able to do so.' Q: And we talked about that earlier. Did that impact your probable cause analysis at all, that statement? A: No." (Burdess Tr. 74:15–22, Appx. 590.)

- **¶ 291:** Once Mayor Hansen's email account was deleted on October 4, 2022, Mayor Hansen's emails up to that point were gone forever—they "no longer existed" on Newton's system. (Newton Tr. 12:12–20, Appx. 682; 13:12–24, Appx. 683.)

    **RESPONSE**: Qualified. It is admitted only insofar that the above quotation is accurate. However, Ms. Davis states that it is only her understanding that

those former emails are no longer accessible, but that IT would be more knowledgeable on this matter. (Pl. Appx. 683).

**REPLY**: This was the City's 30(b)(6) deposition, so the official position of the City is that "once that old email was deleted," those emails "are just kind of gone forever" and that "any emails to mikeh@newtongov no longer existed." (Newton Tr. 13:21–24, Appx. 683; 12:16–20, Appx 682.)

- ¶ **305**: Chief Burdess planned to have one additional officer in the police station watching the live feed of the city council meeting, (Burdess Tr. 102:5–9, Appx. 618), and Chief Burdess "directed" Lieutenant Wing to be at the next meeting, (Burdess Tr. 103:22–104:4, Appx. 619–20).

  **RESPONSE**: Qualified. It is admitted only insofar that Chief Burdess planned to have an additional officer watching the live feed of the city council meeting, and that Chief Burdess requested that Lt. Wing be present at the next meeting. However, this is in response to worries stemming from social media threats of protest, and previous instances of protest following the "Galanakis incident." (Pl. Appx. 618-19).

  **REPLY**: Chief Burdess testified that he ordered the additional officers to be at the October 24 meeting because of what happened to Noah, not just because of the "Galanakis incident": Chief Burdess saw "[c]omments from people saying we're going to come to the meeting and . . . protest [ ] whether it's [Noah] arrest, or you know, the stopping of the language or—I think going back to the Galanakis incident." (Burdess Tr. 102:15–25, Appx. 618.)

- ¶ **325**: As Chief Burdess saw it, the city attorney was "doubling down" on the Derogatory Comments Rule. (Burdess Tr. 76:4–8, Appx. 591.)

  **RESPONSE**: Qualified. The citation is not entirely appropriate as it cites to the incorrect page in the appendix, but it is admitted only insofar as the above quotation is accurate. However, Chief Burdess was speaking with regards to his view of probable cause for potential arrests for disorderly conduct at a city council meeting. (Pl. Appx. 590-92). Specifically, that Chief Burdess relied upon the knowledge, and expertise of the city council members, and city attorney, in assessing the legality of the Derogatory Comments Rule, stating "[The rules have] clearly in my mind been vetted." (Pl. Appx. 591).

  **REPLY**: The correct citation is: Burdess Tr. 76:4–8, Appx. 59**2**.

- ¶ **337:** Noah then said that "I'm going to speak a little bit about last meeting." (Oct. 24 Video 22:30–35, Appx. 882.)

**RESPONSE**: Qualified. The citation is inappropriate as the quotation does not appear at all during the cited portion of the video.[2] It is otherwise Admitted.

**REPLY**: For ¶¶ 337–42, the correct citation for the videos should be at the 23-minute mark, not the 22-minute mark. For example, for ¶ 337, the correct citation is: Oct. 24 Video 2**3**:30–35, Appx. 882.

- **¶ 345**: Mayor Hansen raised his voiced and repeated, "including an employee of the city of Newton." (Oct. 24 Video 24:19–23, Appx. 882.)

    **RESPONSE**: Qualified. It is admitted only insofar as Mayor Hansen repeated the above quotation. However, it is inappropriate to state that Mayor Hansen "raised his voice." Oct. 24 Video 24:19–23, Appx. 882.)

    **REPLY**: The video speaks for itself; Mayor Hansen raised his voice.

- **¶ 347**: Mayor Hansen stopped Noah only because he thought Noah violated the Derogatory Comments Rule. (See Hansen Tr. 167:6–17, Appx. 457.)

    **RESPONSE**: Disputed. The cited portion only refers to the reasons that Mayor Hansen did not stop Plaintiff from continuing with his public comment, the citation does not provide that Mayor Hansen stopped Plaintiff from speaking because Plaintiff violated the Derogatory Comments Rule.

    **REPLY**: Mayor Hansen testified that he gaveled down Noah "[b]ecause he defamed the police chief" "[b]y calling him a fascist." (Hansen Tr. 165:17–25.) Defendants admit that, according to Mayor Hansen, defamation violates the Derogatory Comment Rule. *See* Defs.' Resp. to Petersen SOF ¶ 34. Then, this part of the transcript, Hansen Tr. 167:6–17, Appx. 457, confirms that Mayor Hansen did not stop Noah from speaking at the October 24 meeting for violating any other rule or for any other reason. Mayor Hansen, then, "stopped Noah only because he thought Noah violated the Derogatory Comments Rule."

- **¶ 355**: Mayor Hansen repeated that Noah was violating the rules—and Noah began to walk "6 to 8 feet to the right" and towards the door. (YouTube Video 2:50– 3:00, Appx. 883; Burdess Tr. 109:2–9, Appx. 625.)

    **RESPONSE**: Qualified. It is admitted only insofar as the above quotations are accurate. However, Plaintiff continued to argue with Mayor Hansen, or otherwise "create a disturbance." (YouTube Video 2:50– 3:15; Pl. Appx. 625).

---

[2] In the interest of brevity, Defendant hereby states that the following Paragraphs cite to the incorrect time portions, but will otherwise address the quotations or allegations therein: ¶¶338, 339, 340, 341, 342.

6

**REPLY**: Defendants are improperly characterizing Noah's behavior and offering a legal conclusion; the video speaks for itself.

- **¶ 358**: As Noah explained, he was attempting to leave, but he was stopped. (Petersen Tr. 105:9–18, Appx. 266; Burdess Tr. 109:24–110:2, Appx. 625–26 (explaining that Noah "started veering for the door").)

    **RESPONSE**: Qualified. It is admitted only insofar as the above quotations are accurate. However, Plaintiff continued to argue, and only after being approached by Lt. Wing and Chief Burdess did Plaintiff start "veering for the door". (Pl. Appx. 625-26).

    **REPLY**: This paragraph described what "Noah explained" he was doing. In response, Defendants cite Chief Burdess's characterization of what happened.

Date: November 15, 2024.                Respectfully submitted,

/s/ *Brian A. Morris*
Brian A. Morris*
Patrick Jaicomo*
James T. Knight II*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
bmorris@ij.org
pjaicomo@ij.org
jknight@ij.org

Gina Messamer (AT0011823)
PARRISH KRUIDENIER LAW FIRM
2910 Grand Avenue
Des Moines, Iowa 50312
Tel: (515) 284-5737
gmessamer@parrishlaw.com

*Counsel for Plaintiff Noah Petersen*
*Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

 I hereby certify that, on November 15, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all registered participants identified on the Notice of Electronic Filing.

              */s/ Brian A. Morris*
              Brian A. Morris